**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DONALD J. TRUMP,

                              Plaintiff,

- against -

CYRUS R. VANCE, JR., in his official capacity
as District Attorney of the County of New
York;

and

MAZARS USA, LLP,

                              Defendants.

19CV8694

Case No. _____

JUDGE MARRERO

**NOTICE OF EMERGENCY**
**MOTION FOR A TEMPORARY**
**RESTRAINING ORDER AND A**
**PRELIMINARY INJUNCTION**

Per Federal Rule of Civil Procedure 65, Plaintiff moves for a temporary restraining order and a preliminary injunction against Defendants, prohibiting them from taking any steps to enforce or comply with the challenged subpoena until this Court enters final judgment. Plaintiff's motion is based on the attached memorandum of law, his declarations and other filings, and any oral argument or evidence presented at the hearing. Plaintiff is entitled to a temporary restraining order and a preliminary injunction because he has shown "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Dated: September 19, 2019

Marc L. Mukasey
MUKASEY FRENCHMAN & SKLAROFF LLP
Two Grand Central Tower
140 East 45th Street, 17th Floor
New York, NY 10177
(212) 466-6400
marc.mukasey@mukaseylaw.com

Alan S. Futerfas
LAW OFFICES OF ALAN S. FUTERFAS
565 Fifth Ave., 7th Floor
New York, NY 10017
(212) 684-8400
asfuterfas@futerfaslaw.com

Respectfully submitted,

_s/ William S. Consovoy_
William S. Consovoy (*pro hac vice* forthcoming)
Cameron T. Norris
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

## CERTIFICATE OF SERVICE

I, William S. Consovoy, declare under penalty of perjury that I served a copy of this motion and all attached exhibits via email to the following:

Jerry D. Bernstein
Inbal P. Garrity
Nicholas R. Tambone
BLANK ROME LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
jbernstein@blankrome.com
igarrity@blankrome.com
ntambone@blankrome.com

Lawrence H. Wechsler
Henry F. Schuelke III
BLANK ROME LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200
lwechsler@blankrome.com
hschuelke@blankrome.com

Christopher Conroy
Chief, Major Economic Crimes Bureau
District Attorney's Office, New York County
One Hogan Place
New York, NY 10013
conroyc@dany.nyc.gov

*Counsel for Mazars USA LLP*

Dated: September 19, 2019                    *s/ William S. Consovoy*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DONALD J. TRUMP,

                         Plaintiff,

        - against -

CYRUS R. VANCE, JR., in his official capacity
as District Attorney of the County of New
York;

and

MAZARS USA, LLP,

                     Defendants.

# 19CV8694

Case No. _____

JUDGE MARRERO

**[PROPOSED] ORDER GRANTING
PLAINTIFF'S EMERGENCY
MOTION FOR A TEMPORARY
RESTRAINING ORDER AND A
PRELIMINARY INJUNCTION**

After considering Plaintiff's emergency motion for a temporary restraining order and a preliminary injunction, the parties' briefs, and the evidence and oral argument presented at the preliminary-injunction hearing, Plaintiff's motion for a temporary restraining order is **GRANTED**. Plaintiff has demonstrated "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). It is hereby **ORDERED** that, until this Court adjudicates the Plaintiff's motion for a preliminary injunction:

1. The challenged subpoena is stayed;

2. Defendant Mazars USA, LLP (and its successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with them) is enjoined from disclosing, revealing, delivering, or producing the information requested in the challenged subpoena, or otherwise taking any action to comply with the challenged subpoena; and

3.  Defendant Cyrus R. Vance, Jr. and (and his successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with them) is enjoined from taking any adverse action against Mazars for not complying with the challenged subpoena, or taking any other action to enforce the subpoena.

Dated: _____ _____, 2019

_____
United States District Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD J. TRUMP,<br><br>                    Plaintiff,<br><br>- against -<br><br>CYRUS R. VANCE, JR., in his official capacity as District Attorney of the County of New York;<br><br>and<br><br>MAZARS USA, LLP,<br>                    Defendants. | Case No. 19CV8694<br><br>JUDGE MARRERO |

### DECLARATION OF WILLIAM S. CONSOVOY

I, William S. Consovoy, declare:

1.      I am an attorney at the law firm Consovoy McCarthy PLLC, counsel for Plaintiff in the above-captioned action.

2.      I am over the age of eighteen and am under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, would competently testify to them.

3.      Exhibit A to this declaration is a true and accurate copy of an August 29, 2019 grand-jury subpoena issued by Solomon Shinerock, on behalf of the District Attorney of the County of New York, to Mazars USA, LLP.

4.      Exhibit B to this declaration is a true and accurate copy of an August 1, 2019 grand-jury subpoena issued by Solomon Shinerock, on behalf of the District Attorney of the County of New York, to The Trump Organization.

5.      Exhibit C to this declaration is a true and accurate copy of a September 18, 2019 letter from Plaintiff's attorneys to Christopher Conroy of the New York County District Attorney's office.

Per 28 U.S.C. § 1746, I declare under penalty of perjury that the above is true and correct.

Executed on September 19, 2019

*/s/ William S. Consovoy*
William S. Consovoy
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com

# Exhibit A



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

**DISTRICT ATTORNEY**
OF THE
**COUNTY OF NEW YORK**
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000

August 29, 2019

**VIA HAND DELIVERY**
Mazars USA LLP
Attn: Custodian of Records
135 West 50th Street
New York, NY 10020

**Re: Investigation Number 2018-00403803**
**Return Date: September 19, 2019**

To Whom It May Concern:

Enclosed please find a subpoena seeking records relating to the above-referenced investigation. These records are needed on or before September 19, 2019.

In lieu of appearing personally with the requested data, you may email electronic copies to paralegal Daniel Kenny (kennyd@dany.nyc.gov) or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, 80 Centre Street, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Solomon Shinerock, c/o Daniel Kenny. Please note that electronic copies are preferred.

If you have any problems or questions concerning the subpoena or the manner of delivery, please contact me at the number below.  Your attention to this matter is greatly appreciated.

Respectfully yours,

Solomon Shinerock
Assistant District Attorney
(212) 335-9567

Enc.

# SUBPOENA

(Duces Tecum)

FOR A WITNESS TO ATTEND THE

# GRAND JURY

In the Name of the People of the State of New York

**To:** **Custodian of Records**
**Mazars USA LLP**

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 907, of the Criminal Courts Building at One Hogan Place, between Centre and Baxter streets, in the Borough of Manhattan of the City, County and State of New York, on **September 19, 2019** at **2:00 p.m.** of the same day, **as a witness in a criminal proceeding:**

**Investigation into the Business and Affairs of John Doe (2018-00403803),**

**AND,** YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

SEE EXHIBIT A – ATTACHED

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS, you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.**

Dated in the County of New York,
August 29, 2019

CYRUS R. VANCE, JR.
**District Attorney, New York County**

By: _Solomon Shinerock_
Solomon Shinerock
Assistant District Attorney
(212) 335-9567

**Note**: In lieu of appearing personally with the requested documents, you may email electronic copies to paralegal Daniel Kenny (kennyd@dany.nyc.gov) or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, 80 Centre Street, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Solomon Shinerock, c/o Daniel Kenny.

Inv. Number: 2018-00403803

## EXHIBIT A TO SUBPOENA TO MAZARS USA LLP
### DATED AUGUST 29, 2019

ITEMS TO BE PRODUCED are those in the actual and constructive possession of Mazars USA LLP, its related predecessors, entities, agents, officers, employees and officials over which it has control, including without limitation subsidiaries:

1. For the period of January 1, 2011 to the present, with respect to Donald J. Trump, the Donald J. Trump Revocable Trust, the Trump Organization Inc., the Trump Organization LLC, the Trump Corporation, DJT Holdings LLC, DJT Holdings Managing Member LLC, Trump Acquisition LLC, Trump Acquisition, Corp., the Trump Old Post Office LLC, the Trump Foundation, and any related parents, subsidiaries, affiliates, joint ventures, predecessors, or successors (collectively, the "Trump Entities"):

    a. Tax returns and related schedules, in draft, as-filed, and amended form;

    b. Any and all statements of financial condition, annual statements, periodic financial reports, and independent auditors' reports prepared, compiled, reviewed, or audited by Mazars USA LLP or its predecessor, WeiserMazars LLP;

    c. Regardless of time period, any and all engagement agreements or contracts related to the preparation, compilation, review, or auditing of the documents described in items (a) and (b);

    d. All underlying, supporting, or source documents and records used in the preparation, compilation, review, or auditing of documents described in items (a) and (b), and any summaries of such documents and records; and

    e. All work papers, memoranda, notes, and communications related to the preparation, compilation, review, or auditing of the documents described in items (a) and (b), including, but not limited to,

        i. All communications between Donald Bender and any employee or representative of the Trump Entities as defined above; and

        ii. All communications, whether internal or external, related to concerns about the completeness, accuracy, or authenticity of any records, documents, valuations, explanations, or other information provided by any employee or representative of the Trump Entities.

## DEFINITIONS AND INSTRUCTIONS

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth below:

A. The terms "relate," "reference," "concern," "reflect," "include," and "including without limitation," in whatever tense used, shall be construed as is necessary in each case to make the request to produce inclusive rather than exclusive, and are intended to convey, as appropriate in context, the concepts of comprising, respecting, referring to, embodying, evidencing, connected with, commenting on, concerning, responding to, showing, refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning, defining, involving, explaining, or pertaining to in any way, expressly or impliedly, to the matter called for.

B. The words "and," "or," "any" and "all" shall be construed as is necessary in each case to make each request to produce inclusive rather than exclusive.

C. Terms in the plural include the singular and terms in the singular include the plural. Terms in the male include the female and terms in the female include the male. Neutral gender terms include all.

D. "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such. It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports. It includes, without limitation, internal and external communications of any type. It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

E. "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information,      opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

# Exhibit B



**DISTRICT ATTORNEY**
OF THE
**COUNTY OF NEW YORK**
**ONE HOGAN PLACE**
New York, N. Y. 10013
(212) 335-9000

**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

August 1, 2019

<u>**VIA EMAIL (marc.mukasey@mukaseylaw.com)**</u>
The Trump Organization
Attn: Custodian of Records
727 Fifth Avenue
New York, NY 10022

> **Re: Investigation Number 2018-00403803**
> **Return Date: August 15, 2019**

To Whom It May Concern:

Enclosed please find a subpoena seeking records relating to the above-referenced investigation. These records are needed on or before August 15, 2019.

In lieu of appearing personally with the requested documents, you may email electronic copies to paralegal Daniel Kenny (kennyd@dany.nyc.gov) or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, 80 Centre Street, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Solomon Shinerock, c/o Daniel Kenny. Please note that electronic copies are preferred.

To the extent that you withhold documents pursuant to a claim of privilege, please provide a log setting forth, as to each document, the legal basis for the claim of privilege, the type of document, its general subject matter, date, author, sender and recipient where applicable, and such other information as is sufficient to determine the claim of privilege.

If you have any problems or questions concerning the subpoena or the manner of delivery, please contact me at the number below. Your attention to this matter is greatly appreciated.

Sincerely,

Solomon Shinerock
Assistant District Attorney
(212) 335-9567

Enc.

# SUBPOENA
### (Duces Tecum)

FOR A WITNESS TO ATTEND THE

# GRAND JURY

In the Name of the People of the State of New York

**To:**   **Custodian of Records**
        **The Trump Organization**

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 907, of the Criminal Courts Building at One Hogan Place, between Centre and Baxter streets, in the Borough of Manhattan of the City, County and State of New York, on **August 15, 2019** at **2:00 p.m.** of the same day, **as a witness in a criminal proceeding:**

### Investigation into the Business and Affairs of John Doe (2018-00403803),

**AND**, YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

### SEE EXHIBIT A – ATTACHED

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS, you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.**

Dated in the County of New York,
August 1, 2019

                                        CYRUS R. VANCE, JR.
                                        **District Attorney, New York County**

By: _____
                                        Solomon Shinerock
                                        Assistant District Attorney
                                        (212) 335-9567

**Note**: In lieu of appearing personally with the requested documents, you may email electronic copies to paralegal Daniel Kenny (kennyd@dany.nyc.gov) or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, 80 Centre Street, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Solomon Shinerock, c/o Daniel Kenny.

                                        Inv. Number: 2018-00403803

## EXHIBIT A TO SUBPOENA TO THE TRUMP ORGANIZATION
### DATED AUGUST 1, 2019

ITEMS TO BE PRODUCED are those in the actual and constructive possession of the Trump Organization, its entities, agents, officers, employees and officials over which it has control, including without limitation its subsidiaries:

1.  For the period of June 1, 2015, through September 20, 2018, any and all documents and communications that relate to, reference, concern, or reflect:

    a.  payments made for the benefit of or agreements concerning Karen McDougal,
    b.  payments made for the benefit of or agreements concerning Stephanie Clifford aka Stormy Daniels aka Peggy Peterson,
    c.  payments made to or agreements with Michael Cohen or American Media, Inc. that concern Karen McDougal or Stephanie Clifford aka Stormy Daniels aka Peggy Peterson,

    including but not limited to documents and communications involving:

    -   Resolution Consultants LLC
    -   Essential Consultants LLC aka EC LLC
    -   Entities owned or controlled by Michael Cohen
    -   Michael Cohen
    -   David Dennison
    -   Keith Davidson
    -   Keith M. Davidson & Associates
    -   American Media, Inc.
    -   National Enquirer
    -   David Pecker
    -   Dylan Howard
    -   Hope Hicks
    -   Jill Martin
    -   Jeffrey McConney
    -   Deborah Tarasoff
    -   Donald Trump, Jr.
    -   Allen Weisselberg.

    The items sought by this demand include without limitation: emails, memoranda, and other communications; invoices; agreements, including without limitation retainer agreements; accounting and other book entries or backup documents; general ledger records; wire transfer requests and related records, check images, bank statements, and any other evidence of payments or installments; and organizational documents and agreements, including without limitation articles of incorporations, limited liability agreements, and minutes of director or member meetings.

2.  For the period of June 1, 2015, through September 20, 2018, any and all documents and communications that relate to, reference, concern, or reflect Michael Cohen's employment by or work on behalf of Donald Trump or the Trump Organization at any time, including without limitation:

invoices, payment records, human resource records, W2s, 1099s, emails, memoranda, and other communications.

3. For any responsive documents or communications withheld under a claim of privilege, please provide a log setting forth, as to each such document or communication, the legal basis for the claim of privilege, the type of document or communication, its general subject matter, date, author, sender and recipient where applicable, and such other information as is sufficient to determine the claim of privilege.

## DEFINITIONS AND INSTRUCTIONS

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth below:

A.  The terms  "relate," "reference," "concern," "reflect," "include," and "including without limitation," in whatever tense used, shall be construed as is necessary in each case to make the request to produce inclusive rather than exclusive, and are intended to convey, as appropriate in context, the concepts of comprising, respecting, referring to, embodying, evidencing, connected with, commenting on, concerning, responding to, showing, refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning, defining, involving, explaining, or pertaining to in any way, expressly or impliedly, to the matter called for.

B.  The words "and," "or," "any" and "all" shall be construed as is necessary in each case to make each request to produce inclusive rather than exclusive.

C.  Terms in the plural include the singular and terms in the singular include the plural.  Terms in the male include the female and terms in the female include the male.  Neutral gender terms include all.

D.  "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled.  This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such.  It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports.  It includes, without limitation, internal and external communications of any type.  It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

E .  "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information,    opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

# Exhibit C



# MUKASEY
# FRENCHMAN & SKLAROFF LLP

2 Grand Central Tower
140 East 45th Street, Suite 17A
New York, NY 10017

Marc L. Mukasey
Partner
212-466-6406
Marc.mukasey@mfsllp.com

September 18, 2019

**VIA EMAIL AND OVERNIGHT MAIL**
Christopher Conroy (CONROYC@dany.nyc.gov )
Chief, Major Economic Crimes Bureau
District Attorney's Office, New York County
One Hogan Place
New York, NY 10013

Re:     **Grand Jury Subpoena Duces Tecum to Mazars USA LLP**

Dear Mr. Conroy:

This letter addresses the issues discussed in today's meeting and our follow-up phone call.

As you know, we represent President Donald J. Trump and the Trump Organization in connection with a grand jury subpoena issued to Mazars USA LLP ("Mazars"). Mazars is the outside accountant to President Trump and the Trump Organization and, thus, is merely a custodian of the records sought by the subpoena. Our clients are the true parties-in-interest. We write to request, as we did at the meeting, that you temporarily suspend enforcement of the subpoena to allow for the proper and orderly resolution of the important constitutional issues raised therein. We submit that such a procedure best promotes the interests of fairness and justice—as well as respect for the Office of the President. **We are asking for a written statement from your office by 1pm on September 18, 2019, that you are willing to suspend enforcement of the Mazars subpoena pending further negotiation and/or litigation.**

By way of background, on August 1, 2019, your office issued a grand jury subpoena to the Trump Organization in connection with a certain investigation. Upon receipt of the subpoena, the Trump Organization immediately expressed its willingness to cooperate with your office and it has done so. The Trump Organization has produced hundreds of documents in response to the subpoena—including many that you identified as priority items—and additional responsive documents are being gathered, reviewed, and prepared for production. Notably, the subpoena does not call for the Trump Organization's tax returns. But when you nevertheless indicated otherwise, we agreed to meet and discuss the issue. In the meantime, the Trump Organization has maintained an open line of communication with your office, adhered to deadlines, and conducted itself in a cordial and amicable manner.

Two weeks ago, you issued a grand jury subpoena to Mazars in connection with the same investigation. That subpoena calls for Mazars to produce, among other things, many years of President Trump's personal tax returns and those of the Trump Organization. The subpoena is returnable on September 19, 2019, and, thus far, you have refused to grant Mazars an extension of time to produce the requested documents.

The issues raised by the Mazars subpoena are important and unprecedented. They raise serious constitutional issues that should be properly resolved in court. Efforts to obtain the President's tax returns are the subject of litigation in the United States Court of Appeals for the Second Circuit, the United States

Christopher Conroy
September 18, 2019
Page 2

Court of Appeals for the District of Columbia Circuit, and the United States District Court for the District of Columbia. The issues at stake are simply too significant to place Mazars in the untenable position of producing the President's tax returns on September 19th or being held in contempt.

Resolution of this matter of first impression will set the course for future occupants of the Oval Office. It should be handled prudently. That is why the House Oversight Committee agreed to suspend enforcement of its subpoena to Mazars so the constitutional dispute could be litigated in an orderly fashion without burdening courts with requests for emergency relief. It would be deeply troubling if your office is unwilling to do the same here.

We respectfully request that you approach this matter with the same rectitude and courtesy Congress did when it issued subpoenas for the President's records to Mazars, Capital One, and Deutsche Bank: suspend enforcement of the subpoena to Mazars so the President of the United States can be heard in court. No prejudice will accrue to your office - your investigation appears to be historical, there is no danger of spoliation, and there is no urgency to the matter.

Finally, your blanket refusal to grant a brief extension to Mazars is inconsistent with how state and federal investigations typically proceed. The undersigned counsel has vast experience in these matters and we, collectively, do not recall an instance where at least one brief adjournment was not granted while the parties explored their legal and negotiation options. Ignoring these normal practices smacks of selective enforcement against the President.

Thank you again for meeting and for arranging a meeting with the District Attorney. We look forward to hearing from you in writing by 1pm on September 18th, and to working with you on this matter in a professional, orderly fashion.

Very truly yours,

Marc L. Mukasey
Founding Partner
Mukasey Frenchman & Sklaroff LLP
140 East 45th Street
New York, New York 10017

William S. Consavoy
Consavoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA. 22209

Alan S. Futerfas
565 Fifth Avenue
New York, New York 10017

cc:    Cyrus R. Vance Jr., District Attorney
       ADA Solomon Shinerock

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD J. TRUMP,

                Plaintiff,

      - against -

CYRUS R. VANCE, JR., in his official capacity
as District Attorney of the County of New
York; SOLOMON SHINEROCK, in his
official capacity as Assistant District Attorney
for the County of New York;

and

MAZARS USA, LLP,

                Defendants.

19CV8694

JUDGE MARRERO

Case No. _____

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING
ORDER AND A PRELIMINARY
INJUNCTION**

## INTRODUCTION

Under Article II, the Supremacy Clause, and the structure of our Constitution, the President of the United States cannot be "subject to the criminal process" while he is in office. *Memorandum for the U.S. Concerning the Vice President's Claim of Constitutional Immunity* 17, *In re Proceedings of the Grand Jury Impaneled Dec. 5, 1972*, No. 73-cv-965 (D. Md.) (Bork Memo). Virtually "all legal commenters" agree. *Id.* The United States Department of Justice agrees too. *See A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 O.L.C. Op. 222 (Oct. 16, 2000). And no court has ever suggested otherwise.

Yet the District Attorney of New York County is charging down this blatantly unconstitutional path; and he's plainly doing so in a way that, he hopes, will evade judicial review altogether. The District Attorney is subjecting the President to criminal process: he is investigating alleged criminal conduct by the President, has issued a grand jury subpoena to the President's business, and is seeking the President's personal financial information. But when negotiations over that subpoena reached an impasse, the District Attorney issued a new subpoena to Mazars USA, LLP—the President's longtime accountant. By subpoenaing Mazars, a neutral third-party custodian, and threatening it with contempt

if it did not divulge the President's records by September 19, 2019, the District Attorney sought to

"frustrate any judicial inquiry" into the subpoena's validity. *Eastland v. U.S. Servicemen's Fund*, 421 U.S.

491, 501 n.14 (1975).

This is untenable. The President of the United States is entitled to his day in court. "[T]he

fortuity that documents sought … are not in the hands of a party claiming injury from the subpoena

should not immunize that subpoena from challenge by that party," and "[t]he fact that the Executive

is not in a position to assert its claim of constitutional right by refusing to comply with a subpoena

does not bar the challenge." *United States v. AT&T Co.*, 567 F.2d 121, 129 (D.C. Cir. 1977). Indeed,

this is not the first time that the President has been forced to challenge subpoenas to third-party

custodians for his confidential financial information. But in those cases, the congressional defendants

agreed to stay their subpoenas until the district court resolved the President's preliminary-injunction

motion (plus one week). *See Trump v. Comm. on Oversight & Reform of U.S. House of Representatives*, 380

F. Supp. 3d 76, 88 (D.D.C. 2019); Doc. 21, No. 19-cv-3826, *Trump v. Deutsche Bank, AG* (S.D.N.Y.).

Yet, when asked to offer this same minimum relief here so that this important constitutional dispute

could be litigated in an orderly and equitable fashion, the District Attorney refused in the hope that

he could force Mazars to quickly comply and subvert judicial review.[1]

The President, accordingly, was forced to file this emergency motion. For the reasons set forth

below, The President respectfully requests a temporary restraining order prohibiting Defendants from

enforcing or complying with the Mazars subpoena until the President's preliminary-injunction motion

is resolved. After the TRO, the President requests a preliminary injunction prohibiting Defendants

from enforcing or complying with the Mazars subpoena until his claims are resolved on the merits. If

the Court needs more time, the President asks it to administratively stay the subpoena. To preserve

---

[1] Yesterday afternoon, the District Attorney offered to give Mazars until September 23, 2019
to produce the portion of the subpoena calling for tax records—an extension of only two business
days for a mere subset of the requested documents. That offer still requires Mazars to produce reams
of documents on September 19, and it does not give the President enough time to litigate his claim.

the President's rights and this Court's jurisdiction, the President asks the Court for interim relief no later than **noon on September 19, 2019**.

The President is entitled to interim relief for two independent reasons. ***First***, the President faces "'irreparable harm'" and has a "'likelihood of success on the merits.'" *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). The President will suffer irreparable harm because, if this Court does not intervene to preserve the status quo, there will be no way to unring the bell once Mazars complies with the District Attorney's subpoena. The District Attorney will have reviewed confidential documents that this Court may later determine were illegally demanded. No damages award could ever make the President whole. And the denial of temporary relief could prevent any meaningful judicial review of the President's claims. This is the quintessential case of irreparable harm.

The President is also likely to prevail on the merits. No State can criminally investigate, prosecute, or indict a President while he is in office. Unlike private civil suits, criminal investigations impose severe burdens on the President and distract him from his constitutional duties. When the prosecuting authority is a State, criminal investigations also violate core principles of federalism and supremacy. That is why the Department of Justice and legal scholars have long held the view that the President is immune from criminal process, for official and unofficial conduct alike, while he is in office. "[P]ermitting such criminal process against a sitting President would affect the underlying dynamics of our governmental system in profound and necessarily unpredictable ways, by shifting an awesome power to … persons lacking an explicit constitutional role vis-a-vis the President." 24 O.L.C. Op. at 258.

***Second***, the President easily prevails under the alternative test for a preliminary injunction: irreparable harm plus "'sufficiently serious questions going to the merits to make them a fair ground for litigation'" and "'a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup*, 598 F.3d at 35. In a procedurally similar case, the D.C. Circuit has held

that irreparable harm is the "decisive element" favoring interim relief against a subpoena to a third-party custodian. *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1256-57 (D.C. Cir. 1973), *subsequent merits decision rev'd on other grounds*, 421 U.S. 491. Only interim relief can ensure that the third-party custodian does not disclose the plaintiff's information before the court can consider the "serious constitutional questions" raised by the subpoenas with the necessary "consideration and deliberation." *Id.* That is precisely the situation here.

For the same reasons, the balance of harms and public interest tilt decidedly in the President's favor. Mazars will suffer no harm if interim relief is granted; if anything, it will be spared the cost of complying with the subpoena and the prospect of liability to the President if the subpoena is invalid. The only harm that the District Attorney will suffer, if he ultimately prevails on the merits, is some delay before receiving the documents. Courts have consistently held that such harm is given little weight and pales in comparison to the severe injury that the plaintiff will suffer if the status quo is not preserved. Moreover, there is no public interest in allowing the District Attorney to subvert judicial review by enforcing a subpoena that has been challenged as unconstitutional. To the contrary, the public interest is served by ensuring that this important dispute of constitutional magnitude is fully and fairly resolved.

Finally, granting a preliminary injunction will allow this case to be adjudicated in an orderly fashion. Without one, the President will be forced to seek the same relief from the Second Circuit and the Supreme Court. There is no reason to burden the appellate courts with emergency requests. The preliminary injunction would be for a limited duration, would ensure that the status quo is preserved while this Court considers the merits, and would cause no appreciable harm to Defendants or the public. The President thus respectfully requests that this Court grant an administrative stay (if needed), a TRO, and a preliminary injunction.

## BACKGROUND

On August 1, 2019, the District Attorney issued a grand jury subpoena to The Trump Organization for documents and communications concerning the President. *See* Consovoy Decl., Ex. B. The President's attorneys entered into negotiations with the District Attorney's office, and The Trump Organization began complying with the subpoena. But the District Attorney's office later revealed that it read the subpoena to cover the President's personal tax returns. When the President's attorneys resisted that implausible interpretation, the District Attorney's office decided to circumvent the President by issuing a new subpoena to Mazars, a neutral third-party custodian, to produce this information instead.

That subpoena, which was issued on August 29, 2019, directs Mazars to produce a specific list of records concerning the President:

1. For the period of January 1, 2011 to the present, with respect to Donald J. Trump, the Donald J. Trump Revocable Trust, the Trump Organization Inc., the Trump Organization LLC, the Trump Corporation, DJT Holdings LLC, DJT Holdings Managing Member LLC, Trump Acquisition LLC, Trump Acquisition, Corp., the Trump Old Post Office LLC, the Trump Foundation, and any related parents, subsidiaries, affiliates, joint ventures, predecessors, or successors (collectively, the "Trump Entities"):

    a. Tax returns and related schedules, in draft, as-filed, and amended form;

    b. Any and all statements of financial condition, annual statements, periodic financial reports, and independent auditors' reports prepared, compiled, reviewed, or audited by Mazars USA LLP or its predecessor, WeiserMazars LLP;

    c. Regardless of time period, any and all engagement agreements or contracts related to the preparation, compilation, review, or auditing of the documents described in items (a) and (b);

    d. All underlying, supporting, or source documents and records used in the preparation, compilation, review, or auditing of documents described in items (a) and (b), and any summaries of such documents and records; and

    e. All work papers, memoranda, notes, and communications related to the preparation, compilation, review, or auditing of the documents described in items (a) and (b), including, but not limited to,

        i. All communications between Donald Bender and any employee or representative of the Trump Entities as defined above; and

5

    ii.   All communications, whether internal or external, related to concerns about the completeness, accuracy, or authenticity of any records, documents, valuations, explanations, or other information provided by any employee or representative of the Trump Entities.

2. For the period of January 1, 2011 to the present, with respect to Donald J. Trump, the Donald J. Trump Revocable Trust, the Trump Organization Inc., the Trump Organization LLC, the Trump Corporation, DJT Holdings LLC, DJT Holdings Managing Member LLC, Trump Acquisition LLC, Trump Acquisition, Corp., the Trump Old Post Office LLC, the Trump Foundation, and any related parents, subsidiaries, affiliates, joint ventures, predecessors, or successors (collectively, the "Trump Entities"):

    a.   Tax returns and related schedules, in draft, as-filed, and amended form;

    b.   Any and all statements of financial condition, annual statements, periodic financial reports, and independent auditors' reports prepared, compiled, reviewed, or audited by Mazars USA LLP or its predecessor, WeiserMazars LLP;

    c.   Regardless of time period, any and all engagement agreements or contracts related to the preparation, compilation, review, or auditing of the documents described in items (a) and (b);

    d.   All underlying, supporting, or source documents and records used in the preparation, compilation, review, or auditing of documents described in items (a) and (b), and any summaries of such documents and records; and

    e.   All work papers, memoranda, notes, and communications related to the preparation, compilation, review, or auditing of the documents described in items (a) and (b), including, but not limited to,

       i.   All communications between Donald Bender and any employee or representative of the Trump Entities as defined above; and

      ii.   All communications, whether internal or external, related to concerns about the completeness, accuracy, or authenticity of any records, documents, valuations, explanations, or other information provided by any employee or representative of the Trump Entities.

Consovoy Decl., Ex. A.

Quite remarkably, the District Attorney's subpoena to Mazars is identical to a subpoena that the House Oversight Committee issued to Mazars (except for a few stylistic edits). *See* Doc. 11-2, at 3, *Trump v. Comm. on Oversight & Reform*, No. 19-cv-1136 (D.D.C.). The only exception is paragraph 1.a. The House Oversight Committee did not ask Mazars for the President's tax returns, but the District Attorney did. That request mirrors a subpoena that the House Ways and Means Committee sent to the Treasury Department. *See* Doc. 1-14, *Comm. on Ways & Means v. U.S. Dept. of Treasury*, No.

1:19-cv-1974 (D.D.C.). Essentially, then, the District Attorney cut-and-pasted the House Oversight and House Ways and Means subpoenas into a document and sent them to Mazars.

The District Attorney's subpoena orders Mazars to produce the requested information by 2:00 p.m. on September 19, 2019. As with the first subpoena, the President's attorneys reached out to the District Attorney's office to engage in good-faith negotiations over the Mazars subpoena, including at a meeting with the District Attorney earlier today. Yet the District Attorney's office ultimately refused to narrow the subpoena, allow more time for negotiations, or even stay enforcement of the subpoena while the parties litigate over its validity. The President was thus forced to file this emergency motion for interim relief.

## ARGUMENT

The standard for granting a TRO and a preliminary injunction are the same. *AIM Int'l Trading LLC v. Valcucine SpA.*, 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002). Preliminary relief is warranted if there is "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup*, 598 F.3d at 35. The President is entitled to relief under either standard.

**I.     The President will suffer irreparable harm without a preliminary injunction.**

The President undoubtedly faces irreparable harm if the Court does not issue an order preserving the status quo. If this Court does not intervene, Mazars could give the District Attorney reams of the President's financial records—private information that was shared with Mazars on the condition that it would be kept confidential. If Mazars produces the information, the status quo can never be restored. One district court aptly explained why the disclosure of confidential records is "[c]learly … irreparable in nature":

> Once confidentiality is breached, the harm is done and cannot be undone. Plaintiff cannot subsequently perform its commitment to its clients to protect the confidentiality of the documents and the information which they contain. There is no way to recapture and remove from the knowledge of others information improperly

disclosed by Defendant. No court order or specific performance can be framed to accomplish that end, and no award of money damages will change the fact that information which Plaintiff was entitled to have kept from the knowledge of third parties is no longer shielded from their gaze. Confidentiality, like pregnancy, is an all or nothing proposition; either it exists or it does not exist.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 72 (D. Me. 1993). "Once the documents are surrendered," in other words, "confidentiality will be lost for all time. The status quo could never be restored." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979); *see PepsiCo, Inc. v. Redmond*, 1996 WL 3965, at *30 (N.D. Ill. 1996) ("[J]ust as it is impossible to unring a bell, once disclosed, … confidential information lose their secrecy forever"); *Metro. Life Ins. Co. v. Usery*, 426 F. Supp. 150, 172 (D.D.C. 1976) ("Once disclosed, such information would lose its confidentiality forever."). That is why "[t]he disclosure of private, confidential information 'is the quintessential type of irreparable harm that cannot be compensated or undone by money damages.'" *Airbnb, Inc. v. City of New York*, 2019 WL 91990, at *23 (S.D.N.Y. Jan. 3, 2019) (quoting *Hirschfeld v. Stone*, 193 F.R.D. 175, 187 (S.D.N.Y. 2000)).

Immediate relief is also needed to preserve the President's opportunity to secure judicial review of his constitutional claim. "Courts routinely issue injunctions to stay the status quo when" events might otherwise "moot the losing party's right to appeal." *John Doe Co. v. CFPB*, 235 F.Supp.3d 194, 206 (D.D.C. 2017); *see Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003) (explaining that the movant makes "a strong showing of irreparable harm" where disclosure would moot any appeal); *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309, (1989) (Marshall, J., in chambers) ("The fact that disclosure would moot that part of the Court of Appeals' decision requiring disclosure … create[s] an irreparable injury."). This "irreparable" harm exists when a plaintiff challenges a subpoena to a third party. *Eastland*, 488 F.2d at 1256. "[C]ompliance by the third person could frustrate any judicial inquiry" into the subpoena's legality. *Eastland*, 421 U.S. at 501 n.14. Allowing this to happen would wrongly deny the plaintiff's rights and "immunize the subpoena from challenge" based on "the fortuity that documents sought by [the] subpoena are not in the hands

of a party claiming injury from the subpoena." *United States v. AT&T Co.*, 567 F.2d 121, 129 (D.C. Cir. 1977). In short, denying interim relief could "entirely destroy [plaintiffs'] rights to secure meaningful review." *Providence Journal*, 595 F.2d at 890. That is classic irreparable harm.

## II.    The President is likely to succeed on the merits.

The President of the United States cannot be "subject to the criminal process" while he is in office. Bork Memo 17. This principle follows from Article II, the Supremacy Clause, and the overall structure of the Constitution.

Article II vests "[t]he executive Power" in one "President of the United States of America." §1. The President thus "occupies a unique position in the constitutional scheme," *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982); he "is the only person who is also a branch of government," Jay S. Bybee, *Who Executes the Executioner?*, 2-SPG NEXUS: J. Opinion 53, 60 (1997). Because "the President is a unitary executive," "[w]hen the President is being prosecuted, the presidency itself is being prosecuted." Akhil Reed Amar & Brian C. Kalt, *The Presidential Privilege Against Prosecution*, 2-SPG NEXUS: J. Opinion 11, 12 (1997).

Article II also gives the President immense authority over foreign and domestic affairs. He must, among other things, command the armed forces, negotiate treaties and receive ambassadors, appoint and remove federal officers, and "take Care that the Laws be faithfully executed." §§2-3. The President is "the chief constitutional officer of the Executive Branch, entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity." *Fitzgerald*, 457 U.S. at 750. "Unlike federal lawmakers and judges, the President is at 'Session' twenty-four hours a day, every day. Constitutionally speaking, the President never sleeps. The President must be ready, at a moment's notice, to do whatever it takes to preserve, protect, and defend the Constitution and the American people." Akhil Reed Amar & Neal Kumar Katyal, *Executive Privileges and Immunities: The Nixon and Clinton Cases*, 108 Harv. L. Rev. 701, 713 (1995).

"'[N]ecessarily implied'" from the grant of these duties is "'the power to perform them.'" *Fitzgerald*, 457 U.S. at 749 (quoting 3 J. Story, *Commentaries on the Constitution of the United States* §1563). "'The president cannot, therefore, be liable to arrest, imprisonment, or detention, while he is in the discharge of his office.'" *Id.* Nor can he be investigated, indicted, or otherwise subjected to criminal process. *See A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 O.L.C. Op. 222, 246-60 (Oct. 16, 2000); *accord* Brett M. Kavanaugh, *Separation of Powers During the Forty-Fourth Presidency and Beyond*, 93 Minn. L. Rev. 1454, 1461 (2009) ("Even the lesser burdens of a criminal investigation—including preparing for questioning by criminal investigators—are time-consuming and distracting.... [C]riminal investigations take the President's focus away from his or her responsibilities to the people. And a President who is concerned about an ongoing criminal investigation is almost inevitably going to do a worse job as President."); *Nixon v. Sirica*, 487 F.2d 700, 757 (D.C. Cir. 1973) (MacKinnon, J., concurring in part and dissenting in part) (explaining that "*all* aspects of criminal prosecution of a President must follow impeachment" and that "removal from office must precede *any* form of criminal process against an incumbent President" (emphases added)).

Notably, the Framers' debates at the Philadelphia Convention "strongly suggest an understanding that the President, as Chief Executive, would not be subject to the ordinary criminal process." Bork Memo. 6. They understood "that the nation's Chief Executive, responsible as no other single officer is for the affairs of the United States, would not be taken from duties that only he can perform unless and until it is determined that he is to be shorn of those duties by the Senate." *Id.* at 17. Oliver Ellsworth and John Adams, for example, stated that "'the President, personally, was not the subject to any process whatever.... For [that] would ... put it in the power of a common justice to exercise any authority over him and stop the whole machine of Government.'" *Fitzgerald*, 457 U.S. at 750 n.31. Later, Thomas Jefferson opined that the Constitution would not tolerate the President being "'subject to the commands of the [judiciary], & to imprisonment for disobedience; if the several

courts could bandy him from pillar to post, keep him constantly trudging from north to south & east to west,'" they could "'withdraw him entirely from his constitutional duties.'" *Id.*

While the Supreme Court has held that a private litigant can sue the President in federal court for his unofficial conduct, *see Clinton v. Jones*, 520 U.S. 681 (1997), criminal process comes with a "distinctive and serious stigma" that "imposes burdens fundamentally different in kind from those imposed by the initiation of a civil action"—burdens that would intolerably "threaten the President's ability to act as the Nation's leader in both the domestic and foreign spheres." 24 O.L.C. Op. at 249. "A civil complaint filed by a private person is understood as reflecting one person's allegations," while the "stigma and opprobrium associated with a criminal charge" is "a public rather than private allegation of wrongdoing" that would "undermin[e] the President's leadership and efficacy both here and abroad." *Id.* at 250-51. The "burdens of responding" to criminal proceedings, moreover, "are different in kind and far greater than those of responding to civil litigation," given their intensely personal nature, their "unique mental and physical burdens" on the suspect, and the "substantial preparation" they demand. *Id.* at 251-54.

At bottom, "[t]o wound [the President] by a criminal proceeding is to hamstring the operation of the whole governmental apparatus, both in foreign and domestic affairs." Memorandum from Robert G. Dixon, Jr., Asst. Att'y Gen., O.L.C., *Re: Amenability of the President, Vice President, and Other Civil Officers to Federal Criminal Prosecution While in Office* 30 (Sept. 24, 1973) (Dixon Memo.). The President thus cannot be subject to criminal investigation, for any conduct of any kind, while he is serving as President.[2]

---

[2] Other provisions of the Constitution bolster this conclusion. Beyond creating a unitary executive and granting him immense powers and responsibilities, Article II also provides that the President "shall hold his Office during the Term of four Years" and contemplates his "remov[al]" only via "Impeachment." §§1, 4. Removal by impeachment, in turn, requires conviction by two-thirds of the Senate. Art. I, §3. Indeed, the Constitution states that a President "convicted" by the Senate can *then* be "liable and subject to Indictment, Trial, Judgment, and Punishment, according to Law." *Id.* The use of the past-tense "convicted" reinforces that the President cannot be subject to criminal process *before* that point. *See* Bybee 54-65. Prominent Founders agreed. *See, e.g.*, Federalist No. 69, at

Any other rule is untenable. It would allow a single prosecutor to circumvent the Constitution's specific rules for impeachment. *See Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 610 (1838); 24 O.L.C. Op. at 246. The Constitution's assignment of the impeachment power to Congress and its supermajority requirement for removal ensure that "the process may be initiated and maintained only by politically accountable legislative officials" who represent a majority of the entire nation. 24 O.L.C. Op. at 246; *see also* Dixon Memo 32 ("[T]he presidential election is the only national election, and there is no effective substitute for it…. The decision to terminate [the President's nationwide electoral] mandate, therefore, is more fittingly handled by the Congress than by a jury"); Amar & Kalt 12 ("The President is elected by the entire polity and represents all 260 million citizens of the United States of America. If the President were prosecuted, the steward of *all* the People would be hijacked from his duties by an official of *few* (or none) of them."); Amar & Kaytal 713.

The constitutional prohibition on subjecting a sitting President to criminal process is even stronger when applied to state and local governments. "Because the Supremacy Clause makes federal law 'the supreme Law of the Land,' Art. VI, cl. 2, any direct control by a state court over the President, who has principal responsibility to ensure that those laws are 'faithfully executed,' Art. II, §3," raises serious constitutional concerns even in civil cases. *Jones*, 520 U.S. at 691 (citing *Hancock v. Train*, 426 U.S. 167, 178-79 (1976); and *Mayo v. United States*, 319 U.S. 441, 445 (1943)). But in criminal cases, where the State is not acting as a mere forum for private litigation but is *itself* interfering with the President's duties, investigating the President plainly violates the Supremacy Clause.

---

416 (Alexander Hamilton) (Rossiter ed., 1961) ("The President … would be liable to be impeached, tried, and, upon conviction … would *afterwards* be liable to prosecution and punishment in the ordinary course of law." (emphasis added)); 2 Farrand, *Records of the Federal Convention* 500 (rev. ed. 1966) (Gouverneur Morris: "A conclusive reason for making the Senate instead of the Supreme Court the Judge of impeachments, was that the latter was to try the President *after* the trial of the impeachment." (emphasis added)); Federalist No. 77 at 464 (Alexander Hamilton) (discussing impeachment and "*subsequent* prosecution in the common course of law" (emphasis added)).

Under the Supremacy Clause, States cannot "defeat the legitimate operations" of the federal government. *M'Culloch*, 17 U.S. at 427. "It is of the very essence of supremacy, to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence." *Id.* Because the President is the solitary head of the executive branch, subjecting him to criminal process would "arrest[] all the [executive powers] of the government, and … prostrat[e] it at the foot of the states." *M'Culloch*, 17 U.S. at 432; *see* Amar & Kalt 13-16.

The threat that state criminal process poses to a President cannot be overstated. He is an "easily identifiable target," and "[c]ognizance of this personal vulnerability frequently could distract a President from his public duties, to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Fitzgerald*, 457 U.S. at 752-53. State and local prosecutors have massive incentives to criminally investigate the President to advance their careers or damage a political opponent. And given the heavy burdens associated with criminal process, "all you need is one prosecutor, one trial judge, the barest amount of probable cause, and a supportive local constituency, and you can shut down a presidency." Jed Shugerman, *A Sitting President Generally Can't Be Indicted*, ShugerBlog (May 22, 2018), bit.ly/2kCYb0w.

For all of these reasons, the Constitution prohibits States from subjecting the President to criminal process while he is in office. The notion that this prohibition "places the President 'above the law'" is "wholly unjustified." *Fitzgerald*, 457 U.S. at 758 n.41. "It is simply error to characterize an official as 'above the law' because a particular remedy is not available against him." *Id.* Again, "[a] sitting President who engages in criminal behavior falling into the category of 'high Crimes and Misdemeanors' always subject to removal from office upon impeachment by the House and conviction by the Senate, and is thereafter subject to criminal prosecution." 24 O.L.C. Op. 257; *see also* Bybee 63 ("[T]hat the President is not above the law … is a red herring…. [The relevant constitutional] clauses do not give the President immunity from prosecution; rather, they specify an order in which

13

things are to occur."). We of course have "a government of laws, not men," but "the People have a right to vigorous Executive who protects and defends them, their country, and their Constitution. Temporary immunity is the only way to ensure both of these things." Amar & Kalt 20-21.

The District Attorney's subpoena to Mazars attempts to criminally investigate the President. It names him as a target. It seeks his personal records, including his personal tax returns. It was directed to his business, and then his accountant, precisely because of their connections with the President. It precisely copies a congressional subpoena that the House General Counsel admitted "involve[s] the presidency" and "you have to look at … in terms of these are the records of the President." O.A. Transcript 76-77, *Trump v. Mazars USA, LLP*, No. 19-5142 (D.C. Cir.). The District Attorney's subpoena also asks about the President's alleged conduct. As a grand-jury subpoena, its purpose is to bolster "a finding that it is probable that the President has committed a crime." *Sirica*, 487 F.2d at 758 (MacKinnon, J., concurring in part and dissenting in part). That insinuation, even if made "obliquely," would "vitiate the sound judgment of the Framers that a President must possess the continuous and undiminished capacity to fulfill his constitutional obligations." *Id.* Our constitutional system forbids a single State from investigating the President in this matter. The Mazars subpoena cannot be enforced while the President is in office.

**III.   Alternatively, the President has raised serious questions and the balance of hardships tips decidedly in his favor.**

At the very least, the President's claim raises "'sufficiently serious questions going to the merits to make them a fair ground for litigation'" and the "balance of hardships tip[s] decidedly toward … preliminary relief.'" *Citigroup*, 598 F.3d at 35. *Eastland* is directly analogous. There, a congressional committee subpoenaed the plaintiff's bank for "records pertaining to or involving the [plaintiff's] account or accounts." 488 F.2d at 1254. The plaintiff sued the bank and several congressional defendants for a declaration that the subpoena was unenforceable and for an injunction prohibiting the defendants from enforcing or complying with it. *Id.* at 1254-56. When the district court denied a

TRO, the D.C. Circuit reversed and stayed the subpoena's enforcement. *See id.* at 1256. The "decisive element" favoring a stay, the D.C. Circuit explained, was the fact that "unless a stay is granted this case will be mooted, and there is likelihood, that irreparable harm will be suffered by [plaintiff when the subpoena's due date arrives]." *Id.* The court added that the stay was warranted because the case raised "serious constitutional questions that require more time" and issues "of such significance that they require" further "consideration and deliberation." *Id.* When the district court then denied a preliminary injunction on remand, the D.C. Circuit reversed again and entered another stay to preserve the status quo. *See id.* at 1257. The D.C. Circuit reiterated that the district court needed to fully consider the merits of plaintiff's claims on final judgment to "ensure" that the case "is determined with the best available perspective, both as to the underlying evidence and the appraisal thereof by the District Judge." *Id.* at 1257.

This Court should follow *Eastland*. Here too, the President faces "irreparable harm" if he does not receive interim relief before the subpoena's due date. *Id.* at 1256. And here too, the President raises "serious constitutional questions" that should be resolved following full merits briefing, oral argument, and this Court's "best available perspective" after thoughtful "consideration and deliberation." *Id.* at 1256-57. If anything, the constitutional questions raised in this case—whether and how a State can subject a sitting President to criminal process—are more serious and important than the questions in *Eastland*. *See* Brett M. Kavanaugh, *Separation of Powers During the Forty-Fourth Presidency and Beyond*, 93 Minn. L. Rev. 1454, 1486 n.31 (2009). And ruling against the President on these questions would overrule the formal position of the U.S. Department of Justice and the views of "[a]lmost all legal commentators." Bork Memo 17. Hence, the fact that the President will suffer irreparable harm if the subpoena is not stayed and Mazars reveals his information should be "decisive." *Eastland*, 488 F.2d at 1257.

Also like *Eastland*, the balance of harms in this case tips decidedly in favor of a preliminary injunction. For Mazars, it will actually *benefit* from an order preserving the status quo. As a matter of

state and federal law, accountants like Mazars have a legal obligation to keep their clients' information confidential. *See* AICPA Code §1.700.001.01 (prohibiting accountants from "disclos[ing] any confidential client information without the specific consent of the client"); 8 N.Y.C.R.R. §29.10(c) ("[U]nprofessional conduct" by accountants includes the "revealing of personally identifiable facts, data or information obtained in a professional capacity without the prior consent of the client."); 26 U.S.C. §7216 (prohibiting tax preparers from disclosing tax returns). A subpoena does not exempt Mazars from this duty unless it is "validly issued and enforceable." AICPA Code §1.700.001.02. But the validity and enforceability of the subpoena is exactly what the President challenges in this lawsuit. Mazars thus faces a difficult choice: ignore the subpoena and risk adverse action by the District Attorney, or comply with the subpoena and risk liability to the President. Only interim relief resolves this dilemma: It allows an "orderly resolution of [the] disputed question" by permitting Mazars to "merely await a court ruling on [the President's] challenge." *AT&T*, 567 F.2d at 129. Such relief would recognize and enforce the principle that, when a client "challenges the enforceability of a subpoena," the accountant "c[an] refuse to produce the documents, thereby allowing [the client to litigate], *without violating its obligation to comply with enforceable subpoenas*." *United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010) (emphasis added).

As for the District Attorney, he has no urgent need for the subpoenaed documents. "[T]he events at issue are already several years old and if the [defendants] prevail[] in this litigation, the records will ultimately be produced." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 11 (D.D.C. 2007). The District Attorney's "interest in receiving the records immediately" thus "poses no threat of irreparable harm to [him]." *Shapiro v. DOJ*, 2016 WL 3023980, at *7 (D.D.C. May 25, 2016) (quoting *John Doe Agency*, 488 U.S. at 1309 (Marshall, J., in chambers)); *see EPIC v. DOJ*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (explaining that "desire to have [the documents] in an expedited fashion without more is insufficient to constitute irreparable harm"). Interim relief only "postpones the moment of disclosure ... by whatever period of time may be required" to finally adjudicate the merits

of the President's claim. *Providence Journal*, 595 F.2d at 890; *see Fund For Animals v. Norton*, 281 F. Supp. 2d 209, 222 (D.D.C. 2003) (rejecting government's claim of harm in having its action "delayed for a short period of time pending resolution of this case on the merits"); *22nd Avenue Station, Inc. v. City of Minneapolis*, 429 F.Supp.2d 1144, 1152 (D. Minn. 2006) (similar); *Inchcape Shipping Services Holdings Ltd. v. United States*, 2014 WL 12838793, at *3 (Fed. Cl. 2014) (similar). Regardless, whatever interest the District Attorney might have in immediately obtaining these documents pales in comparison to the President's interest in securing judicial review before the status quo is forever altered.

Last, the public interest weighs strongly in favor of preserving the status quo. The District Attorney simply "does not have an interest" in violating the Constitution, *Amarin Pharma, Inc. v. FDA*, 119 F. Supp. 3d 196, 237 (S.D.N.Y. 2015), and the public "clearly" has "an interest in the government maintaining procedures that comply with constitutional requirements," *ACORN v. FEMA*, 463 F. Supp. 2d 26, 36 (D.D.C. 2006) (citing *O'Donnell Const. Co. v. District of Columbia*, 963 F.2d 420, 429 (D.C. Cir. 1992)). Allowing the District Attorney to evade judicial review is not in the public interest. "Although … the public has an interest in ensuring that the [government] can exercise its authority," "Defendants offer no persuasive argument that there is an immediate public interest in enforcing … [now] rather than after a full hearing." *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 563 (D.D.C. 2018). Nor could *New York County's* interest in immediately enforcing its criminal laws possibly outweigh *the nation's* interest in "the functioning of an entire branch of government." 24 O.L.C. Op. at 257. All the factors governing a plaintiff's entitlement to preliminary relief strongly favor the President.

## CONCLUSION

For these reasons, this Court should grant the President's motion. The President respectfully requests that, by noon on September 19, 2019, the Court enter a TRO requiring Defendants not to enforce or comply with the subpoena until the motion for a preliminary injunction is resolved. Then, after briefing and oral argument, the Court should enter a preliminary injunction ordering Defendants

not to enforce or comply with the subpoena until this case is finally resolved on the merits. The Court should grant an administrative stay, as needed, to preserve its ability to consider the President's motion.

Dated: September 19, 2019                          Respectfully submitted,

                                                   _s/ William S. Consovoy_
Marc L. Mukasey                                    William S. Consovoy (*pro hac vice* forthcoming)
MUKASEY FRENCHMAN & SKLAROFF LLP                   Cameron T. Norris
Two Grand Central Tower                            CONSOVOY MCCARTHY PLLC
140 East 45th Street, 17th Floor                   1600 Wilson Blvd., Ste. 700
New York, New York 10177                           Arlington, VA 22209
(212) 466-6400                                     (703) 243-9423
marc.mukasey@mukaseylaw.com                        will@consovoymccarthy.com
                                                   cam@consovoymccarthy.com
Alan S. Futerfas
Law Offices of Alan S. Futerfas                    Patrick Strawbridge
565 Fifth Ave., 7th Floor                          CONSOVOY MCCARTHY PARK PLLC
New York, NY 10017                                 Ten Post Office Square
(212) 684-8400                                     8th Floor South PMB #706
asfuterfas@futerfaslaw.com                         Boston, MA 02109
                                                   patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*