# United States District Court

Southern District of New York

—————

1:19-cv-08694(VM)

**DONALD J. TRUMP,**

*Plaintiff,*

*- against -*

**CYRUS R. VANCE, JR., in his official capacity as District Attorney of the County of New York;**

**and**

**MAZARS USA, LLP,**

*Defendants.*

## MEMORANDUM OF LAW
### IN SUPPORT OF CYRUS R. VANCE, JR.'S MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S EMERGENCY RELIEF MOTION

CYRUS R. VANCE, JR.
District Attorney
New York County
Attorney for Defendant
One Hogan Place
New York, New York 10013
(212) 335-9000

By: CAREY R. DUNNE
(CD-1988)
Attorney of Record

CHRISTOPHER CONROY (PRO HAC VICE)
SOLOMON SHINEROCK
JAMES H. GRAHAM
ALLEN J. VICKEY
  ASSISTANT DISTRICT ATTORNEYS
    Of Counsel

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................................ii

INTRODUCTION ................................................................................................................... 1

DISCUSSION .......................................................................................................................... 2

I. THIS ACTION SHOULD BE IN STATE COURT.................................................................. 4

A.  The Mazars Subpoena is a Proper Exercise of the Grand Jury's Authority to Investigate New York Conduct, and Any Challenge Should be Lodged in State Court ........................................... 4

B. Under 28 U.S.C. § 2283 and the *Younger* Abstention Doctrine, This Court Should Deny Plaintiff's Emergency Motion..................................................................................................... 5

C. The Process Under 28 U.S.C. § 1442 to Remove a Case from State to Federal Court is Not Applicable Here ...................................................................................................................... 10

II.  THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AS HE HAS FAILED TO SHOW EITHER IRREPARABLE HARM OR A LIKELIHOOD OF SUCCESS ON THE MERITS ................................................................................................................................. 11

A.  Plaintiff Has Failed to Satisfy His Burden of Showing Irreparable Harm .............................. 12

B.  Plaintiff's Request for Injunctive Relief Must Be Denied, as He Has Failed to Show a Likelihood of Success on the Merits Based on a Claimed Presidential Immunity from Investigation That Applies, Not Only To Him, But To Anyone Who Ever Worked for One of His Companies.............................................................................................................................. 15

C.  The Balance of Equities and Public Interest Both Favor Denying Injunctive Relief ............. 19

CONCLUSION....................................................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arizona v. Manypenny*, 451 U.S. 232 (1981) .............................................................................11

*Armstrong v. Exceptional Child Ctr., Inc.*, 135 S.Ct. 1378 (2015) ..............................................3, 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................2

*Astoria Gen. Contracting Corp. v. City of New York Office of Comptroller*,
    740 F. App'x 747 (2d Cir. 2018) ...........................................................................................2

*Astoria Gen. Contracting Corp. v. Office of Comptroller of City of New York*,
    159 F. Supp. 3d 385 (S.D.N.Y. 2016) ....................................................................................2

*Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*,
    719 F.2d 42 (2d Cir. 1983) .....................................................................................................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................2

*Branzburg v. Hayes*, 408 U.S. 665 (1972) .....................................................................................4

*Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ...................... 12-13

*Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66 (2d Cir. 1990) ................................................................6

*Dombrowski v. Pfister*, 380 U.S. 470 (1965) ................................................................................9

*Ex parte Young*, 209 U.S. 123 (1908) ...........................................................................................7

*Florida v. Cohen*, 887 F.2d 1451 (11th Cir. 1989) .......................................................................10

*Gibson v. Berryhill*, 411 U.S. 564 (1973) ......................................................................................9

*Glatzer v. Barone*, 614 F. Supp. 2d 450 (S.D.N.Y. 2009),
    *aff'd*, 394 F. App'x 763 (2d Cir. 2010) ...........................................................................3, 5, 7, 9

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2d Cir. 2005) ...........................................................3

*In re Grand Jury Proceedings*, 219 F.3d 175 (2d Cir. 2000) ..........................................................4

*In re Proceedings of the Grand Jury Impaneled Dec. 5, 1972*,
    No. 73-cv-965, 20 (D. Md.) ...................................................................................................17

*Juidice v. Vail*, 430 U.S. 327 (1977) .............................................................................................7

*Kugler v. Helfant*, 421 U.S. 117 (1975) ......................................................................................7, 9

ii

*Loftin v. Rush*, 767 F.2d 800 (11th Cir. 1985) ............................................................10

*Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511 (S.D.N.Y. 2012),
   *aff'd*, 740 F.3d 211 (2d Cir. 2014) ...........................................................................3

*Mesa v. California*, 489 U.S. 121 (1989)............................................................... 10-11

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) .....................6

*Mirka United, Inc. v. Cuomo*, 2007 WL 4225487 (S.D.N.Y. 2007)...............................6

*Moore v. Sims*, 442 U.S. 415 (1979)...........................................................................7

*N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219 (2d Cir. 1995) ...............................13

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989).................................................................................................6

*Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973) ...........................................................16

*Pennzoil Co. v. Texaco, Inc.*, 481 US 1 (1987)..............................................................7

*Perez v. Ledesma*, 401 U.S. 82 (1971)......................................................................6, 9

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328 (2d Cir. 1995)......................................12

*Sprint Communications v. Jacobs*, 571 U.S. 69 (2013)..................................................6

*Stefanelli v. Minard*, 342 U.S. 117 (1951)...................................................................8

*United States v. Burr*, 25 F. Cas. 30 (C.C. Va. 1807).................................................16

*United States v. Nixon*, 418 U.S. 683 (1974) ...................................................... 15-16, 19

*United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991) ........................................ 4-5

*United States v. Williams*, 504 U.S. 36 (1992) .............................................................4

*Willingham v. Morgan*, 395 U.S. 402 (1969) .............................................................10

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)..............................3-4, 12

*Younger v. Harris*, 401 U.S. 37 (1971).............................................................. 2, 5-7, 9

### STATE CASES

*Virag v. Hynes*, 54 N.Y.2d 437 (1981) ................................................................. 4-5, 19

## Federal: Statutes and Rules

28 U.S.C. § 1442 ................................................................................................. 10-11

28 U.S.C. § 2283 .................................................................................................. 5, 8

Fed. R. Civ. P. 17(c)(2) ...........................................................................................5

## State Statutes

C.P.L. § 190.25(4)(a) ...............................................................................................13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DONALD. J. TRUMP,<br><br>                              Plaintiff,<br><br>                    -against-<br><br>CYRUS R. VANCE, JR. in his official capacity<br>as District Attorney of the County of New York;<br>and<br><br>MAZARS USA, LLP,<br><br>                              Defendants. | Case No. 1:19-cv-08694 (VM)<br><br>**VIA ECF**<br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF DEFENDANT CYRUS<br>R. VANCE, JR'S MOTION TO DISMISS<br>AND IN OPPOSITION TO<br>PLAINTIFF'S MOTION FOR<br>EMERGENCY RELIEF** |

Cyrus R. Vance, Jr., in his official capacity as District Attorney for the County of New York, submits this memorandum of law in support of his motion to dismiss the Complaint, and in opposition to the Plaintiff's motion for a temporary restraining order and preliminary injunction.

## <u>INTRODUCTION</u>

This suit invites a federal court to intervene in a state grand jury proceeding and rule on the validity of a subpoena issued by a New York County Grand Jury to Mazars USA, LLP on August 29, 2019 (the "Mazars Subpoena"). The Mazars Subpoena calls for financial and tax records of a number of New York entities and individuals, including those of the Plaintiff Donald J. Trump, President of the United States. The subpoena is amenable to the same challenges in the New York courts that a federal forum provides, and the Plaintiff has failed to show as a threshold matter why this Court should be tasked with overseeing its enforcement. Important separation of powers and federalism concerns prohibit federal litigation of a state court subpoena. Under longstanding statutory law and jurisprudence tracing back to the Judiciary Act of 1793, this Court should dismiss the complaint in favor of a state court forum.

1

With respect to Plaintiff's demands for emergency injunctive relief, his underlying claims also lack merit. In particular, those claims rely on the remarkable proposition that a sitting President enjoys not only a blanket immunity from criminal prosecution, but (1) that this blanket immunity also protects a president from having to respond to any routine, lawful grand jury request for information about his conduct or that of his businesses or employees before he took office; (2) that the blanket immunity also extends to any person or entity who happened to be associated with or employed by the President before he took office; and (3) that this blanket immunity also prevents any third party from providing information to the grand jury about such prior conduct or transactions involving the President or his companies or former employees. In other words, the Plaintiff's position is that none of this conduct, unrelated to the office of the President, can be investigated while the President remains in office. For the reasons discussed below, the law provides no such sweeping immunity. The Plaintiff's requests for emergency relief should be denied in all respects.

## <u>DISCUSSION</u>

While a motion to dismiss under Rule 12(b)(6) requires the Court to accept as true all factual allegations and draw all reasonable inferences in Plaintiff's favor, "this tenet 'is inapplicable to legal conclusions,' as well as to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Astoria Gen. Contracting Corp. v. Office of Comptroller of City of New York*, 159 F. Supp. 3d 385, 395 (S.D.N.Y. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive here, Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Astoria Gen. Contracting Corp. v. City of New York Office of Comptroller*, 740 F. App'x 747, 749 (2d Cir. 2018) (affirming dismissal of constitutional claims against state office under *Younger* abstention where "the state court action afforded a full and fair opportunity to litigate the issue[.]").

"Since 1793 . . . federal courts have been instructed not to grant injunctive relief to interfere with state judicial functions, with rare exceptions justified only in the most extraordinary exigencies." *Glatzer v. Barone*, 614 F. Supp. 2d 450, 452 (S.D.N.Y. 2009) (Marrero, J.), *aff'd*, 394 F. App'x 763 (2d Cir. 2010).   As described below, Plaintiff fails to present a plausible exigency justifying the extraordinary relief he seeks, and his suit is improperly founded in the Supremacy Clause, which provides no cause of action to enjoin state actors for alleged constitutional violations.   *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S.Ct. 1378 (2015).   "Where, as here, a defendant moves to dismiss for improper venue pursuant to Rule 12(b)(3), a court may consider evidence outside the four corners of the complaint, including affidavits and other documentary evidence."   *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 211 (2d Cir. 2014) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 [2d Cir. 2005]).

Plaintiff's motion for emergency relief falters on some of the same grounds requiring dismissal of the complaint: he has not pled facts to show he is likely to suffer irreparable harm in the absence of the requested relief. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).   Nor has he cited authority showing that his expansive claim to blanket immunity from investigation for himself, his companies, and their employees is likely to succeed on the merits. *Id.*   Indeed, the balance of equities and the public interest here militate in favor of rejection of the requested relief. *Id.*   Under long-settled precedent, the Grand Jury is entitled to the evidence it seeks; must be allowed to pursue its investigation free from interference and litigious delay; and the People of the State of New York have a right to inquire whether their laws have been violated by New York entities and individuals, and to remove any doubt if they have not.

For these reasons and those discussed below, Plaintiff's motion for emergency relief should be denied, and the Court should dismiss the Complaint.

## I. THIS ACTION SHOULD BE IN STATE COURT

**A. The Mazars Subpoena is a Proper Exercise of the Grand Jury's Authority to Investigate New York Conduct, and Any Challenge Should be Lodged in State Court**

"The grand jury is a "constitutional fixture," "[r]ooted in long centuries of Anglo–American history." *In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 550 (S.D.N.Y. 2002) (ordering compliance by a third-party corporation over a foreign government's objection based on executive privilege) (citing *United States v. Williams*, 504 U.S. 36, 47 (1992)).

"The scope of the grand jury's broad investigative powers is aptly described by 'the longstanding principle that 'the public ... has a right to every man's evidence.'" *In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d at 551 (citing *Branzburg v. Hayes*, 408 U.S. 665, 688 [1972]). "Nowhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena." *Id.* (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 186 (2d Cir. 2000)). New York law accords grand juries the same prerogative. *See Virag v. Hynes*, 54 N.Y.2d 437, 443, (1981) ("The Grand Jury is an investigatory body with broad exploratory powers, the scope of which are not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.") (internal citation omitted).

Settled law presumes, "absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300–01 (1991) (internal citation omitted). The recipient of a grand jury subpoena bears the burden of overcoming this presumption of validity, *id.* at 293, and the grand jury "should not be hindered in its quest by witnesses who continually litigate the threshold validity of its subpoenas." *Hynes*, 54 N.Y.2d at 445.

Plaintiff's assertion of executive immunity, whatever its merits in the post-indictment context, presents no basis to quash. Plaintiff has not been identified as a defendant, nor is there an assumption that he will be. Indeed "the identity of the offender, and the precise nature of the offense, if there be

one, normally are developed at the conclusion of the grand jury's labors, not at the beginning." *R. Enterprises, Inc.*, 498 U.S. at 297. The grand jury's operations are generally "unrestrained" by the rules governing criminal trials. *Id.* at 298. Thus any immunity from criminal trial available to a sitting President—and to be clear, Plaintiff fails to identify such a rule—would not in any case impact a grand jury's ability to subpoena documents.

To the extent that Plaintiff has a valid challenge to the Mazars Subpoena, it should be litigated in the New York court having jurisdiction over the Grand Jury that issued the subpoena. New York law affords equal protection against improper subpoenas, whether they be challenged under the United States Constitution, which state courts must uphold pursuant to the Supremacy Clause, or challenged as being in "bad faith or . . . for some other reason invalid." *Hynes*, 54 N.Y.2d at 442-43; *see* Fed. R. Civ. P. 17(c)(2) (providing that subpoenas may be quashed where compliance would be "unreasonable" or "oppressive.").

## B. Under 28 U.S.C. § 2283 and the *Younger* Abstention Doctrine, This Court Should Deny Plaintiff's Emergency Motion

### 1. The Legal Standard

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971) (recounting that, since 1793, few exceptions have been enacted that allow federal courts to interfere in state cases); *see Glatzer*, 614 F. Supp. 2d at 456-47 ("As a starting point, longstanding federal statutory and case law, whose origins trace back to the Judiciary Act of 1793, have manifested a policy of imposing rigid constraints on federal court authority to issue injunctions to restrain the commencement or completion of state court proceedings." [citations omitted]). In particular, the Anti-Injunction Act, 28 U.S.C. § 2283 ("§ 2283"), provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly

authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *See New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSP*") (noting "the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds") (citation omitted).

There are three classes of cases for which the Supreme Court has held that *Younger* abstention is appropriate:  1) intrusion into ongoing "state criminal prosecutions"; 2) "civil enforcement proceedings"; and 3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368 (citations omitted); *see Sprint Communications v. Jacobs*, 571 U.S. 69, 78 (2013).  Here, the issuance of the state grand jury subpoena to a third-party corporation in furtherance of the judicial function of a grand jury falls under the circumstances described by the Supreme Court. *Mirka United, Inc. v. Cuomo*, 2007 WL 4225487, at * 4 (S.D.N.Y. 2007).

If such a circumstance exists, as it does here, then the following additional factors should be considered by a federal court before invoking *Younger* (*see Sprint*, 571 U.S. at 81-82):  "(1) is there an ongoing state proceeding; (2) is an important state interest implicated; [and] (3) does the plaintiff have an avenue open for review of constitutional claims in the state court?" *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir. 1990) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 [1982]).  Here, undoubtedly all three questions are answered with a simple "Yes."  There is an ongoing state proceeding; states unquestionably have an important interest in the enforcement of their grand jury subpoenas; and Plaintiff can raise his constitutional claims in state court. *See Perez v. Ledesma*, 401 U.S. 82, 84 (1971) ("It is difficult to imagine a more disruptive interference with the operation of the state criminal process short of an injunction against all state proceedings.").

Under the *Younger* abstention doctrine, a federal court must "exercise utmost restraint when asked to enjoin state court functions." *Glatzer*, 614 F. Supp. 2d at 457.  Unless "a person about to be prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages," (*Younger*, 401 US at 43 [citing *Ex parte Young*, 209 U.S. 123 (1908)]), the notion of "comity" and "Our Federalism" dictate that federal courts not interfere in state court proceedings.  *Younger*, 401 U.S. at 43-50 (reviewing the history of this longstanding public policy); *see Kugler v. Helfant*, 421 U.S. 117, 123 (1975).

To obtain the federal forum he seeks, Plaintiff must demonstrate that "'state procedural law barred presentation of [his] claims.'" *Pennzoil Co. v. Texaco, Inc.*, 481 US 1, 14 (1987) (quoting *Moore v. Sims*, 442 U.S. 415, 432 [1979]).  Article VI of the Constitution declares that "Judges in every State shall be bound" by the Federal Constitution.  *Id.* at 15.  "Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.*  Here, there is no indication in the record that state procedural law barred Plaintiff's claims, and Plaintiff makes no attempt to explain why his emergency motion for a temporary restraining order and preliminary injunction addressing a state grand jury subpoena could not have been brought in state court.  Since it is "abundantly clear that [Plaintiff] had an opportunity to present [his] federal claims in the state proceedings[,] . . . [n]o more is required to invoke *Younger* abstention." *Juidice v. Vail*, 430 U.S. 327, 337 (1977); *see Pennzoil*, 481 U.S. at 17.

## 2. Application of the Standard Here Compels Abstention

Here, the question is not whether a state prosecutor can indict a sitting President.  That is not the issue before the Court.  Instead, the issue is whether a third party, having been duly served with a state grand jury subpoena seeking the books and records of a number of individuals and corporate

entities, including those of the President, must comply with the subpoena. Whether the Mazars Subpoena, if enforced, may at some point in the future result in the prosecution of any entities or individuals is entirely speculative. It is possible that no case will be presented to the grand jury, or, if a case is presented, that the grand jury would not return an indictment. And, indeed, if the grand jury returned an indictment, it is possible that it would not name Plaintiff.

The Mazars Subpoena presents no irreparable harm, even under Plaintiff's theory of immunity. If, as Plaintiff has alleged, not only he but all related companies and their employees enjoy an immunity from prosecution while he is a sitting President, no prosecution could, in fact, commence at this time. Even the OLC memo cited by Plaintiff contemplates a grand jury continuing to investigate, while at the same time allowing for immunity from prosecution while in office. *See A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 O.L.C. Op. 222, 257 n. 36 (Oct. 16, 2000) ("OLC Memo") ("A grand jury could continue to gather evidence throughout the period of [a sitting President's] immunity, even passing this task down to subsequently empaneled grand juries if necessary."). Thus, Plaintiff's allegations of immediate and irreparable harm are speculative, unripe, and without foundation. He asks the Court to decide a hypothetical future issue, instead of the issue before it today. *See Stefanelli v. Minard*, 342 U.S. 117, 123 (1951) ("If the federal equity power must refrain from staying State prosecutions outright to try the central question of the validity of the statute on which the prosecution is based, how much more reluctant must it be to intervene piecemeal to try collateral issues.").

Further, Plaintiff has not even attempted to plead an exception to § 2283. He cites no Act of Congress, or any of the other exceptions under the Anti-Injunctive Act. To the extent he attempts to use the Article VI Supremacy Clause in an attempt to secure federal jurisdiction (*see* Pl. Memo of Law at 8), this Court has held that the invocation of the Supremacy Clause of the United States Constitution as grounds for injunctive relief in a pending state court proceeding "would violate fundamental

constitutional principles and statutory limitations on the federal courts' equitable powers." *Glatzer*, 614 F. Supp. 2d at 456; *see Armstrong*, 135 S.Ct. at 1378.

Under the "basic principle of federalism," a federal court may not intervene in a state proceeding "in the absence of special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate." *Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973). In order to establish such irreparable harm, a challenged state proceeding must be "flagrantly and patently violative of express constitutional prohibitions." *Younger*, 401 U.S. at 53-54 (citations and internal citation marks omitted). "[S]tandard injuries such as the cost, anxiety, and inconvenience associated with defending against a state criminal prosecution or appealing a civil lawsuit in state courts, without more, cannot be considered 'irreparable' so as to satisfy the rigorous test." *Glatzer*, 614 F. Supp. 2d at 460 (citing *Dombrowski v. Pfister*, 380 U.S. 470, 484-85 [1965]).

As discussed in more detail below, Plaintiff has not made a showing of bad faith, harassment or irreparable harm. "'[O]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.'" *Kugler*, 421 U.S. at 124 (quoting *Ledesma*, 401 U.S. at 85 ). "But whatever else is required, such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Kugler*, 421 U.S. at 125. Notably, contrary to Plaintiff's apparent contention, "bad faith" does not mean "collusive actions," but instead means it has "been brought without a reasonable expectation of obtaining a valid conviction." *Kugler*, 421 U.S. at 126 n. 6 (citing *Ledesma*, 401 U.S. at 85).

In sum, for the reasons stated above, defendant Vance's motion to dismiss should be granted, and Plaintiff's motion for a temporary restraining order and preliminary injunction should be denied.

**C. The Process Under 28 U.S.C. § 1442 to Remove a Case from State to Federal Court is Not Applicable Here**

Although Plaintiff has not identified an Act of Congress that would permit this Court to grant an injunction and stay the state court proceedings, one statute that allows for the removal of a pending state action to federal court is 28 U.S.C. § 1442. However, this statute is not applicable to Plaintiff or the various corporate entities, and the individuals associated with those entities, named in the Mazars Subpoena. Here, Plaintiff fails to meet the two criteria for section 1442 removal to federal court. The Mazars Subpoena is directed to a third party, and not an officer or agency of the United States. Further, Plaintiff has not put forth a colorable defense arising out of his duty to enforce federal law.

"Section 1442(a)(1) permits the removal of, not only those actions commenced in state court that potentially expose a federal official to civil liability or criminal penalty for an act performed in the past under color of office, but also the removal of civil matters that seek to either prohibit or require certain actions by a federal official in the future." *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989) (citations omitted). "Only two prerequisites must be met before an action may be removed under § 1442(a)(1): first, the case must be against any officer, agency, or agent of the United States for any act under color of such office; and second, the federal actor or agency being challenged must raise a colorable defense arising out of its duty to enforce federal law." *Id.* at 1453-54 (citing *Mesa v. California*, 489 U.S. 121 [1989]; *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969); *Loftin v. Rush*, 767 F.2d 800, 804 [11th Cir. 1985]).

Here, neither of these provisions apply, because, for all but a small time period of the dates cited in the subpoena, Plaintiff was not an officer of the United States, nor was he acting under the color of his office. Further, neither the Trump Organization nor any of its affiliates or employees has any possible claim that that they are protected officers, agents, or agencies, or that they were acting under color of law. Simply put, there is no federal question raised by a state-law examination of whether a private citizen or the Trump Organization has committed state crimes. *Mesa*, 489 U.S. at

10

128.  As the Supreme Court stated in *Mesa*, it has "not departed from the requirement that federal officer removal must be predicated on the allegation of a colorable federal defense." *Id.* at 129.  "In sum, an unbroken line of this Court's decisions extending back nearly a century and a quarter have understood all the various incarnations of the federal officer removal statute to require the averment of a federal defense." *Id.* at 133-34.  "'[U]nder our federal system, it goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government.  Because the regulation of the crime is pre-eminently a matter for the States, we have identified strong judicial policy against federal interference with state criminal proceedings.'" *Id.* at 138 (quoting *Arizona v. Manypenny*, 451 U.S. 232, 243 [1981] [citations and internal quotation marks omitted]).

In other words, to the extent Plaintiff attempts to argue that 28 U.S.C. § 1442 permits removal from state to federal court, his claim must fail since, during the majority of the time covered in the Mazars Subpoena, he was not an officer of the United States, nor were his various corporate entities agencies of the United States.

## II.   THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AS HE HAS FAILED TO SHOW EITHER IRREPARABLE HARM OR A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff asks this court to take the extraordinary step of entering a temporary restraining order and preliminary injunction to prevent Mazars from complying with a New York state grand jury subpoena.  The request should be denied as he fails to satisfy any of the demanding requirements for such relief, including a showing of irreparable harm and a likelihood of success on the merits.

A preliminary injunction should only be granted if the moving party has established:  (1) a likelihood of success on the merits; (2) that he is likely to suffer irreparable harm without the relief requested; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public

interest.  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  Granting a preliminary injunction is "an extraordinary and drastic remedy" and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations and citations omitted).

## A.   Plaintiff Has Failed to Satisfy His Burden of Showing Irreparable Harm

The moving party bears the burden of showing irreparable harm, a showing that is "essential to the issuance of a preliminary injunction."  *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (citation omitted).  Indeed, the showing of irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction. . . ."  *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983) (citing 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2948, at 431 [1973]).

To demonstrate irreparable harm, a moving party must show "an injury that is neither remote nor speculative, but actual and imminent."  *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995); *see Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy. . . .").  As the Second Circuit has framed it, the irreparable harm standard is "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

In an attempt to demonstrate irreparable harm necessitating suspension of the Mazars Subpoena, Plaintiff first claims that "there will be no way to unring the bell once Mazars complies . . . ." *Pl. Memo of Law* at 3.  He argues that this irreparable harm will be caused (1) by the DA's Office being in possession of documents related to the President, and (2) by the DA's Office "exposing [the President's] confidential financial information." *Pl. Complaint* ¶ 53.

Despite Plaintiff's assertion to the contrary, if Mazars were to begin producing documents and a court later invalidates the Mazars Subpoena, that bell could absolutely be "unrung," so to speak, with all of the parties being "returned to the positions they previously occupied." *Bank of India*, 175 F.3d at 249. As with all material obtained pursuant to a grand jury subpoena, the DA's Office would have a legal and ethical obligation to maintain the Mazars compliance confidentially. *See* N.Y. C.P.L. § 190.25(4)(a). In the event that a court later deems the Mazars Subpoena invalid, presumably that court would order the DA's Office to destroy or return to Mazars any compliance already provided, and the DA's Office would not oppose such an order. Were that to be the case, the DA's Office would be forbidden from using that material as part of its investigation or in any future criminal prosecution.

The purely speculative—and, frankly, outrageous—claim that it is the intention of the DA's Office to expose the President's personal financial information gets the Plaintiff no closer to demonstrating irreparable harm. It is well-settled that a "moving party must show that the injury it will suffer is likely and imminent, not remote or speculative. . . ." *N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995). Recklessly hypothesizing that the DA's Office will expose the material obtained pursuant to a grand jury subpoena—in deliberate violation of New York state law—is precisely the type of speculation that fails to satisfy the exacting standard of demonstrating irreparable harm.

Next, Plaintiff claims that irreparable harm will necessarily ensue if it becomes public that there is an ongoing criminal investigation that includes requests from third-parties about business transactions that relate to the President. Plaintiff claims that the mere fact of such an investigation will create burdens, distractions and embarrassment that will interfere with his ability to carry out his duties as the current Chief Executive. *See Pl. Complaint ¶ 22; Pl. Memo. of Law at 11.*

13

This argument, however, conveniently ignores the years of daily public reporting about the extensive criminal investigations by the Special Counsel and the United States Attorney for the Southern District of New York into exactly these types of business transactions involving Plaintiff and his companies, employees and affiliates.  Indeed, those criminal investigations included not only grand jury subpoenas, but grand jury testimony, indictments, trials, and guilty pleas that resulted in determinations that certain of the transactions at issue were criminal.  At no point in those "criminal proceedings" did Plaintiff seek an injunction or make the sweeping immunity claims he makes here.

Even more remarkably, in one of those federal criminal investigations, one of Plaintiff's former lawyers admitted publicly to engaging in crimes at the behest of Plaintiff.  In that case, an indictment brought in the Southern District of New York asserted that the lawyer was assisted in a criminal transaction by an unindicted co-conspirator, who was then identified in sworn Congressional testimony as the Plaintiff himself.  *See, e.g., Shinerock Decl. at ¶ 17(e).*  Again, in that case, Plaintiff made no effort to enjoin the proceeding on the ground of presidential immunity.  These facts belie Plaintiff's claim that any "insinuation, even if made obliquely," "that it is probable that the President has committed a crime" is somehow unconstitutional.  *Pl. Memo. of Law* at 13 (citation and quotation marks omitted).  Despite this direct and public allegation that the Plaintiff engaged in criminal conduct, no "irreparable harm" has yet impeded Plaintiff's continued service in office.

At bottom, what distinguishes the currently challenged subpoena from the prior criminal inquiries described above appears to be that the third-party subpoena here seeks actual tax returns.  In other words, Plaintiff is, in fact, seeking to invent and enforce a new presidential "tax return privilege," on the theory that disclosing information in a tax return will necessarily reveal information that will somehow impede the functioning of a President, sufficiently to meet the test of irreparable harm.  Putting aside that no such privilege exists in the law, this claim of irreparable harm is undone by the fact that every President since Jimmy Carter has voluntarily released his tax returns before or upon

taking office, which has to date never impeded a President's ability to serve.  Again, there is no "immunity from scrutiny" of this sort in the law.

Finally, Plaintiff claims that, without an injunction, he will suffer irreparable because he will be impeded in his ability to secure further review of his constitutional claim.  *Pl. Memo. of Law* at 8. Any such judicial review, however, can occur at the same time that Mazars begins complying.  As discussed above, in the unlikely event that a court ultimately rules the Mazars Subpoena invalid, the DA's Office would destroy or return the Mazars materials, and Plaintiff would be restored to the position it occupied pre-compliance.

**B.      Plaintiff's Request for Injunctive Relief Must Be Denied, as He Has Failed to Show a Likelihood of Success on the Merits Based on a Claimed Presidential Immunity from Investigation That Applies Not Only To Him, But To Anyone Who Ever Worked for One of His Companies**

Before this Court can grant the extraordinary remedy of injunctive relief, Plaintiff must also demonstrate a likelihood of success on the merits.  Here, that requires a showing that he is likely to succeed in permanently enjoining Mazars from complying with the subpoena based on the novel legal theory that a sitting President enjoys immunity, not only from criminal prosecution, but from any criminal investigation, regardless of whether the conduct took place before he was President.  In fact, Plaintiff has an even steeper climb to demonstrate a likelihood of success, given that his newly-claimed immunity extends to the President, but also to the President's companies and every individual who worked at one of those companies.  As Plaintiff's own papers make plain, no authority exists to support such a sweeping claim of immunity, which makes a showing of likelihood of success on the merits impossible.

As discussed above, no such investigative immunity exists for the President or anyone else. More importantly, the very issue at hand—whether the President must comply with an investigative grand jury subpoena—has previously been answered in the affirmative.  *See United States v. Nixon*, 418 U.S. 683, 706, 713 (1974) (rejecting President Nixon's claim of an "absolute privilege," based on the

15

Separation of Powers, that "insulates a President from judicial subpoena in an ongoing criminal prosecution. . . ."); *see also Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973).

In *Sirica*, President Nixon challenged an order of the District Court for the District of Columbia that was entered "as a means of enforcing a grand jury subpoena duces tecum issued and served on [the President]." *Id.* at 704. The court "reject[ed]" the argument put forth by Counsel for President Nixon that "the President is absolutely immune" from complying with the subpoena. *Id.* at 708, 711.[1] In doing so, the circuit court relied on, among other precedent, *United States v. Burr*, and characterized Chief Justice Marshall as "squarely rul[ing] that a subpoena may be directed to the President." *Id.* at 709-10. Indeed, in *Burr*, Chief Justice Marshall stated: "If, in any court of the United States, it has ever been decided that a subpoena cannot issue to the President, that decision is unknown to this court." *United States v. Burr*, 25 F. Cas. 30, 34 (C.C. Va. 1807); *see Presidential Amenability to Judicial Subpoenas*, p. 5. Robert G. Dixon, Jr. (June 25, 1973) (explaining that "[m]odern legal discussion of the power of the courts to subpoena the President still adheres to Chief Justice Marshall's view that the President is not exempt from judicial process. . . .").

Here, of course, the Mazars Subpoena is not directed at the President himself, but to a third party, which ensures that the "tasks of compliance" do not "interfere with the President's official responsibilities." *Sirica*, 487 F.2d at 711. Moreover, the Mazars Subpoena, which seeks private business records, implicates even fewer concerns than the subpoena deemed valid in *Nixon*, where the materials sought related to the "performance of the President's responsibilities." *Nixon*, 418 U.S. at 711.

---

[1] When citing *Sirica*, Plaintiff ignores this directly applicable holding announced by the court's majority, instead choosing to focus on the concurring, in part, and dissenting, in part, portions. *See Pl. Mem. of Law* at 10, 14.

Plaintiff also conflates the distinction between immunity from prosecution and immunity from investigation, by pointing, in a misleading way, to views that say a President may not be prosecuted while in office (*Pl. Memo. of Law* at 9). *See, e.g., A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 O.L.C. Op. (Oct. 16, 2000) (the "OLC Memo"); *Amenability of the President, Vice President, and Other Civil Officers to Criminal Prosecution While in Office* (Sept. 24, 1973) (the "Dixon Memo"); *In re Proceedings of the Grand Jury Impaneled Dec. 5, 1972*, No. 73-cv-965, 20 (D. Md.)

In the first place, contrary to Plaintiff's assertion, it is simply not true that "virtually 'all legal commentators agree'" that a sitting President is immune, not only from criminal prosecution, but from investigation for wrongful acts prior to taking office. *See Pl. Complaint* at ¶¶ 1, 3. Indeed, at least since the Bork memo that is much relied upon by Plaintiff (which was written in 1972), there has been a robust debate among legal commentators about whether a sitting President can be criminally charged, with widespread disagreement, and with absolutely no guidance from the courts.[2]

Again, however, that is not the issue here, as there is no threatened or pending state charge against a sitting President. Instead, the sole question is whether a third-party business entity should be required to produce records relating to business transactions that took place among a variety of individuals and entities—including the President—before the President took office. On this point,

---

[2] As the former head of the United States Justice Department Office of Legal Counsel put it, a review of relevant Justice Department memos and publicly filed legal briefs shows that there is no "longstanding policy" against indictment of the President, and "whether or not a president can be indicted or named as an unindicted co-conspirator should not be considered a settled question," Walter Dellinger, *Indicting a President is Not Foreclosed: The Complex History*, Lawfare Blog, June 18, 2018, *available at* https://www.lawfareblog.com/indicting-president-not-foreclosed-complex-history; *see* Susan Low Block, *Can We Indict a Sitting President?: foreword to Ought a President of the United States Be Prosecuted*, 2 Nexus 7 (1997), *available at* https://scholarship.law.georgetown.edu/facpub/1560; Eric M. Freedman, *On Protecting Accountability*, 27 Hofstra L. Rev. 677 (1999). Other commentators are less equivocal. *See Memorandum to Independent Counsel Kenneth Starr*, May 13, 1998 (concluding that "President Clinton is subject to indictment and criminal prosecution," though perhaps not imprisonment until he leaves office).

there is no support, in case decisions or in the works of "legal commentators," for the Plaintiff's claim of a blanket immunity from scrutiny of such transactions.

In this regard, Plaintiff also incorrectly cites the OLC Memo for the proposition that Presidential immunity from prosecution while in office extends to investigations. *See Pl. Memo of Law* at 9 ("Nor can he be investigated" [citing the OLC Memo]). The OLC Memo, however, says no such thing. The singular conclusion of the OLC Memo is: "The indictment or criminal prosecution of a sitting President would impermissibly undermine the capacity of the executive branch to perform its constitutionally assigned functions." OLC Memo at 222; *see* Dixon Memo at 18 (the "memorandum deals with the question of whether and to what extent the President is immune from criminal prosecution while he is in office"). The memo does not say that the immunity should apply to investigations; indeed, the memo at least impliedly endorses the idea that a sitting President may be criminally investigated. *See* OLC Memo at 257 n. 36 (2000) (during the period that a sitting President enjoys immunity from criminal prosecution, "[a] grand jury could continue to gather evidence.").[3]

Plaintiff therefore fails to satisfy his burden of showing a likelihood of success in permanently enjoining Mazars from complying with the Subpoena, which means that injunctive relief should be denied.

---

[3] The Plaintiff's position is further undermined by the fact of the investigation recently undertaken by Special Counsel Robert Mueller and related investigations conducted by the United States Attorney's Office for the Southern District of New York, where no such objections were raised.

**C.      The Balance of Equities and Public Interest Both Favor Denying Injunctive Relief**

To satisfy his burden, the Plaintiff must also demonstrate that the balance of equities tips in his favor and that the injunction is in the public interest.  He fails to make the requisite showing on both fronts.

The public interest militates against entering injunctive relief.  The interests of the Grand Jury, and by extension the People of New York, will be injured by suspension of the Mazars Subpoena, and this countervailing interest must be weighed in the final analysis.  Plaintiff has asserted that, should his request for relief be rejected here, he will immediately appeal, which makes it all the more damaging to force the DA's Office to place its investigation on hold while this dispute is decided.  *See Hynes*, 54 N.Y.2d at 443-44 ("Constant delays occasioned by unmeritorious motions to quash followed by routine appeals can lead not only to the loss of evidence and the fading of witnesses' memories, but also may completely frustrate the course of legitimate investigation into potentially criminal activity."); *Nixon*, 418 U.S. at 713 ("Without access to facts a criminal proceeding may be totally frustrated.").

The Bork Memo makes this same point, albeit in the context of the vice president:  "enjoining the investigation and presentation of evidence . . . would require the investigations of other persons also to be suspended," which would "plainly frustrate the public's interest in the fair and expeditious administration of the criminal laws."  Bork Memo at 22 (internal quotations and citations omitted); *see* Dixon Memo at 17 (suspending grand jury proceedings against federal officer "would seriously interfere with the investigation").  Similarly, any such suspension of an investigation in this case would likely cause statutes of limitations to run with respect to other individuals and entities (the dates of many of the transactions at issue are such that the limitations periods could expire in a matter of months), and inappropriately provide them "permanent immunity from prosecution," Bork Memo at 22, which, needless to say, would be against the public's interest.

## CONCLUSION

For these reasons, the Court should grant defendant Vance's motion to dismiss, and deny Plaintiff's emergency motion for a temporary restraining order and a preliminary injunction.

Dated: New York, New York  
       September 23, 2019

Respectfully submitted,

<u>s/Carey R. Dunne</u>  
Carey R. Dunne, *General Counsel*  
Christopher Conroy (*pro hac vice*)  
Solomon B. Shinerock  
James H. Graham  
Allen J. Vickey  
*Assistant District Attorneys*  
New York County District Attorney's Office  
One Hogan Place  
New York, New York 10013