**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DONALD J. TRUMP,

                      Plaintiff,

      - against -

CYRUS R. VANCE, JR., in his official capacity
as District Attorney of the County of New
York,

and

MAZARS USA, LLP,

                  Defendants.

Case No. 1:19-cv-8694-VM

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS AND REPLY IN SUPPORT
OF PLAINTIFF'S EMERGENCY
MOTION FOR A TEMPORARY
RESTRAINING ORDER AND A
PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of Authorities .................................................................................................... ii

Introduction ................................................................................................................ 1

Argument .................................................................................................................... 2

    I.    The President is entitled to interim relief under the traditional four-factor test. ............... 3

        A.    Likelihood of Success on the Merits ............................................................... 3

        B.    Irreparable Harm ........................................................................................... 13

        C.    Balance of the Equities & Public Interest ...................................................... 16

    II.    At the very least, the President is entitled to interim relief under the "serious questions" standard. ..................................................................................................... 17

    III.    This Court should be mindful of the subpoena's looming deadline and afford the President enough time to secure judicial review .................................................. 18

Conclusion ................................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*414 Theater Corp. v. Murphy,*
    499 F.2d 1155 (2d Cir. 1974) ................................................................................................. 11

*aaiPharma Inc. v. Thompson,*
    296 F.3d 227 (4th Cir. 2002) ................................................................................................. 18

*Abney v. United States,*
    431 U.S. 651 (1977) ................................................................................................................. 8

*Airbnb, Inc. v. City of New York,*
    2019 WL 91990 (S.D.N.Y. Jan. 3, 2019) ............................................................................. 15

*Anwar v. Fairfield Greenwich Ltd.,*
    728 F. Supp. 2d 372 (S.D.N.Y. 2010) ..................................................................................... 3

*Arkansas v. Farm Credit Services of Cent. Ark.,*
    520 U.S. 821 (1997) ............................................................................................................... 12

*Armstrong v. Exceptional Child Ctr., Inc.,*
    135 S. Ct. 1378 (2015) ............................................................................................................. 3

*Black Jack Distributors, Inc. v. Beame,*
    433 F. Supp. 1297 (S.D.N.Y. 1977) ................................................................................. 10, 18

*Brennick v. Hynes,*
    471 F. Supp. 863 (N.D.N.Y. 1979) ....................................................................................... 11

*Brenntag Int'l Chemicals, Inc. v. Bank of India,*
    175 F.3d 245 (2d Cir. 1999) ................................................................................................. 14

*Carey v. Klutznick,*
    637 F.2d 834 (2d Cir. 1980) ................................................................................................. 17

*Caribbean Produce Exch., Inc. v. Sec'y of Health & Human Servs.,*
    893 F.2d 3 (1st Cir. 1989) ..................................................................................................... 18

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC,*
    964 F.2d 159 (2d Cir. 1992) ................................................................................................. 14

*Clinton v. Jones,*
    520 U.S. 681 (1997) ........................................................................................................... 9, 19

*Dennis v. Higgins,*
    498 U.S. 439 (1991) ................................................................................................................. 3

*Dombrowski v. Pfister,*
    380 U.S. 479 (1965) ............................................................................................................... 13

*EPIC v. DOJ,*
    15 F. Supp. 3d 32 (D.D.C. 2014) .......................................................................................... 16

*Food & Water Watch, Inc. v. Vilsack,*
    808 F.3d 905, 913 (D.C. Cir. 2015) ........................................................................................ 3

*G.I. Distributors, Inc. v. Murphy,*
    336 F. Supp. 1036 (S.D.N.Y. 1972) ........................................................................................ 9

*Gillette v. Cty. of Warren,*
  2015 WL 1608826 (N.D.N.Y. Apr. 10, 2015) ................................................................................. 7

*Google, Inc. v. Hood,*
  822 F.3d 212 (5th Cir. 2016) ......................................................................................................... 11

*Human Touch DC, Inc. v. Merriweather,*
  2015 WL 12564166 (D.D.C. May 26, 2015) ................................................................................. 17

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,*
  520 F. Supp. 635 (D. Minn. 1981) ................................................................................................ 13

*In re Ford Motor Co.,*
  110 F.3d 954 (3d. Cir. 1997) ......................................................................................................... 14

*In re Grand Jury Matter #3,*
  847 F.3d 157 (3d Cir. 2017) .......................................................................................................... 14

*In re Grand Jury Subpoena,*
  866 F.3d 231 (5th Cir. 2017) ......................................................................................................... 12

*Johnson v. City of Shelby,*
  135 S. Ct. 346 (2014) .................................................................................................................... 12

*Krahm v. Graham,*
  461 F.2d 703 (9th Cir. 1972) ......................................................................................................... 13

*Lauro Lines s.r.l. v. Chasser,*
  490 U.S. 495 (1989) ........................................................................................................................ 8

*Leiter Minerals, Inc. v. United States,*
  352 U.S. 220 (1957) ................................................................................................................ 12, 13

*Malhan v. Sec'y U.S. Dep't of State,*
  ___ F.3d ___, 2019 WL 4458806 (3d Cir. Sept. 18, 2019) ............................................................ 7

*Mannes v. Gillespie,*
  967 F.2d 1310 (9th Cir. 1992) ......................................................................................................... 8

*McNeill v. N.Y.C. Housing Auth.,*
  719 F. Supp. 233 (S.D.N.Y. 1989) ................................................................................................ 12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop,*
  839 F. Supp. 68 (D. Me. 1993) ...................................................................................................... 14

*Mitchum v. Foster,*
  407 U.S. 225 (1972) ...................................................................................................................... 12

*Monaghan v. Deakins,*
  798 F.2d 632 (3d Cir. 1986) .......................................................................................................... 11

*Mulholland v. Marion Cty. Election Bd.,*
  746 F.3d 811 (7th Cir. 2014) ......................................................................................................... 11

*Nixon v. Fitzgerald,*
  457 U.S. 731 (1982) ........................................................................................................................ 8

*NLRB v. Nash-Finch Co.,*
  404 U.S. 138 (1971) ...................................................................................................................... 13

*NTEU v. DOT,*
  838 F. Supp. 631 (D.D.C. 1993) ............................................................................15

*Page v. King,*
  932 F.3d 898 (9th Cir. 2019) ...................................................................................8

*People v. Doe,*
  96 A.D.2d 1018 (N.Y. App. Div. 1983) ...................................................................9

*People v. Merrick Util. Assocs., Inc.,*
  575 N.Y.S.2d 634 (Co. Ct. 1991) ............................................................................9

*Providence Journal Co. v. FBI,*
  595 F.2d 889 (1st Cir. 1979) ..................................................................................16

*Robert Half Int'l Inc. v. Billingham,*
  315 F. Supp. 3d 419 (D.D.C. 2018); ......................................................................17

*Saini v. Int'l Game Technology,*
  434 F. Supp. 2d 913 (D. Nev. 2006) ......................................................................17

*Show-World Ctr., Inc. v. Walsh,*
  438 F. Supp. 642 (S.D.N.Y. 1977) .........................................................................11

*Sprint Communications, Inc. v. Jacobs,*
  571 U.S. 69 (2013) ...........................................................................................7, 8, 9

*Studebaker Corp. v. Gittlin,*
  360 F.2d 692 (2d Cir. 1966) ...................................................................................12

*Sullivan v. N.Y.S. Unified Court Sys.,*
  2016 WL 3406124 (S.D.N.Y. June 17, 2016) ..........................................................8

*Swierkiewicz v. Sorema N.A.,*
  534 U.S. 506 (2002) ................................................................................................12

*Tex. Ass'n of Bus. v. Earle,*
  388 F.3d 515 (5th Cir. 2004) ..................................................................................10

*U.S. Servicemen's Fund v. Eastland,*
  488 F.2d 1252 (D.C. Cir. 1973) ...................................................................9, 14, 17

*United States v. AT&T Co.,*
  551 F.2d 384 (D.C. Cir. 1976) .................................................................................5

*United States v. Composite State Bd. of Med. Examiners,*
  656 F.2d 131 (5th Cir. 1981) ..................................................................................10

*United States v. Morros,*
  268 F.3d 695 (9th Cir. 2001) ..................................................................................10

*United States v. Nixon,*
  418 U.S. 683 (1974) .........................................................................................passim

*Univ. of Tex. v. Camenisch,*
  451 U.S. 390 (1981) .............................................................................................2, 3

*Verlo v. Martinez,*
  820 F.3d 1113 (10th Cir. 2016) ..............................................................................17

*Younger v. Harris*,
  401 U.S. 37 (1971) ........................................................................................................ 3, 8

**Other Authorities**

28 U.S.C. §2283 .................................................................................................... 3, 12, 13

42 U.S.C. §1983 ............................................................................................................... 3

*A Sitting President's Amenability to Indictment and Criminal Prosecution*,
  24 O.L.C. Op. 222 (Oct. 16, 2000) .................................................................. 5, 6, 15, 17

Alberto R. Gonzales, *Presidential Powers, Immunities, and Pardons*,
  96 Wash. U.L. Rev. 905 (2019) ................................................................................... 5

Ben Protess & William K. Rashbaum, *Manhattan D.A. Subpoenas Trump Organization Over Stormy
  Daniels Hush Money*, New York Times (Aug. 1, 2019), nyti.ms/2mkfgNd ......................... 15

Brett M. Kavanaugh, *Separation of Powers During the Forty-Fourth Presidency and Beyond*,
  93 Minn. L. Rev. 1454 (2009) .................................................................................. 7, 18

Brett M. Kavanaugh, *The President and the Independent Counsel*,
  86 Geo. L.J. 2133 (1998) ............................................................................................. 7

Individual Practices II ....................................................................................................... 3

Local Rule 6.1(b) ............................................................................................................. 3

Memorandum for the U.S. Concerning the Vice President's Claim of Constitutional Immunity,
  *In re Proceedings of the Grand Jury Impaneled Dec. 5, 1972*, No. 73-cv-965 (D. Md.) ............ 6, 7

Ronald D. Rotunda, *Memo. to Independent Counsel Kenneth Starr Re: Indictability of the President*
  (May 13, 1998) ........................................................................................................... 18

The Federalist No. 65
  (Alexander Hamilton) (Rossiter ed., 1961) ....................................................................... 7

TRUST Act, 2019 Sess. Law News of N.Y. Chs. 91, 92
  (July 8, 2019) ............................................................................................................. 15

William K. Rashbaum & Ben Protess, *8 Years of Trump Tax Returns Are Subpoenaed by Manhattan D.A.*,
  New York Times (Sept. 16, 2019), nyti.ms/2lXgQ7c ......................................................... 15

Wright & Miller, 17A Fed. Prac. & Proc. Juris. §4222 (3d ed.) ............................................. 12

## INTRODUCTION

The Court should grant the President's request for interim relief, and nothing in the District Attorney's opposition indicates otherwise. The District Attorney cannot refute that the constitutional claim at the heart of this case is serious; indeed, he barely responds on the merits. Instead, the District Attorney tries to defeat federal jurisdiction by invoking *Younger* abstention and the Anti-Injunction Act. But the Supreme Court has held that those narrow restrictions on hearing federal claims do not apply to a case like this one: a constitutional claim brought by the sitting President arguing that he is immune from state criminal process. Beyond that, the District Attorney weakly argues that the President will not suffer irreparable harm if Mazars must comply with the subpoena. But most of that argument is premised on representations that the District Attorney has made in response to this litigation. Regardless, the idea that the disclosure of the President's financial records to the District Attorney and a grand jury will not cause an injury that cannot be remedied through damages—the classic formulation of irreparable harm—is self-refuting. And the balance of harms and public interest, especially given the impossible position that Mazars has been placed in, strongly tip in the President's favor. The Court should grant interim relief.

More broadly, the District Attorney complains that he has been sued in federal court and that the President did not take this step in response to other investigations. The District Attorney makes an important point. But not for the reasons he thinks. The President has indeed cooperated with other investigations; in fact, he cooperated with *this* investigation. But when the parties disagreed over the scope of a subpoena issued to the President's businesses, the District Attorney took an outrageous step: he photocopied a sweeping congressional subpoena, sent it to the President's accounting firm, and demanded compliance on a short fuse in the hope he could strongarm Mazars before the President could be heard in court. It was the District Attorney's entire bad-faith demand and course of conduct—not just a request for tax returns—that led to this dispute. That the President cooperated with other investigations only proves he has taken a measured approach to invoking rights he holds

under the Constitution. Had the District Attorney not acted in such an irresponsible and abusive fashion, the President likely would have cooperated here too.

Finally, the President respectfully asks the Court to extend the temporary relief currently in place and provide further guidance on how this case will proceed. As things stand, Mazars must comply with the subpoena sometime tomorrow. That deadline defeats the very purpose of delaying enforcement until the Court can decide whether to grant more fulsome interim relief. There can be no dispute that this is a serious constitutional matter and that, in both previous and ongoing cases, subpoenas for the President's records have been stayed (voluntarily or by court order) while the legality of the demand is tested in court. This is because absent preservation of the status quo before the compliance deadline, the President would be forced to seek emergency appellate relief before the district court had the chance to carefully evaluate the merits. And here, that would be especially inappropriate as it would require the Court to rule on a motion for a stay pending appeal before it even has the chance to fully consider whether interim relief is warranted. All of this can be avoided by extending the compliance deadline until seven days after this Court rules on the President's motion for a preliminary injunction. If the District Attorney will not agree to this relief, the Court should order it.

## ARGUMENT

The President is entitled to interim relief—the only question before this Court. While the District Attorney now asks the Court to treat his opposition as a motion to dismiss, *see* Doc. 15, that approach would be improper. "[I]t is generally inappropriate for a federal court at the preliminary-injunction stage"—much less the TRO stage—"to give a final judgment on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Doing so "improperly equates 'likelihood of success' with 'success'" and "ignores the significant procedural differences" between preliminary injunctions and the merits. *Id.* at 394. Preliminary injunctions serve a "limited purpose," are often litigated in "haste,"

and involve "procedures that are less formal and evidence that is less complete." *Id.* at 395; *see Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015).

Nor has the District Attorney followed any of the procedures for a motion to dismiss. The Local Rules afford the President fourteen days to respond to a motion to dismiss—not one. *See* Local Rule 6.1(b). And the District Attorney has not complied with the Court's conference or letter-filing requirements that must precede a motion to dismiss. *See* Individual Practices II.A-B. While the District Attorney claims to be using this Court's "expedited procedure" for motions to dismiss, that procedure must be "agree[d to] on motion by the parties" or "ordered by the Court"—neither of which happened. *Id.* II-C. Instead of entertaining the District Attorney's hasty and procedurally defective motion, this Court should resolve and grant the only fully briefed motion before it: the President's request for interim relief.

## I.   The President is entitled to interim relief under the traditional four-factor test.

### A.   Likelihood of Success on the Merits

The District Attorney makes three arguments for why the President's constitutional claim is unlikely to succeed: (1) the Mazars subpoena does not implicate Article II or the Supremacy Clause; (2) the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971); and (3) the Anti-Injunction Act, 28 U.S.C. §2283, bars this action. These arguments all fail.[1]

---

[1] The District Attorney also asserts, in a single conclusory sentence, that the President has "no cause of action to enjoin state actors for alleged constitutional violations." Opp. 3 (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378 (2015)). This argument is too undeveloped to warrant the Court's consideration. *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 457 n.25 (S.D.N.Y. 2010) (Marrero, J.). And it is wrong. The President sued the District Attorney in his official capacity for prospective relief based on violations of the federal Constitution, including Article II. This suit "to enjoin unconstitutional actions by state … officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong*, 135 S  Ct. at 1384. The President also has the right to sue the District Attorney for depriving him of "any rights, privileges, or immunities secured by the Constitution," 42 U.S.C. §1983; *see Dennis v. Higgins*, 498 U.S. 439, 443 n.4 (1991) (holding that §1983 allows plaintiffs to vindicate "constitutional provisions that allocate power"). The President has amended his complaint to make clear that he is bringing a §1983 action.

### i.    The District Attorney is likely violating Article II and the Supremacy Clause.

The District Attorney does not try to argue that New York can criminally prosecute a sitting President; he merely cites sources suggesting that the law is not "'settled,'" which is nowhere near a developed legal position. District Attorney's Opposition ("Opp.") 17 n.2. Instead of refuting this bedrock proposition, the District Attorney contends that it's not implicated here. In his view, States have unfettered license to issue grand jury subpoenas to a sitting President, Opp. 15-16; to subpoena third-party custodians for a sitting President's records, Opp. 16; and to criminally investigate a sitting President, Opp. 17-18. These conclusory arguments are not persuasive, are not supported by *any* citations to constitutional text, history, or caselaw, and, if accepted, would upend our constitutional design. The District Attorney's position is untenable.

To begin, it is important to note something the District Attorney does *not* argue. He does not deny that New York is currently investigating the President for criminal activity, that the President is a "target" of the subpoena, that the subpoena seeks "his personal records," or that the subpoena investigates the Presisdent's conduct. President's Brief ("Br.") 13. The District Attorney candidly admits that the grand jury is "seeking the books and records … of the President," Opp. 7-8, is investigating "business transactions that … includ[e] the President," Opp. 17, and is pursuing what he views as illegal "business transactions involving [the President]" and "crimes at the behest of [the President]," Opp. 14. While the District Attorney says "it is possible" that the grand jury won't indict the President, the flipside of that statement is that it *is* possible that the grand jury *will* seek to indict the President. Opp. 8. The District Attorney's occasional asides about the subpoena being directed at businesses and employees who are not the President, Opp. 2, 17, are thus not persuasive—especially since he makes no attempt to disaggregate which parts of the subpoena are directed at the President and which parts aren't.

For the same reason, this subpoena is distinguishable from the subpoenas issued to Presidents Nixon and Jefferson. *Cf.* Opp. 15-16. Those subpoenas asked the President to provide evidence in *someone else's* criminal proceeding; the President was not himself a suspect or a target. *See United States v. Nixon*, 418 U.S. 683, 710 (1974) ("In this case the President challenges a subpoena served on him as a third party"); *A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 O.L.C. Op. 222, 255 & n.32 (Oct. 16, 2000) ("[*United States v. Nixon*] did not address the interest in facilitating criminal proceedings against the President" but involved "the withholding of evidence relevant to the criminal prosecution of other persons"). Indeed, the *Nixon* Court refused to decide whether a grand jury could name a sitting President as an unindicted coconspirator. *See* 418 U.S. at 687 n.2. The differences between treating the President as a witness in a criminal proceeding and treating him as a target in a criminal proceeding cannot be overstated. Only the latter carries the "distinctive and serious stigma," the "public … allegation of wrongdoing," and "the unique mental and physical burdens" that are "placed on a President facing criminal charges." 24 O.L.C. Op. at 249-52; *accord* Alberto R. Gonzales, *Presidential Powers, Immunities, and Pardons*, 96 Wash. U.L. Rev. 905, 940 n.153 (2019) (distinguishing "between the President testifying as a nonparty witness and the President testifying as a criminal defendant, the latter of which" implicates "presidential immunity from investigation, indictment, and prosecution").

That the subpoena here is directed to Mazars, a neutral third-party custodian, changes nothing. Federal courts recognize that subpoenas to a neutral custodians are, functionally speaking, no different from subpoenas to the real target of the investigation. *See, e.g.*, *United States v. AT&T Co.*, 551 F.2d 384, 385 (D.C. Cir. 1976) (acknowledging that a congressional subpoena to AT&T for executive-branch records was really a "clash between the executive and legislative branches" because "AT&T … has no stake in the controversy beyond knowing whether its legal obligation is to comply with the subpoena or not"). Here too, the District Attorney does not dispute that he subpoenaed Mazars "precisely because of [its] connections with the President" and for the express purpose of defeating

the President's right to object. Br. 13. When the House Oversight Committee issued a virtually identical subpoena to Mazars, both Congress and the Department of Justice agreed that the subpoena should be treated as a subpoena against the President himself. *See* Br. 13; U.S. Amicus Br. 7, *Trump v. Mazars USA, LLP*, No. 19-5142 (D.C. Cir.) ("[T]his subpoena is in practical effect no different from one served on the President…. [It] should be treated for separation-of-powers purposes as if it were directed to the President."). The same is true here. The only possible difference between a subpoena to Mazars and a subpoena to the President, for purposes of Article II, is that a subpoena to Mazars "relieve[s]" the President "of the physical burden of complying with the subpoena." U.S. Amicus Br. 7. That distinction is meaningless, since the President of the United States "would not personally compile the requested documents even if he were the subpoena's recipient." *Id.*

Finally, the District Attorney's attempt to distinguish between "immunity from prosecution and immunity from investigation" does not hold up. Opp. 17. For one, the President is not challenging a mere criminal investigation. The New York grand jury is not passively "gather[ing]" or "preserv[ing]" evidence until the President is no longer in office, as the OLC memorandum contemplates. 24 O.L.C. Op. at 257 n.36. It has issued a coercive subpoena against the President, for the President's records, to determine whether to indict him. This subpoena is an example of the "criminal process" that States cannot impose on a sitting President. *Id.* at 236. The notion that a State could issue a grand-jury subpoena to a sitting President—to investigate his own alleged misconduct, threatening him with contempt if he does not comply—is unthinkable. *See Nixon*, 418 U.S. at 691-92. Yet that is what the District Attorney's position would allow.

Even criminal investigations of a sitting President, moreover, can violate Article II and the Supremacy Clause. When then–Solicitor General Bork wrote that "an incumbent President" cannot be "subject to the criminal process," Memorandum for the U.S. Concerning the Vice President's Claim of Constitutional Immunity 17, *In re Proceedings of the Grand Jury Impaneled Dec. 5, 1972*, No. 73-cv-965 (D. Md.), he was discussing a grand jury investigation and a request "to enjoin 'the Grand Jury from

conducting any investigation.'" *Id.* at 3. He understood that, given the Constitution's provisions governing impeachment, "congressional investigation must take place in lieu of criminal investigation when the President is the subject of investigation." Brett M. Kavanaugh, *The President and the Independent Counsel*, 86 Geo. L.J. 2133, 2158 (1998). "Investigation of the President, Hamilton stated, is a kind of 'NATIONAL INQUEST' and '[i]f this be the design of it, who can so properly be the inquisitors for the nation as the representatives of the nation themselves.'" *Id.* (quoting The Federalist No. 65, at 397 (Alexander Hamilton) (Rossiter ed., 1961)). The District Attorney may not circumvent that process.

On a more practical level, "criminal investigations take the President's focus away from his or her responsibilities to the people"; after all, "a President who is concerned about an ongoing criminal investigation is almost inevitably going to do a worse job as President." Brett M. Kavanaugh, *Separation of Powers During the Forty-Fourth Presidency and Beyond*, 93 Minn. L. Rev. 1454, 1461 (2009). "Even the lesser burdens of a criminal investigation—including preparing for questioning by criminal investigators—are time-consuming and distracting." *Id.* That is especially true here, where the District Attorney has subpoenaed not just the President's tax returns but reams of his private financial records spanning almost a decade. If New York is correct that its investigation does not implicate the Constitution, then every State and locality (or, more likely, the ones controlled by the opposite political party) can use their criminal machinery to "investigate" sitting Presidents and comb through every aspect of their private lives. Thankfully, the Constitution bars States and localities from shuttering the presidency—a bar that, until recently, State and local governments respected.

### ii.   *Younger* abstention likely does not apply.

The District Attorney asks the Court to dismiss this case under *Younger*, relying almost entirely on cases that predate 2013. Opp. 5-7. The problem is that, in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court "clarif[ied]" the narrowness of *Younger*. *Id.* at 82; *see Malhan v. Sec'y U.S. Dep't of State*, ___ F.3d ___, 2019 WL 4458806, at *6 (3d Cir. Sept. 18, 2019) ("*Sprint* narrowed *Younger*'s domain"); *Gillette v. Cty. of Warren*, 2015 WL 1608826, at *6 (N.D.N.Y. Apr. 10, 2015)

(describing *Sprint* as a "recent decision which … limited the scope of the *Younger* abstention doctrine"); *Sullivan v. N.Y.S. Unified Court Sys.*, 2016 WL 3406124, at *7 (S.D.N.Y. June 17, 2016) (emphasizing *Sprint*'s "recent—and very clear—instruction that *Younger* should be narrowly construed"). Federal courts, *Sprint* explained, have a "'virtually unflagging'" "'obligation' to hear and decide a case" within their jurisdiction. 571 U.S. at 77. They ordinarily "should not refuse to decide a case in deference to the States," even when confronted with "the pendency of an action in a state … concerning the same matter." *Id.* at 74 (cleaned up). Abstention under *Younger* is a "'narrow'" exception to federal courts' obligation to decide cases, and it applies only in "'exceptional'" circumstances. *Id.* at 77-78, 82. The *Younger* doctrine does not apply here for at least four reasons.

**First**, abstaining under *Younger* would cause the President "irreparable harm." *Page v. King*, 932 F.3d 898, 904 (9th Cir. 2019); *see Younger*, 401 U.S. at 53 (holding that abstention is improper "even in the absence of … bad faith and harassment" if it would cause "irreparable injury"). For example, courts recognize an "exception" to *Younger* abstention when the plaintiff alleges that "a state prosecution will violate the Double Jeopardy Clause." *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992). Courts do this because double jeopardy is not just a defense to liability, but a right not to be prosecuted at all—one that is irreparably lost if it's not vindicated immediately. *Id.* at 1312-13 (citing *Abney v. United States*, 431 U.S. 651 (1977)). The President's absolute immunity from state prosecution while he is President is no different. *See Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (comparing the President's claim of absolute immunity to double jeopardy and holding that it too is irreparably lost if not vindicated immediately (citing *Abney*, 431 U.S. 651)); *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 499-500 (1989) (explaining that "'the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct'" and that it "'is an immunity from suit'"). If anything, *Younger* abstention is even less appropriate in this context based on "the special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives." *Fitzgerald*, 457 U.S. at 743 (citing *Nixon*, 418 U.S. at 691-92).

**Second**, *Younger* does not apply here because the President has "no adequate remedy under New York law." *G.I. Distributors, Inc. v. Murphy*, 336 F. Supp. 1036, 1039 (S.D.N.Y.), *rev'd on other grounds*, 469 F.2d 752 (2d Cir. 1972), *vacated*, 413 U.S. 913 (1973); *see Sprint*, 571 U.S. at 81. The District Attorney asserts that the President can raise his constitutional objections in state court, but he never explains *how*—an odd omission, since the District Attorney is presumably an expert on New York criminal procedure. While he cites authorities that allow subpoena recipients to file motions to quash, *see* Opp. 5, Mazars has no interest in quashing the subpoena and the President cannot force it to file a motion. *See U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1260 (D.C. Cir. 1973) (explaining that the true targets of a third-party subpoena "have no alternative means to vindicate their rights" because "they cannot force the bank's uninvolved officials to run the risk of contempt citations and criminal trials to aid the plaintiffs in establishing their [constitutional] rights"), *aff'd in relevant part*, 421 U.S. 491, 501 n.14 (1975); *Nixon*, 418 U.S. at 691 (explaining that it is "unlikely that [a] third party would risk a contempt citation in order to allow immediate review of the [target's] claim"). And under current New York law, it does not appear that the President could move to quash a subpoena he did not receive. *See, e.g., People v. Merrick Util. Assocs., Inc.*, 575 N.Y.S.2d 634 (Co. Ct. 1991) (holding that a criminal defendant had no standing to challenge a grand-jury subpoena to his accountant for his personal tax returns); *People v. Doe*, 96 A.D.2d 1018, 1019 (N.Y. App. Div. 1983) ("[I]f the owner of the records … is not opposed to producing them [to the grand jury], the customer is powerless to preclude their production."). Federal court was the President's only option.

Even if the President could technically raise his claim in state court, that forum would not be truly adequate. Requiring the President to litigate in state court, even over his unofficial conduct, would risk the kind of "local prejudice that underlies the authority to remove certain cases brought against federal officers from a state to a federal court." *Clinton v. Jones*, 520 U.S. 681, 691 (1997). Indeed, while *Younger* is designed to "'avoid unnecessary conflict between state and federal governments,'" that ship has already sailed when a State is pursuing criminal process against a sitting President. *United*

*States v. Morros*, 268 F.3d 695, 707 (9th Cir. 2001). Because "'the state and federal governments are already in direct conflict before they arrive at the federal courthouse,'" "'any attempt to avoid a federal-state conflict would be futile,'" and "the choice of forum" turns on "the fact that the federal government is asserting its rights against a state and has a great interest in having the federal court conduct the [constitutional] analysis." *Id.* at 707-09; *see United States v. Composite State Bd. of Med. Examiners*, 656 F.2d 131, 136 (5th Cir. 1981) ("For the Federal Government and its agencies, … access to the federal courts is 'preferable in the context of healthy federal-state relations.'").

**Third**, the "harassment" exception to *Younger* abstention applies here. *Black Jack Distributors, Inc. v. Beame*, 433 F. Supp. 1297, 1304-07 (S.D.N.Y. 1977). The District Attorney's subpoena to Mazars cobbled together, virtually word-for-word, two congressional subpoenas—even though New York has no jurisdiction to investigate the federal issues those subpoenas purport to explore. Am. Compl. ¶¶48-49, 53. The subpoena even requests documents about a hotel in Washington, D.C. that has absolutely nothing to do with New York. Am. Compl. ¶53. Most of the documents that the subpoena requests are unrelated to the narrow allegations the District Attorney purports to be investigating. The President's personal federal tax returns are one of the most egregious examples, not only because of their utter irrelevance but also because of the ongoing attempts by the House, New York, and others to obtain them for partisan reasons. Am. Compl. ¶¶25-41. Tellingly, the District Attorney does not deny *any* of these allegations. They certainly "raise the inference" that his "activities have a secondary motive" and are "going beyond good faith enforcement of the [criminal] laws." *Black Jack*, 433 F. Supp. at 1306-07.

**Fourth**, *Younger* does not apply to federal cases, like this one, that challenge a state grand-jury subpoena. While "[t]he circuits are split on this issue," *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004), the better view is that state grand-jury proceedings do not implicate *Younger*. The "holdings and rationales" of the *Younger* line of cases "adumbrate a clear line: *Younger* abstention is appropriate only when there is pending a proceeding in which a state court will have the authority to

*adjudicate* the merits of a federal plaintiff's federal claims." *Monaghan v. Deakins*, 798 F.2d 632, 637 (3d Cir. 1986), *vacated in other part*, 484 U.S. 193 (1988). Yet a state grand jury does not "adjudicate anything"; it "proceeds ex parte" and exists only to "charge that the defendant has violated the criminal law." *Id.*; *Brennick v. Hynes*, 471 F. Supp. 863, 867 (N.D.N.Y. 1979) (explaining that *Younger* abstention is inappropriate because a defendant cannot raise constitutional claims before a New York grand jury). Here, for example, no one contends that a New York grand jury could adjudicate the President's claims under Article II and the Supremacy Clause; instead, the District Attorney wants the President to raise these claims by initiating a *new* proceeding (*i.e.*, filing a motion to quash) in state court. *See* Opp. 5.

The *Younger* doctrine has never required that. Rather, when it applies, *Younger* requires federal courts to let States decide constitutional questions in "pending" proceedings; it does not require federal courts "to allow state courts in actions not yet instituted to determine constitutional questions," or require plaintiffs to "exhaust[] [state] judicial remedies" before coming to federal court. *414 Theater Corp. v. Murphy*, 499 F.2d 1155, 1161-62 (2d Cir. 1974); *see Show-World Ctr., Inc. v. Walsh*, 438 F. Supp. 642, 650 (S.D.N.Y. 1977) (explaining *Younger* does not require plaintiffs to "interven[e]" in another party's state proceeding or to "bring its own state court action"); *accord Monaghan*, 798 F.2d at 638; *Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811, 816 (7th Cir. 2014). Cases holding otherwise are not persuasive, especially after *Sprint* "clarified the limited reach of *Younger*." *Google, Inc. v. Hood*, 822 F.3d 212, 224 & n.7 (5th Cir. 2016) (concluding that *Sprint* undermined prior cases applying *Younger* abstention to grand-jury subpoenas). Accordingly, the District Attorney's reliance on *Younger* is unpersuasive.

### iii. The Anti-Injunction Act likely does not apply.

The District Attorney's reliance on the Anti-Injunction Act fares no better. That statute prohibits federal courts from granting an injunction "to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or

effectuate its judgments." 28 U.S.C. §2283. The Anti-Injunction Act is inapplicable here for at least three reasons.[2]

**First**, this action is brought under 42 U.S.C. §1983. "§1983 is an Act of Congress that falls within the 'expressly authorized' exception of that law." *Mitchum v. Foster*, 407 U.S. 225, 243 (1972); *see also McNeill v. N.Y.C. Housing Auth.*, 719 F. Supp. 233, 256 n.29 (S.D.N.Y. 1989). Although the complaint already gave the District Attorney "fair notice" that this is a §1983 case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), the President has amended his complaint to remove any doubt, *see Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (explaining that the Federal Rules do not require plaintiffs "to invoke §1983 expressly in order to state a claim" and that "add[ing] to the[] complaint a citation to §1983" solves any possible problem).

**Second**, the Anti-Injunction Act is "inapplicable in a suit brought by the National Government." *Arkansas v. Farm Credit Services of Cent. Ark.*, 520 U.S. 821, 829 (1997) (citing *Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957)); *see also In re Grand Jury Subpoena*, 866 F.3d 231, 233 (5th Cir. 2017). This exception applies whether the party requesting injunctive relief is "the United States itself," "a federal agency asserting 'superior federal interests,'" or "a private party" empowered to allege that "the very act of prosecuting the state proceeding violated federal law." *Mitchum*, 407 U.S. at 236; *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 698 (2d Cir. 1966). The exception recognizes that the justification for applying the Anti-Injunction Act "is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay *to prevent threatened irreparable injury to a national interest*." *Leiter Minerals*,

---

[2] While the Anti-Injunction Act is relevant to whether the President is likely to prevail on the merits, it does not *itself* prevent the Court from issuing interim relief against the District Attorney or Mazars. "The law is clear that a federal court has power to issue a temporary restraining order to preserve existing conditions while it determines whether it has jurisdiction of a matter…. [T]his principle applies to §2283," and "a federal court, therefore, can stay state proceedings temporarily while it considers whether §2283 applies to the case before it." Wright & Miller, 17A Fed. Prac. & Proc. Juris. §4222 (3d ed.).

352 U.S. at 225 (emphasis added). This makes sense. As the Supreme Court has explained, the Anti-Injunction Act should not be read to permit "frustration of superior federal interests" by "precluding the Federal Government from obtaining a stay of state court proceedings," regardless whether one of the statutory exceptions is satisfied. *Id.* at 225-226. "The purpose of §2283," at bottom, "was to avoid unseemly conflict between the state and the federal courts where the litigants were private persons, not to hamstring the Federal Government and its agencies in the use of federal courts to protect federal rights." *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 146 (1971). As explained, the President seeks to protect those rights here.

**Third**, the Anti-Injunction Act does not apply here for many of the same reasons that *Younger* doesn't. Namely, the President faces irreparable injury. *See Krahm v. Graham*, 461 F.2d 703, 709 (9th Cir. 1972) ("[§2283] is 'inapplicable in extraordinary cases in which an injunction against state court proceedings is the only means of avoiding grave and irreparable injury'"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 520 F. Supp. 635, 662 (D. Minn. 1981) (similar). And a grand jury does not constitute a pending "proceeding[] in a State court," 28 U.S.C. §2283; *see Dombrowski v. Pfister*, 380 U.S. 479, 485 n.2 (1965).

*     *     *

In sum, this federal case brought by a federal official to vindicate federal rights belongs in federal court. Neither the *Younger* doctrine, the Anti-Injunction Act, nor the District Attorney's tepid response on the merits suggests otherwise. For all of these reasons, the President will likely prevail on the merits of his constitutional claim.

### B.  Irreparable Harm

The President will also suffer irreparable harm absent interim relief. If Mazars divulges his information before he can obtain interim relief, he will forever lose two things: the confidentiality of his private financial information, and his right to secure judicial review of his constitutional claim. Br. 7-8. Now that the President has filed this action, the District Attorney has suddenly promised to

"destroy or return" any information it receives from Mazars and to never "us[e]" it, should the President ultimately prove that the subpoena is unconstitutional. Opp. 13. The District Attorney also represents that, no matter what, it will keep the President's information "confidential[]" and that exposing it to the public would be a "deliberate violation of New York state law." Opp. 13. While the President appreciates these representations and will hold the District Attorney to them, they do not resolve the President's irreparable injuries.[3]

Once the private information that the President confidentially entrusted to Mazars is shared beyond the scope of that confidence, no amount of document destruction or secret-keeping will be able to "return[] [the parties] to the positions they previously occupied." *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999); *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 72 (D. Me. 1993) ("Once confidentiality is breached, the harm is done and cannot be undone."). The President will lose control of his private information, and confidentiality with Mazars will be breached. Just as "attorneys cannot unlearn what has been disclosed to them in discovery," *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 165 (2d Cir. 1992), neither the District Attorney's office nor the grand jury will be able to "erase from its memory" information illegally obtained during the course of an investigation, *In re Grand Jury Matter #3*, 847 F.3d 157, 164 (3d Cir. 2017). Any information produced is sure to affect strategic thinking and decisions going forward, for "there is no way to unscramble the egg scrambled by the disclosure." *In re Ford Motor Co.*, 110 F.3d 954, 963 (3d. Cir. 1997), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009); *see Eastland*, 488 F.2d at 1267 (holding that "there can be no doubt that … immediate and irreparable injury would result from the execution of the subpoena" because Congress could use the plaintiffs' records to "'furnish leads for further investigation'"). Even if the information never

---

[3] The District Attorney's promise to destroy or return the President's information does, however, prevent this case from becoming moot in the event that Mazars is forced to comply with the subpoena as this litigation proceeds.

becomes public, disclosure to *New York* still irreparably harms the President. *See NTEU v. DOT*, 838 F. Supp. 631, 640 (D.D.C. 1993) ("[O]nce … highly personal information is disclosed to the government, the revelation cannot be undone."); *Airbnb, Inc. v. City of New York*, 2019 WL 91990, at *23-24 (S.D.N.Y. Jan. 3, 2019) (same). It is cold comfort to the President that only the District Attorney and the grand jury—institutions currently deciding whether to indict him for a crime—will have his information.

But public disclosure is also a very real threat. Once the District Attorney has the President's information, New York could amend its grand-jury secrecy laws at any time. That might sound far-fetched, but New York has a track record of amending its laws with the specific aim of disclosing this President's private financial information. *See* TRUST Act, 2019 Sess. Law News of N.Y. Chs. 91, 92 (July 8, 2019) (Senate Bill S6146; Assembly Bill A7750). And given Congress's shared interest in the President's financial information, Am. Compl. ¶¶26-32, it is fair to worry that Congress would subpoena the District Attorney's office if it knew the District Attorney had this information. Or, someone in the District Attorney's office could leak the President's information to the public. The District Attorney finds this concern "outrageous," Opp. 13, but *someone* leaked the details of the investigation and subpoena in this case to the press—and it wasn't the President. *See, e.g.*, William K. Rashbaum & Ben Protess, *8 Years of Trump Tax Returns Are Subpoenaed by Manhattan D.A.*, New York Times (Sept. 16, 2019), nyti.ms/2lXgQ7c; Ben Protess & William K. Rashbaum, *Manhattan D.A. Subpoenas Trump Organization Over Stormy Daniels Hush Money*, New York Times (Aug. 1, 2019), nyti.ms/2mkfgNd. Even putting leaks aside, it "would be very difficult to preserve [the] secrecy" of information about the President, and trusting this information to state secrecy laws would be taking "an unacceptable gamble with fundamental constitutional values." 24 O.L.C. Op. at 259 n.38; *see, e.g.*, *Nixon*, 418 U.S. at 688 n.4 (explaining that the district court had to "lift its protective order" on certain grand-jury information about the President because "the disclosures to the news media made the reasons for continuance of the protective order no longer meaningful").

The District Attorney makes one final attempt to undermine the President's claim of irreparable injury. He argues, bizarrely, that the President cannot be harmed by this investigation because he cooperated with certain federal investigations. Opp. 14. This argument fails on multiple fronts. Initially, the President should not be *punished* for cooperating with investigators, trying to reach an amicable resolution, and avoiding litigation when possible. The fact that he did not assert a right in other circumstances says nothing of whether he had a right to assert. More to the point, unlike here, those investigations did not use compulsory process to obtain wide-ranging confidential records in an attempt to recreate his financial history, and did not attempt to end-run the President when negotiations stalled. To the contrary, the parties in those investigations worked together to avoid constitutional issues. Then, when the President offered the same cooperation here, the District Attorney decided to issue a flagrantly abusive subpoena to the President's custodian. Put simply, the threatened harm is not somehow less "irreparable" because the President has consistently done everything in his power to help avoid it.

### C.      Balance of the Equities & Public Interest

Because the District Attorney is a governmental defendant, the balance of equities and the public interest largely merge in this case, and both tip decidedly in favor of interim relief. The District Attorney does not attempt to counter the benefits that preserving the status quo would have for Mazars, Br. 15—which, on their own, put substantial weight on the President's side of the scale. While the District Attorney claims that interim relief would frustrate the administration of New York criminal law, his concern is overstated.

Interim relief is a delay, not a bar—it only "postpones the moment of disclosure ... by whatever period of time may be required" to adjudicate the merits of the President's claim. *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979). This short delay is "insufficient" to constitute meaningful harm. *See EPIC v. DOJ*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014). The District Attorney would be delayed from obtaining only the information in Mazars' possession, but he has made no assertion

whatsoever that this information is uniquely important, much less that he *needs it* to file criminal charges within the limitations period. The statute of limitations, moreover, is fully within New York's control, and tolling might be available until the President leaves office. 24 O.L.C. Op. at 256 & n.33. Even without tolling, New York County's interest in the immediate enforcement of its criminal laws could not outweigh the nation's interest in "the function of an entire branch of government." *Id.* at 257; *see id.* at 256 (explaining that avoiding a statute of limitations is not of "significant constitutional weight" compared to the burdens placed on a sitting President).

The negligible burden of delay must be weighed against the President's interest in avoiding unconstitutional prosecution, the public's interest in preventing the violation of constitutional rights, *see Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016), and the public's interest in protecting the confidentiality of private information, *see Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 435 (D.D.C. 2018); *Saini v. Int'l Game Technology*, 434 F. Supp. 2d 913, 925 (D. Nev. 2006); *Human Touch DC, Inc. v. Merriweather*, 2015 WL 12564166, at *5 (D.D.C. May 26, 2015). It is no contest. The balance of the equities and the public interest strongly support preserving the status quo and granting the President interim relief.

## II.    At the very least, the President is entitled to interim relief under the "serious questions" standard.

The District Attorney does not dispute that the President, as an alternative to proving likely success on the merits, can obtain interim relief if he identifies "'sufficiently serious questions going to the merits to make them a fair ground for litigation.'" Br. 3-4, 6, 13-15. The District Attorney was right to concede that the standard applies here. *See Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980); *Eastland*, 488 F.2d at 1256. And the President easily satisfies it.

This case is rife with serious questions of first impression. According to the District Attorney, even the most basic question at the heart of this case—whether a State can criminally prosecute a sitting President—has generated "widespread disagreement" and comes with "absolutely no guidance

from the courts." Opp. 17. Distinguished jurists agree that this question is "serious." Kavanaugh, 93

Minn. L. Rev. at 1486 n.31. Even the District Attorney's "le[ast] equivocal" source is, well, equivocal.

Opp. 17; *see* Ronald D. Rotunda, *Memo. to Independent Counsel Kenneth Starr Re: Indictability of the President*

(May 13, 1998) ("I express no opinion as to whether a prosecution by state authorities may be proper

(a state prosecution may violate the Supremacy Clause).").

Beyond this fundamental difficulty, this case presents many more serious questions about what

it means to subject a President to criminal process, whether and when criminal investigations cross

the constitutional line, and how to apply these principles to third-party custodians and closely held

businesses. And the District Attorney's defenses implicate, at a minimum, a circuit split over the scope

of *Younger* and a fact-intensive dispute over the presence of harassment. *See supra* I.A.ii; *Black Jack*, 433

F. Supp. at 1307 (the harassment exception to *Younger* required further development than "the present

record" but that "plaintiffs have raised sufficiently serious questions as to the existence of such

conduct to warrant the issuance of a preliminary injunction").

In short, this Court should grant interim relief so it can consider these momentous

constitutional issues "with the full battery of legal arguments before it." *aaiPharma Inc. v. Thompson*, 296

F.3d 227, 234-35 (4th Cir. 2002). Granting the President's motion will spare him irreparable harm,

benefit Mazars, negligibly affect the District Attorney, and allow the parties to move beyond the

"'abbreviated and only partially informed presentation of the merits'" that occurs when they "address[]

only issues of preliminary relief." *Id.*; *accord Caribbean Produce Exch., Inc. v. Sec'y of Health & Human Servs.*,

893 F.2d 3, 6-7 (1st Cir. 1989).

## III.   This Court should be mindful of the subpoena's looming deadline and afford the President enough time to secure judicial review.

As the Court is well aware, the District Attorney's subpoena to Mazars was originally due on

September 19. The District Attorney agreed to extend that deadline "until Wednesday, September 25,

2019 at 1:00 pm." Doc. 4. But because the President's brief is due on September 24, and the hearing

is scheduled for the morning of September 25, the District Attorney's extended deadline does not give this Court enough time to reach a fully informed decision. And it certainly does not give the President enough time to appeal a denial of his request for emergency relief, if necessary, to the Second Circuit and the Supreme Court.

No matter who ultimately prevails in this case, the President of the United States has a right to be heard and to appeal any adverse decision. *See, e.g.*, *Nixon*, 418 U.S. at 714 ("Enforcement of the subpoena duces tecum was stayed pending this Court's [decision]"). The President's access to judicial review should not be cut short—and his right to confidentiality should not be forever breached— because the District Attorney arbitrarily ran out of the clock. Thus, this Court should at least stay the subpoena while the President's motion is pending, plus one week after the Court's decision. Notably, both Congress and the State of New York have agreed to that same relief in other cases against the President. *See* Br. 2; Doc. 29, *Trump v. Comm. on Ways & Means*, No. 19-cv-2173 (D.D.C.). The District Attorney has offered no convincing basis for his refusal to offer the same thing here. Even accepting his exaggerated assertions of harm, he still has "months" before any statute of limitations would possibly run. Opp. 19; *cf. Jones*, 520 U.S. at 686-87 (noting the President offered "'to toll any statutes of limitation'" for a limited time).

In all events, the President asks the Court to inform him—as early as possible on September 25—its intentions regarding the subpoena's looming 1:00 P.M. deadline. Absent preservation of the status quo before that deadline, the President will need to seek appellate relief. But there is no need to burden the courts with emergency requests when the status quo can and should be preserved for (at a minimum) seven days after the Court rules on the President's preliminary-injunction motion. In the alternative, the President asks the Court for a stay pending appeal while he seeks relief from the Second Circuit and the Supreme Court.

## CONCLUSION

This Court should grant the President's motion for interim relief.

Dated: September 24, 2019

Marc L. Mukasey
MUKASEY FRENCHMAN & SKLAROFF LLP
Two Grand Central Tower
140 East 45th Street, 17th Floor
New York, New York 10177
(212) 466-6400
marc.mukasey@mukaseylaw.com

Alan S. Futerfas
Law Offices of Alan S. Futerfas
565 Fifth Ave., 7th Floor
New York, NY 10017
(212) 684-8400
asfuterfas@futerfaslaw.com

Respectfully submitted,

 _s/ William S. Consovoy_
William S. Consovoy (*pro hac vice*)
Cameron T. Norris
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*