IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                  )
DONALD J. TRUMP,                                  )
                                                  )
      Plaintiff,                                )
                                                  )
v.                                                )        No. 19-cv-8694-VM
                                                  )
CYRUS R. VANCE, JR., in his official capacity     )
as District Attorney of the County of New York;   )
SOLOMON SHINEROCK, in his official capacity       )
as Assistant District Attorney of the County of   )
New York; and MAZARS USA, LLP,                    )
                                                  )
      Defendants.                               )
                                                  )
_____  )

**STATEMENT OF INTEREST OF THE UNITED STATES**

# TABLE OF CONTENTS

Subject-Matter Jurisdiction. ........................................................................................................ 3

Abstention. .................................................................................................................................... 4

# TABLE OF AUTHORITIES

## CASES

*Cheney v. U.S. Dist. Court for Dist. Of Columbia*,
    542 U.S. 367 (2004) ................................................................................. 2, 5, 6

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ......................................................................................... 7

*Clinton v. Jones*,
    520 U.S. 681 (1997) ............................................................................. 1, 6, 7, 8

*Commodities Exp. Co. v. Detroit Int'l Bridge Co.*,
    695 F.3d 518 (6th Cir. 2012) ........................................................................... 8

*Dennis v. Higgins*,
    498 U.S. 439 (1991) ...................................................................................... 3, 4

*Diamond "D" Const. Corp. v. McGowan*,
    282 F.3d 191 (2d Cir. 2002) ............................................................................. 5

*Free Enterprise Fund v. PCAOB*,
    561 U.S. 477 (2010) ......................................................................................... 7

*Judicial Watch, Inc. v. U.S. Secret Service*,
    726 F.3d 208 (D.C. Cir. 2013) ....................................................................... 10

*Kugler v. Helfant*,
    421 U.S. 117 (1975) ......................................................................................... 5

*Loving v. United States*,
    517 U.S. 748 (1996) ......................................................................................... 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................... 6

*Mesa v. California*,
    489 U.S. 121 (1989) ......................................................................................... 9

*Mitchum v. Foster*,
    407 U.S. 225 (1972) ...................................................................................... 2, 3, 4

*Moore v. Sims*,
    442 U.S. 415 (1979) ...................................................................................... 5, 8

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982) ................................................................. 1, 6

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706 (1996) ................................................................. 4, 5

*Sprint Commc'ns, Inc. v. Jacobs,*
    571 U.S. 69 (2013) ................................................................. 4, 5, 6

*United States v. Burr,*
    25 F. Cas. 187 (CC Va. 1807) ................................................................. 6

*United States v. Curtiss-Wright Export Corporation,*
    299 U.S. 304 (1936) ................................................................. 6, 7

*United States v. Nixon,*
    418 U.S. 683 (1974) ................................................................. 9

*Younger v. Harris,*
    401 U.S. 37 (1971) ................................................................. 2, 5

**STATUTES**

28 U.S.C. § 517 ................................................................. 1

28 U.S.C. § 1331 ................................................................. 3

28 U.S.C. § 1343 ................................................................. 3

28 U.S.C. § 1442 ................................................................. 9

28 U.S.C. § 2283 ................................................................. 2, 3

42 U.S.C. § 1983 ................................................................. 2, 3

**UNITED STATES CONSTITUTION**

U.S. Const., art. I, § 4 ................................................................. 7

U.S. Const., art. I, § 5 ................................................................. 7

U.S. Const., art. II, § 2 ................................................................. 7

**OTHER AUTHORITIES**

111 Cong. Rec. 15595 (1965) ................................................................. 8

Edward Corwin, *The President: Office and Power*s, 1787-1984 (1984)....................................... 7

Office of Legal Counsel, *A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 O.L.C. Op. 222 (2000) ..................................................................................... 1

The United States of America respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517.[1]  The President filed this action to enjoin enforcement of a local prosecutor's grand jury subpoena demanding the President's personal records, and as support for that relief he has invoked his "'unique position in the constitutional scheme,'" *Clinton v. Jones*, 520 U.S. 681, 698-99 (1997), and the "singular importance of [his] duties," *Nixon v. Fitzgerald*, 457 U.S. 731, 751 (1982).  The President's complaint raises a number of significant constitutional issues that potentially implicate important interests of the United States.  *See, e.g.*, Am. Compl. ¶¶ 10-24, ECF No. 21 (asserting that Article II, the Supremacy Clause, and the structure of the Constitution preclude subjecting a sitting President to state criminal process, including grand jury subpoenas directed at the President or his agents); *see generally A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 Op. O.L.C. 222 (2000).  Given the highly expedited nature of the current proceeding for a temporary restraining order, *see* ECF No. 25, the United States participates now to explain why it is both correct and important that the President's challenge to the subpoena on account of his office be resolved in federal court rather than in state court, and to support interim relief as necessary to allow for appropriate briefing of the weighty constitutional issues involved.[2]

Congress has provided both subject-matter jurisdiction and a cause of action that authorize

---

[1] That statute provides:  "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

[2] The United States has previously participated in cases that have presented other issues concerning the President's amenability to judicial process.  *See, e.g.*, *Trump v. Deutsche Bank AG*, No. 19-1540 (2d Cir. Aug. 19, 2019) (whether a congressional subpoena seeking the President's personal financial records from a third-party custodian is enforceable); *Clinton v. Jones*, 520 U.S. 681 (1997) (whether civil litigation in federal court against the President for pre-tenure conduct may proceed during his tenure); *Nixon v. Fitzgerald*, 457 U.S. 731 (1982) (whether the President is immune from civil actions for damages based on the President's conduct in office); *United States v. Poindexter*, 732 F. Supp. 142 (D.D.C. 1990) (whether a former President may be subpoenaed to testify as a witness in support of the defense in a criminal trial against one of his subordinates).

this Court to hear the President's claims, and neither of the District Attorney's objections to this Court's exercise of that jurisdiction has merit. *First*, the Anti-Injunction Act, 28 U.S.C. § 2283, is inapplicable here, where the President's claims are brought pursuant to 42 U.S.C. § 1983, an express statutory cause of action for individuals alleging that persons acting under color of state law are depriving them of federal constitutional rights, privileges, or immunities. *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972). *Second*, although federal courts sometimes abstain in suits seeking to enjoin pending state criminal proceedings, *see Younger v. Harris*, 401 U.S. 37 (1971), the comity interests underlying that abstention doctrine must give way to the concerns under Article II and the Supremacy Clause posed by a state grand jury subpoena claimed to be targeting the sitting President. Given the President's "unique position in the constitutional scheme," "the high respect that is owed to the office of the Chief Executive is a matter that should inform the conduct of the entire proceeding." *See Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 382, 385 (2004).

Because the District Attorney's threshold procedural objections are flawed, this Court must resolve the merits of the President's claims. The United States thus respectfully renews its request that the Court enter a briefing schedule that will permit the type of considered deliberation appropriate for the serious constitutional issues at stake in this proceeding, and also enter interim relief as necessary to preserve the status quo pending that deliberation (if the parties cannot negotiate a production schedule for the subpoena that would enable a timely resolution of the claims presented here). Doing so will prevent irreparable harm to the President's asserted constitutional interest in not having his records subjected to state criminal compulsory process in these circumstances, while the District Attorney has identified no prejudice from a short delay to this discrete portion of the grand jury investigation at issue.

**Subject-Matter Jurisdiction.**  This Court possesses subject-matter jurisdiction over the President's claims under 28 U.S.C. § 1331, the general federal-question jurisdiction statute, and 28 U.S.C. § 1343(a)(3), which vests the Court with jurisdiction over civil suits "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States . . . ."  Contrary to the District Attorney's suggestion, the Anti-Injunction Act, 28 U.S.C. § 2283, does not deprive the President of a federal forum for the litigation of his federal constitutional claims.

The Anti-Injunction Act's limitation on federal injunctions to stay "proceedings in a State court" has no application here, even assuming *arguendo* that a grand jury subpoena constitutes a state court "proceeding."  By its own terms, the Anti-Injunction Act does not apply when a suit for injunctive relief is "expressly authorized by Act of Congress."  28 U.S.C. § 2283.  One such statute is 42 U.S.C. § 1983, which authorizes a "suit in equity" if persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" allegedly are causing an individual to be subjected to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  The Supreme Court has squarely held that Section 1983 comes within the express-authorization exception to the Anti-Injunction Act and that federal courts thus possess the power to enjoin state court prosecutions under that statute.  *Mitchum*, 407 U.S. at 242-43.

Here, the President is invoking Section 1983 to challenge a deprivation by the District Attorney of "rights, privileges, or immunities secured by the Constitution"—specifically, a freedom from enforcement of the subpoena that is claimed to be secured to the President, and the President alone, by Article II of the Constitution.  *See* Pl's Amend. Compl. ¶ 8.  The Supreme Court consistently "ha[s] rejected attempts to limit the types of constitutional rights that are encompassed within the phrase 'rights, privileges, or immunities'" in Section 1983.  *Dennis v.*

3

*Higgins*, 498 U.S. 439, 445 (1991).  And the Court has made clear in particular that Section 1983 actions may be predicated not only on the kinds of right-conferring provisions found in the Bill of Rights, but also on grants of authority to the federal government that correspondingly constrain state governments.  *See id.* at 446-51 (dormant Commerce Clause claims may be brought under Section 1983).  Here, Article II confers "rights, privileges, [and] immunities" on the President, and he claims that those rights are infringed by the District Attorney's enforcement of the challenged subpoena under color of New York law.  That claim is cognizable under Section 1983. Accordingly, the Anti-Injunction Act does not bar the President's suit.[3]

**Abstention.**  Nor is the District Attorney correct that this Court should refrain from exercising its jurisdiction under the doctrine of *Younger* abstention.  The most basic and fundamental flaw with the District Attorney's position is that *Younger* is rooted in principles of comity and federalism, which lose their force when the federal government's own Chief Executive invokes federal constitutional law to challenge a state grand jury subpoena demanding his records. Indeed, both Congress and the Supreme Court have made clear that federal objections to state proceedings of the type raised by the President should be adjudicated in federal rather than state court—a proposition that is compelled by both constitutional design and common sense.

The Supreme Court has described *Younger* abstention as an "exceptional" departure from federal courts' "virtually unflagging" "obligation" to exercise jurisdiction conferred by Congress despite the pendency of related proceedings in state court.  *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).  Like other federal abstention doctrines, *Younger* abstention is ultimately grounded "in the historic discretion exercised by federal courts 'sitting in equity.'"  *Quackenbush*

---

[3] Because this suit comes within one of the express statutory exceptions to the Anti-Injunction Act, the Court need not address whether the suit is also covered by the judicially created exception for injunctive actions by the federal government.  *See Mitchum*, 407 U.S. at 235-36 & n.20.

*v. Allstate Ins. Co.*, 517 U.S. 706, 718 (1996).  In the case of *Younger* abstention, when a plaintiff asks a federal court to enjoin a pending state criminal proceeding, principles of "comity" and "[f]ederalism" generally call for the federal court to exercise that equitable discretion in favor of abstention.  *Younger*, 401 U.S. at 44.

But, reflecting its exceptional nature, *Younger* has important limitations.  *See Sprint Commc'ns, Inc.*, 571 U.S. at 73.  Even when a plaintiff is seeking to enjoin an ongoing state criminal proceeding, "a federal court may nevertheless intervene in [the] state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54); *see also Kugler v. Helfant*, 421 U.S. 117, 124–25 (1975) (federal court may intervene when there is "an extraordinarily pressing need for immediate federal equitable relief").  Likewise, a federal court may intervene if "the state proceedings [do not] afford an adequate opportunity to raise the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 430 (1979).  In each of these circumstances, principles of comity and federalism give way to countervailing considerations in the exercise of the court's equitable discretion.  So too here.

The District Attorney asks this Court to substantially extend *Younger* to shut the doors of the federal courts to the President of the United States, but the principles of federalism and comity that undergird *Younger* abstention provide no support for that unprecedented step.  To the contrary, federalism and comity militate decisively in favor of ensuring that the President has a federal forum in which to litigate federal claims that a state criminal subpoena is impermissibly trenching on his constitutional role in violation of Article II and the Supremacy Clause.  Remitting the sitting President to state court would turn notions of federalism and comity on their head, and would ignore "'the unique position [the President occupies] in the constitutional scheme.'" *Cheney*, 542

5

U.S. at 382 (quoting *Fitzgerald*, 457 U.S. at 749); *see also id.* at 381-82 ("[I]n no case . . . would a court be required to proceed against the president as against an ordinary individual." (quoting *United States v. Burr*, 25 F. Cas. 187, 192 (CC Va. 1807) (Marshall, C.J.))).  Indeed, contrary to the Supreme Court's admonition that *Younger* abstention is limited to "exceptional circumstances" where abstention is warranted, refusing even to consider a sitting President's federal constitutional challenge to a state criminal subpoena demanding his own records would be a particularly inappropriate derogation of what the Court described as the "virtually unflagging" "obligation" to exercise jurisdiction where, as here, jurisdiction exists, notwithstanding the pendency of a state proceeding.  *Sprint Commc'ns, Inc.*, 571 U.S. at 77.[4]

The Supreme Court has long recognized that "the high respect that is owed to the office of the Chief Executive . . . should inform the conduct of [an] entire proceeding" implicating the autonomy of his office.  *Cheney*, 542 U.S. at 385 (quoting *Clinton*, 520 U.S. at 707).  That respect is in fact demanded by our constitutional design.  While the Constitution vests the legislative and judicial powers in collective bodies, "the executive Power" is vested in the President alone.  *Fitzgerald*, 457 U.S. at 749-50.  His office, unlike those of other executive officers, is not dependent on Congress for its existence or its powers.  The Constitution itself "entrust[s] [the President] with supervisory and policy responsibilities of utmost discretion and sensitivity."  *Id.* at 750.  And it is he alone "who is charged constitutionally to 'take Care that the Laws be faithfully executed.'"  *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992) (Take Care Clause constitutes "the Chief Executive's most important constitutional duty.").  The President serves as "the sole organ of the federal government in the field of international relations," *United*

---

[4] The United States is unaware of any circumstance where a federal court has applied *Younger* abstention to a challenge to a state grand jury subpoena demanding a sitting President's records, and the District Attorney identifies none.

*States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936), and his "duties as Commander in Chief . . . require him to take responsible and continuing action to superintend the military," *Loving v. United States*, 517 U.S. 748, 772 (1996); *see also* U.S. Const., art. II, § 2, cl. 2.  In the words of former President Truman, "every final important decision has to be made right here on the President's desk, and only the President can make it."  Edward Corwin, *The President: Office and Power*s, 1787-1984 (1984).

In constitutional and practical terms, the demands placed on the President under Article II are unceasing.  *See Clinton*,  520 U.S. at 697 (The President "occupies a unique office with powers and responsibilities so vast and important that the public interest demands that he devote his undivided time and attention to his public duties.").  Our system of government presumes that the President will have ultimate authority over the actions of officials within the Executive Branch. *Cf. Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 865 (1984) (deference to unelected agency officials is justified because "[w]hile agencies are not directly accountable to the people, the Chief Executive is"); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496-97 (2010) (reaffirming "the basic principle that the President 'cannot delegate ultimate responsibility or the active obligation to supervise that goes with it,' because Article II 'makes a single President responsible for the actions of the Executive Branch.'" (quoting *Clinton*, 520 U.S. at 712-13 (Breyer, J., concurring in judgment)).  In both the demands it places on its occupant and the accountability it expects of him, the presidency is a singular office.

The unceasing nature of the President's duties is reflected in the constitutional structure of his office.  In contrast to the Congress, which is required to assemble only "once in every Year" (Const. Art. I, § 4) and which may adjourn on a regular basis (*id.* § 5), the President must attend to his duties as Chief Executive and Commander-in-Chief continuously throughout his tenure.  The

Twenty-Fifth Amendment, with its elaborate machinery for carrying out the President's functions when he "is unable to discharge the powers and duties of his office," confirms that constitutional imperative. *See Clinton*, 520 U.S. at 698 ("[T]he Twenty-fifth Amendment to the Constitution was adopted to ensure continuity in the performance of the powers and duties of the office."). "One of the sponsors of that Amendment stressed the importance of providing that 'at all times' there be a President 'who has complete control and will be able to perform' those duties." *Id.* (quoting 111 Cong. Rec. 15595 (1965) (remarks of Sen. Bayh)).

Given the unique character of the President's office and his responsibilities in the Nation's constitutional structure, a proper understanding of comity requires a federal court in these circumstances to exercise its jurisdiction rather than abstain. "Comity generally refers to the respect that [federal courts] accord a state court[,] [b]ut comity is a two-way street." *Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 527 (6th Cir. 2012). When a local prosecutor takes the extraordinary step of issuing compulsory process in a state criminal investigation that demands the personal records of a sitting President, comity calls for preserving the availability of a federal forum to challenge enforcement of that subpoena, particularly given that the President's constitutional claims implicate the very relationship between the federal and state governments under the Supremacy Clause. *Cf. Moore*, 442 U.S. at 430 (plaintiff may obtain relief in federal court if "the state proceedings [do not] afford an adequate opportunity to raise the constitutional claims."). And by the same token, the state's interest in litigating such an unusual dispute in a state forum is minimal.

Indeed, both the Supreme Court and Congress have effectively already made clear that the type of claims the President has raised ought to be adjudicated in federal rather than state court. As for the Supreme Court, it has recognized an *implied exception* to the Anti-Injunction Act's

*express prohibition* for suits by the federal government seeking injunctions against state-court proceedings. *See supra* at 4, n.3. It follows directly that the Court would not *extend Younger* abstention's *implied limitation* on the Section 1983 cause of action to a suit *by the President* seeking injunctive relief against state criminal proceedings in order to vindicate his constitutional rights, privileges, and immunities under Article II.

As for Congress, not only has it authorized Section 1983 suits, but it has also authorized federal officers to remove from state court to federal court any "civil action or criminal prosecution . . . against or directed to . . . any officer . . . of the United States for or relating to any act under color of such office," so long as the officer is asserting a federal defense to the action. *See* 28 U.S.C. § 1442(a)(1); *Mesa v. California*, 489 U.S. 121, 124-25 (1989). That is important because, if the state grand jury had issued a subpoena to the President himself, the President could have taken measures enabling him to invoke Section 1442 to contest the validity of the subpoena in federal court—namely, by declining to comply on the basis of Article II and the Supremacy Clause, waiting for the commencement of a subpoena enforcement proceeding in state court, and then removing that proceeding under Section 1442 on the ground that the subpoena enforcement action would relate to his "act" of declining to comply with the subpoena "under color" of his assertion of the constitutional authority of his office. Yet, as the Supreme Court has recognized, "[t]o require a President of the United States to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling would be unseemly." *United States v. Nixon*, 418 U.S. 683, 691–92 (1974). For that reason, the *Nixon* Court allowed the President to appeal from the denial of an order to quash a subpoena without requiring the President to go into contempt. *Id.* A federal court likewise should not require a President to trigger a state-

court subpoena enforcement proceeding before he can bring his objections to the subpoena before a federal court.

To be sure, the grand jury in this matter has sought the President's records by subpoenaing his third-party accountant rather than the President himself, but that is not a material distinction for purposes of *Younger* abstention.  As the President is undoubtedly entitled to review in federal court when the state prosecutor seeks his records directly from him, the President should not lose access to that federal forum simply because the President's records are sought from a third-party custodian.  *Cf. Judicial Watch, Inc. v. U.S. Secret Service*, 726 F.3d 208, 225 (D.C. Cir. 2013) (FOIA exemption for White House records extends to Secret Service records concerning White House entry).  And that is especially so given that a President's personal and business interests would normally be expected to require placing his financial records in the custody of a third-party accountant.  The burden on the President's time and attention is no less in that posture, given that he would not be expected to personally compile the requested records even if the subpoena were issued to him directly.

In sum, this Court should hold that the President's federal constitutional claims challenging the state grand jury subpoena at issue are properly adjudicated in federal court.  The United States further respectfully requests that this Court adopt an appropriate briefing schedule to resolve the President's significant constitutional claims, and enter any interim relief necessary to maintain the status quo pending orderly resolution of those claims.

Respectfully submitted,

GEOFFREY S. BERMAN                    JOSEPH H. HUNT
United States Attorney                Assistant Attorney General

JEFFREY OESTERICHER                   JAMES M. BURNHAM
Chief, Civil Division                 Deputy Assistant Attorney General

                                      JOHN R. GRIFFITHS
                                      Director, Federal Programs Branch

                                      ELIZABETH J. SHAPIRO
                                      Deputy Director,
                                      Federal Programs Branch

                                      JOSHUA E. GARDNER

                                      /s/ Joshua E. Gardner
                                      Special Counsel
                                      United States Department of Justice
                                      Civil Division, Federal Programs Branch
                                      1100 L Street, N.W.
                                      Washington, D.C. 20005
                                      Telephone:  (202) 305-7583
                                      Facsimile:  (202) 616-8470
                                      Email:
                                      Joshua.E.Gardner@usdoj.gov

                                      *Counsel for the United States*

OCTOBER 2, 2019

11