**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N.Y. 10013
(212) 335-9000

CYRUS R. VANCE, JR.
DISTRICT ATTORNEY

CAREY R. DUNNE
GENERAL COUNSEL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/3/19

R RECEIVED OCT 3 - 2019
CHAMBERS OF
JUDGE MARRERO

October 3, 2019

**BY HAND DELIVERY**
Judge Victor Marrero
U.S. District Court Judge
Southern District of New York
500 Pearl Street, New York, N.Y.

> Re: **Donald J. Trump v. Cyrus R. Vance, Jr.**
> **Case No. 1:19-cv-08694 (VM)**

Dear Judge Marrero:

We write to respond briefly to the "Statement of Interest" filed by the United States Department of Justice ("DOJ") in this litigation late yesterday afternoon.

By way of its seemingly simple submission, the DOJ has elected to insert itself into this private lawsuit to support the Plaintiff's extravagant claim that, given his current position, he and all of his prior business associates and related companies are immune, not just from prosecution, but from any routine grand jury inquiry into transactions undertaken before he was a government employee. This DOJ position is all the more audacious in view of the fact that, until quite recently and for more than a year, *DOJ prosecutors in this very District* conducted a highly publicized grand jury investigation into some of the very same transactions and actors that have been reported to be at issue in this matter. For all the reasons articulated in our earlier brief (Dkt. 16), the Plaintiff's position is not and should not be the law. In particular, the DOJ submission ignores the reality underlying Plaintiff's lawsuit in three important ways:

First, while the DOJ claims there is no cognizable harm to the People of the State of New York from a stay that "maintain[s] the status quo" (Dkt. 32: at 10), the true exigency here stems from the fact that delaying enforcement of the subpoena will likely result in the expiration of the statutes of limitation that would apply to some of the transactions at issue in the grand jury investigation (Dkt. 16: at 19). Also of concern is the State's sovereign right to enforce its criminal laws free from federal interference.

Second, in contrast, the DOJ ignores the fact that there is no credible claim of irreparable harm to Plaintiff, should subpoena compliance resume. This is because a) the documents in question are to be produced by a third-party business, which would visit neither distraction nor burden on the Plaintiff whatsoever; b) there is no risk of publication of the materials the Plaintiff is so concerned about, given the statutory requirements of grand jury secrecy; and c) there is nothing inherently "privileged" or sacrosanct in the first place about a president's tax returns (especially returns that stem

from periods when he was in private business). The Plaintiff himself, before taking office, agreed to make such documents public,[1] and every prior president for the past forty years has done so without incident. (And, of course, the returns at issue have been filed *already* with at least two other governmental agencies: the federal tax authorities and those in the State of New York.) Plaintiff has not articulated any reason why a production of his tax returns, by a third-party and under the protection of grand jury secrecy, would create "irreparable harm" for his or any presidency.

Third, the DOJ submission ignores the settled law. As an initial matter, the DOJ relies on 42 U.S.C. § 1983 ("§ 1983") to posit the existence of subject matter jurisdiction and an exception to the Anti-Injunction Act (Dkt. 32: at 2). This reliance is misplaced. The Article II right asserted by the Plaintiff here is not cognizable under § 1983, because it is "'too vague and amorphous.'" *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989) (quoting *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 431–32 [1987]). Indeed, "the availability of the § 1983 remedy turns on whether the statute, by its terms or as interpreted, creates obligations 'sufficiently specific and definite' to be within 'the competence of the judiciary to enforce,' [and] is intended to benefit the putative plaintiff." *Golden State Transit Corp.*, 493 U.S. at 108 (internal citation omitted). The Plaintiff's claimed Article II right to "freedom from enforcement of the subpoena" (Dkt. 32: at 3) exists neither in the terms of Article II nor in case law interpreting that provision.[2]

Even if Plaintiff were to have a colorable claim under Article II and § 1983, this Court should still abstain under *Younger*. As an initial matter, the DOJ ignores the plain language of *Sprint*, which does not stand for the proposition that federal courts "sometimes" abstain from suits involving state criminal proceedings (Dkt. 32: at 2), but instead clearly reaffirmed the long-held principle that: "*Younger* exemplifies one class of cases in which federal-court abstention is **required**: When there is a parallel, pending state criminal proceeding, federal courts **must** refrain from enjoining the state prosecution." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (emphasis added). Here, there is clearly a pending state criminal proceeding that, as described above, is being irreparably harmed by Plaintiff's tactical requests for delay.

In addition, contrary to DOJ's contention (*see* Dkt. 32: at 5, 8 [citing *Moore v. Sims*, 442 U.S. 415 (1979)]), New York state proceedings do afford Plaintiff an adequate opportunity to raise any constitutional claims: while we firmly believe he would ultimately lose on the merits, Plaintiff can bring his § 1983 lawsuit in state court. *See, e.g., Haywood v. Drown*, 556 U.S. 729, 734-36 (2009). As the Supreme Court stated in *Haywood*, "state courts as well as federal courts are entrusted with providing a forum for the vindication of federal rights violated by state or local officials acting under color of state law." 556 U.S. at 735. In short, although DOJ appears to presume that state courts cannot properly entertain Plaintiff's claims, that stands in stark contrast to the Supreme Court's repeated holding that "'state courts have inherent authority, and are thus presumptively competent, to

---

[1] *See* Meet the Press, *Donald Trump: I will Release Tax Returns*, NBC News, Jan. 24, 2016, *available at* https://www.nbcnews.com/meet-the-press/video/donald-trump-i-will-release-tax-returns-607836227723.

[2] Even in a world where such a right existed under Article II (a position that even the DOJ does not explicitly embrace), it would be for the United States alone to assert it, because the violation would be against the Office of the President. It would not be enforceable by this Plaintiff acting in his individual capacity to prevent disclosure of records largely pre-dating his time in office and related to third-party business entities and individuals.

October 3, 2019

adjudicate claims arising under the laws of the United States.'" *Id.* at 735-36 (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458-59 [1990]).

Notably, while the DOJ avoids taking any position on the ultimate merits and the Plaintiff's entitlement to the emergency relief he seeks, the DOJ nonetheless invites the Court to provide "interim relief" to "maintain the status quo" (Dkt. 32: at 10). This is a gently phrased invitation to ignore the clear standards applied in the Second Circuit for imposition of a preliminary injunction, and to permit Plaintiff to evade the consequence of his failure to meet those standards.

In short, the Plaintiff's only goal in this litigation, now supported by the DOJ itself, is to obtain as much delay as possible, through litigation, stays, and appeals. If delays are achieved, to the frustration of the New York state inquiry, the Plaintiff will win (as will the various individuals and companies at issue in the grand jury investigation), and the state interest will be irreparably harmed, even without an actual decision on the merits.

We reiterate our position that this matter should be dismissed pursuant to the settled law mandating abstention. Further, for all the reasons articulated in our brief (Dkt. 16: at 11-19), Plaintiff's motion for injunctive relief should be denied, including on the ultimate merits, which turn on the law and have been, at this point, fully briefed and argued.

Very truly yours,

Carey R. Dunne, *General Counsel*
Christopher Conroy
Solomon B. Shinerock
James H. Graham
Allen J. Vickey
*Assistant District Attorneys*
New York County District Attorney's Office

CC: all counsel of record (via email)

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Defendant.

SO ORDERED.

10-3-19
DATE

VICTOR MARRERO, U.S.D.J.