USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: July 16, 2020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DONALD J. TRUMP,

                        Plaintiff,

- against -

CYRUS R. VANCE, JR., in his official capacity as District Attorney of the County of New York;

and

MAZARS USA, LLP,

                        Defendants.

---

Case No. 1:19-cv-08694-VM

## JOINT SUBMISSION ON NEED FOR FURTHER PROCEEDINGS

Pursuant to this Court's July 10, 2020 Order, the parties provide below their joint submission on the need for further proceedings and potential areas for further argument.

**A.  Procedural History**

1. On September 19, 2019, the President filed suit arguing that the disputed subpoena is invalid. The President also sought a preliminary injunction to enjoin enforcement of the subpoena. Shortly thereafter, the District Attorney sought dismissal on jurisdictional grounds and opposed the President's request for an injunction. This Court granted dismissal under *Younger v. Harris*, 401 U.S. 37 (1971), and, alternatively, denied the President's preliminary-injunction motion. *See Trump v. Vance*, 395 F. Supp. 3d 283 (S.D.N.Y. 2019). The President appealed.

2. On November 4, 2019, the Second Circuit rejected this Court's holding that *Younger* abstention applied, but agreed that the President wasn't entitled to a preliminary injunction. As a result, the Second Circuit vacated the judgment dismissing the lawsuit, affirmed the denial of the preliminary injunction, and remanded the matter for further proceedings consistent with its opinion. *See Trump v. Vance*, 941 F.3d 631 (2d Cir. 2019). The President filed a petition for writ of certiorari.

3. The Supreme Court granted review and, on July 9, 2020, issued an opinion affirming the Second Circuit's judgment. *See Trump v. Vance*, --- S. Ct. --- (2020) ("Slip. Op."). The Court also remanded the case for further proceedings consistent with its opinion. The Supreme Court has not yet entered its judgment in the case.

4. On July 10, 2020, the Second Circuit remanded the case to this Court for further proceedings. On that same day, this Court instructed the parties to jointly inform it "whether further proceedings will be necessary in light of the dispositions by the Courts above" and to "outline potential areas for further argument."

**B. Statement of Donald J. Trump, President of the United States, on the need for further proceedings and potential areas for further argument.**

For the reasons set forth below, it is the President's position that further proceedings are necessary. Those proceedings should commence once the Supreme Court issues its judgment. In those proceedings, the President will file a Second Amended Complaint in which he will raise arguments that the Supreme Court held that he may make on remand. And, should the District Attorney file an Answer, or should his motion to dismiss be denied, the President should be permitted to develop a factual record in support of his claims. The President joins in the expedited schedule proposed by the District Attorney.

**1. Timing of Proceedings**

The Supreme Court has not issued its judgment. As the Second Circuit was notified, it "will not issue for at least twenty-five days pursuant to Rule 45 [of the Rules of the Supreme Court of the United States.]" CA2 Doc. 175-1. Accordingly, neither the Second Circuit nor this Court has jurisdiction to take action at this point. *See Hermann v. Brownell*, 274 F.2d 842, 843 (9th Cir. 1960) ("When a case is appealed from this Court to the Supreme Court, this Court completely loses jurisdiction of the cause."); *Brewer v. Quarterman*, 474 F.3d 207, 210 (5th Cir. 2006) (Dennis, J., dissenting) ("The Supreme Court's grant of certiorari has the purely jurisdictional effect of staying the

court of appeals' ability to perform further judicial acts in the case."). A lower court's jurisdiction "can be revived only upon the mandate of the Supreme Court itself." *Hermann*, 274 F.2d at 843.* That said, the President has notified the District Attorney that he consents to his forthcoming motion to expedite issuance of the Supreme Court's judgment. In all events, that judgment will soon be issued, and the President does not object to this Court taking these initial procedural steps in order to prepare for the remand proceedings.

## 2.  Potential Areas for Further Argument

The Supreme Court held that its ruling is "limited to absolute immunity and heightened need." Slip Op. 21. It then "directed that the case be returned to the District Court, where the President may raise further arguments as appropriate." *Id.*; *see also id.* at 21-22 n.6. The Court was unanimous in reaching this result. *See id.* at 23 (Kavanaugh, J., concurring in the judgment) (explaining that the Court "unanimously agrees that this case should be remanded to the District Court, where the President may raise constitutional and legal objections to the subpoena as appropriate").

The Court divided those arguments into four basic categories. *First*, the President may argue that this subpoena is not a "properly tailored" grand-jury subpoena. *Id.* at 13 (majority op.). As the opinion explains, "grand juries are prohibited from engaging in 'arbitrary fishing expeditions.'" *Id.* at 16 (quoting *United States v. R. Enterprises, Inc.*, 498 U. S. 292, 299 (1991)). This tailoring command requires the Court to evaluate the "breadth" of the subpoena. *Id.* at 20. *Second*, the President may argue that the subpoena "'is motivated by a desire to harass or is conducted in bad faith.'" *Id.* at 16 (quoting *Huffman v. Pursue, Ltd.*, 420 U. S. 592, 611 (1975)). *Third*, the President may argue that the subpoena is meant "to manipulate [his] policy decisions or to retaliate against [him] for official acts." *Id.* at 17

---

* In none of the other seven Second Circuit cases reviewed by the Supreme Court this Term did it (or the district court) engage in any judicial action between the time the opinion issued and the time that final judgment was entered. And in one of them, the Second Circuit explicitly recognized—only after the Supreme Court entered final judgment—that resolution of the case in the Supreme Court had "restor[ed] jurisdiction to this Court." *Marcel Fashions Group, Inc. v. Lucky Brand Dungarees Stores, Inc.*, CA2 No. 17-361, Doc. 121 (order recalling the mandate three days after notice of the Supreme Court's final judgment).

(cleaned up). *Fourth*, the President may "argue that compliance ... would impede his constitutional duties." *Id.* at 20. The President intends to raise some or all of these arguments in his forthcoming Second Amended Complaint.

If the District Attorney answers (or his motion to dismiss is denied), the next step should be the development of a factual record pursuant to Rule 26 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York, and this Court's Individual Rules of Practice. The parties likely will disagree about the appropriate scope of discovery. If those disputes cannot be resolved, then they can be adjudicated through motions practice. But there can be no reasonable disagreement that a factual record will need to be developed. As the Supreme Court held, lower courts "'should be particularly meticulous' in assessing a subpoena for a President's personal records." Slip. Op. 26 (Kavanaugh, J., concurring in the judgment) (quoting majority op. at 20)). Thus, both the Court and the President are entitled to know, *inter alia*, "why the State wants the information; why and how much the State needs the information, including whether the State could obtain the information elsewhere; and whether compliance with the subpoena would unduly burden or interfere with a President's official duties." *Id.* Indeed, it would be impossible for the President to fairly litigate his claims without this information. The President should not be required, for example, to litigate the subpoena's breadth or whether it was issued in bad faith without understanding the nature and scope of the investigation and why the District Attorney needs all of the documents he has demanded. *See R. Enterprises, Inc.*, 498 U.S. at 301; *In re Grand Jury Proceedings*, 486 F.2d 85, 93 (3d Cir. 1973); *In re PHE, Inc.*, 790 F. Supp. 1310, 1315 (W.D. Ky. 1992).

    3.    **Remand Schedule**

The President respectfully requests that the Court adopt the schedule proposed by the District Attorney. Under that schedule, the next step is for the President to file a Second Amended Complaint by July 27, 2020.

**C.  Statement of Cyrus Vance, District Attorney for the County of New York, on the need for further proceedings and potential areas for further argument.**

   **1.  Timing of Proceedings**

As an initial matter, the President is wrong to assert that this Court, which received a mandate from the U.S. Court of Appeals for the Second Circuit on July 10 remanding this matter for any further proceedings, ECF No. 46, lacks jurisdiction. The rule that "filing a notice of appeal [in the U.S. Court of Appeals] is an event of jurisdictional significance," *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam), does not clearly apply with equal force when petitions for certiorari are filed in the Supreme Court. The reason parties seek to stay mandates in the court of appeals when seeking certiorari is precisely because the grant of review does *not* automatically divest the lower courts of the power to act in the same case. *See* Fed. R. App. P. 41(d) (providing for parties to seek to stay the mandate pending a petition for certiorari). Actions in the lower courts may not moot the Supreme Court's power to act, *see United States v. Villamonte-Marquez*, 462 U.S. 579, 581 n.2 (1983), but unless a court stays the mandate or otherwise stays lower-court proceedings, they are not automatically divested of jurisdiction. Here, there was no stay of the mandate because the President did not move for one and no court granted one on its own initiative, therefore the Second Circuit never lost its power to act in this matter. And the Second Circuit's mandate remanding the matter to this Court in accordance with the Supreme Court's Order, *see* Slip Op. at 22, provided this Court with the power to act. What is more, the matters before the Supreme Court were limited to the President's claims of Article II immunity and an Article II requirement that the prosecution make a heightened showing, which the Court definitively rejected. The subpoena-specific claims before this Court on remand are distinct, and because they were not involved in the appeal or grant of certiorari, they remain within this Court's power to resolve. *See Griggs*, 459 U.S. at 58.

In any event, the President correctly recognizes that the fact that the Supreme Court's judgment has not issued does not prevent this Court from taking procedural steps to prepare for the

5

remand proceedings now, and he consents to the District Attorney's filing a motion in the Supreme Court under Supreme Court Rule 45.3 to expedite the issuance of the judgment to avoid any unnecessary confusion about this Court's power to enter a judgment. *See Rutherford v. McDonough*, 466 F.3d 970, 972 (11th Cir. 2006) (after notification of the Supreme Court's order and that the judgment would not issue for at least 25 days, "[n]onetheless, because [it] wanted to move along our consideration of the matter, without waiting for the official judgment or mandate [the Court] instructed the attorneys" to submit supplemental briefs). Therefore, as discussed below, this Court should conduct any remaining proceedings with the same expedition it dispatched when it first rejected the President's allegations in fall 2019, in light of continuing concerns about the potential loss of critical evidence and expiration of statutes of limitations. *See* Slip Op. at 19 ("[T]he public interest in fair and effective law enforcement cuts in favor of comprehensive access to evidence.").

### 2. Potential Areas for Further Argument

The President recites several arguments that the Supreme Court held *a* President *might* raise in the appropriate case. But each of these potential arguments must be understood first and foremost in the context of the Supreme Court's *rejection* of a heightened standard for the issuance of a state criminal subpoena to a sitting President. *See* Slip Op. at 17-21. While the District Attorney does not contest that the President should have an opportunity to advance additional "appropriate" claims supported by factual allegations, Slip Op. at 21, consistent with the Supreme Court's opinion, his challenges to the Mazars subpoena must be considered in light of the principle that a President making such challenges stands "in nearly the same situation with any other individual." Slip Op. at 18 (quoting *United States v. Burr*, 25 F. Cas. 187, 191 (No. 14,694) (CC Va.1807) (Marshall, C. J.)). The President's proposal attempts to elide that standard; indeed, it expressly invites this Court to conduct a heightened-scrutiny inquiry drawn from the concurring opinion that was utterly rejected by the majority decision. Equally important, it overlooks the fact that he has already advanced substantially

similar allegations in the Amended Complaint, which this Court rejected. *See generally Trump v. Vance*, 395 F. Supp. 3d 283 (S.D.N.Y. 2019) (Marrero, J.).

The President states that he may argue that the subpoena "'is motivated by a desire to harass or is conducted in bad faith,'" *see* Slip Op. at 16, or that the subpoena is meant to "manipulate" his policy decisions or to retaliate against him for official acts, *see* Slip Op. at 17. But this Court has already found that there was no demonstrated bad faith, harassment, or any other unusual circumstance that would call for equitable relief. 395 F. Supp. 3d at 298-300. And this Court has rejected the President's claim that there was any evidence of a "secondary motive" that goes beyond good faith enforcement of the criminal laws. *Id.* at 299. Statements by other elected officials, as this Court ruled, "do not reveal the 'subjective motive' of the District Attorney in initiating these particular proceedings," and do not support a finding of bad faith by the District Attorney. *Id.*†

The President further states that he may argue that compliance would "impede his constitutional duties." *See* Slip Op. at 20. But this Court has specifically held that the President failed to demonstrate "that the burdens and interferences the President describes in this case would substantially impair the President's ability to perform his constitutional duties." 395 F. Supp. 3d at 316.

The President's comments regarding discovery, moreover, are premature in light of his agreement that the next step in this litigation is for him to attempt to state a plausible claim for relief. Again, the District Attorney agrees that the President should now have an opportunity to make a "stronger showing" that was lacking in previous proceedings before this Court. *See id.* at 300. But the sole basis for the President's claims for declaratory and injunctive relief in the operative Amended Complaint, ECF No. 27—his "extraordinary" assertion of absolute immunity, 395 F. Supp. 3d at 288—was rejected by every court that reviewed it. Slip Op. at 2-3, 17. Thus, to raise any additional

---

† The President also states that he may argue that the subpoena is not a "properly tailored" grand-jury subpoena. *See* Slip Op. at 13. The District Attorney reserves all responsive arguments on this subject.

claims in the wake of the Supreme Court's decision, he must first file an amended pleading that can survive a motion to dismiss. *See, e.g.*, *Annunziata v. Int'l Bhd. of Elec. Workers Local Union No. 363*, 2018 WL 2416568, at *12 (S.D.N.Y. May, 2018) (Román, J.) (summary judgment briefing is not an appropriate vehicle to raise new claims).‡ No discussion of discovery, "cabined or otherwise," is appropriate before he does so. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009); *see also Main Street Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016) ("A plaintiff who has failed adequately to state a claim is not entitled to discovery."); *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 278 (S.D.N.Y. 2004) (Lynch, J.) ("[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim, and still less to salvage a lawsuit that has already been dismissed for failure to state a claim.").

Even if the President were able to file a sufficient amended pleading, discovery into the District Attorney's motives would be highly irregular and inappropriate. Nowhere does the Supreme Court's opinion suggest that discovery would be appropriate for this remand proceeding. The District Attorney is entitled to a "presumption of regularity." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)); *see* Slip Op. at 19 (federal and state criminal subpoenas must be held to the same standards); *Bessaha v. Rock*, 2012 WL 1458195, at *21 (E.D.N.Y. Apr. 27, 2012) (Bianco, J.) (applying the presumption of regularity to state prosecutors). The President must come up with more than merely "generalized allegations of improper motive" to probe the prosecutorial decisionmaking process that led the grand jury to issue the Mazars subpoena; he must make a "substantial threshold showing." *See Wade v. United States*, 504 U.S. 181, 186 (1992); *see also Hartman v. Moore*, 547 U.S. 250, 263 (2006) ("[The] presumption that a

---

‡ The District Attorney reserves, and does not waive, the right to argue that any additional claims the President may raise at this stage should have been raised in his initial Complaint or his first Amended Complaint.

8

prosecutor has legitimate grounds for the action he takes is one [courts] do not lightly discard…."). In short, except in extreme cases, the law does not permit the recipient of a grand jury subpoena to conduct discovery into the bona fides or motivations behind such a subpoena, and nothing in the Supreme Court's decision suggests that this President should be able to do so here.

### 3. Remand Schedule

As discussed, if the President has anything left to say, the ball is now in his court to "raise [any] further arguments as appropriate," Slip Op. at 21, in an amended pleading, with all appropriate haste. He consents to the following schedule.

In light of the risk of losing "every man's evidence," Slip Op at 9, as a result of fading memories or lost documents and the risk that applicable statutes of limitations could expire, *see* Slip Op. at 19, the District Attorney respectfully requests that the Court order the President to file any second amended complaint, which should include any and all additional claims and factual support, by July 27, 2020. By August 3, 2020, the District Attorney shall answer or move against any second amended complaint. In the event of a motion, the District Attorney respectfully submits that the President's brief in opposition should be due on August 10, 2020, and the District Attorney shall file any reply brief on August 14, 2020. *Cf.* ECF No. 4 (parties agreed to fully brief and argue the President's initial motion for injunctive relief and the District Attorney's motion to dismiss in six days); ECF No. 35 (this Court decided the parties' initial cross-motions eighteen days after this case was filed). If the District Attorney answers rather than moves for relief, he intends to request a case management conference be scheduled for August 5, 2020 or the earliest date thereafter on which the Court is available.

Although nothing currently prevents enforcement of the subpoena issued to Mazars, *see* CA2 Dkt. 136, at 2 (Oct. 21, 2019) (District Attorney's agreement to forbear on the execution of the Mazars subpoena expired when "the Supreme Court … issue[d] an opinion" in this case); Sup. Ct. Reply Br. of Petitioner, at 24 n.5 (absent interim relief preserving the status quo, "the subpoena will become

9

enforceable"), the District Attorney will continue to forbear on execution of the Mazars subpoena pending the orderly resolution by this Court of any remaining arguments the President may raise, provided the appropriate schedule moves on an expedited basis. To that end, the District Attorney will agree not to enforce the Mazars subpoena through and including July 27, 2020, unless the President files a second amended complaint on or before July 27, 2020, in which case the District Attorney will forbear on enforcing the Mazars subpoena through and including seven calendar days after the date of a decision by this Court on the earliest motion filed by any party under Rule 12 or Rule 56 of the Federal Rules of Civil Procedure.

**D.** **Statement of Mazars USA, LLP, on the need for further proceedings and potential areas for further argument.**

Mazars USA takes no position in this matter.

Respectfully Submitted,

| _s/ William S. Consovoy_ | _s/ Carey R. Dunne_ | _s/Jerry D. Bernstein_ |
|---|---|---|
| William S. Consovoy | Carey R. Dunne | Jerry D. Bernstein |
| CONSOVOY MCCARTHY PLLC | N.Y. COUNTY DISTRICT ATTORNEY OFFICE | BLANK ROME LLP |
| 1600 Wilson Blvd., Ste. 700 | One Hogan Place | 1271 Avenue of Americas |
| Arlington, VA 22209 | New York, NY 10013 | New York, NY 10020 |
| 703-243-9423 | 212-335-9216 | 212-885-5511 |
| will@consovoymccarthy.com | dunnec@dany.nyc.gov | jbernstein@blankrome.com |
| *Counsel for President Donald J. Trump* | *Counsel for Cyrus R. Vance, Jr.* | *Counsel for Mazars USA, LLP* |

Dated: July 15, 2020

> The parties are directed to proceed in accordance with the jointly proposed schedule set forth above.
>
> **SO ORDERED.**
>
> July 16, 2020
> DATE                   VICTOR MARRERO, U.S.D.J.