## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DONALD J. TRUMP,

                              Plaintiff,

- against -

CYRUS R. VANCE, JR., in his official capacity
as District Attorney of the County of New
York;

and

MAZARS USA, LLP,

                              Defendants.

Case No. 1:19-cv-08694 (VM)

**VIA ECF**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VANCE'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

CAREY R. DUNNE
    GENERAL COUNSEL
CHRISTOPHER CONROY (PRO HAC VICE)
JULIETA V. LOZANO
JAMES H. GRAHAM
ALLEN J. VICKEY
SARAH A. WALSH (PRO HAC VICE)
SOLOMON B. SHINEROCK
    ASSISTANT DISTRICT ATTORNEYS
NEW YORK COUNTY
DISTRICT ATTORNEY'S OFFICE
One Hogan Place
New York, New York 10013
(212) 335-9000

CAITLIN HALLIGAN
RYAN W. ALLISON
DAVID A. COON
SELENDY & GAY PLLC
1290 Sixth Avenue
New York, New York 10104

WALTER E. DELLINGER III
(PRO HAC VICE MOTION FORTHCOMING)
DUKE UNIVERSITY LAW SCHOOL
Science Drive & Towerview Road
Durham, North Carolina 27706

*Counsel for Defendant Vance*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL BACKGROUND ............................................................................................... 3

    A.   The Initial Litigation Before This Court ...................................................................... 3

    B.   The Second Circuit's Affirmance .................................................................................. 6

    C.   The Supreme Court's Affirmance and Remand ............................................................ 6

ARGUMENT ............................................................................................................................... 9

    A.   The SAC Does Not Assert A Cognizable Article II Injury ......................................... 10

    B.   The SAC Fails To State A Claim That The Mazars Subpoena Is Overbroad ............ 11

    C.   The SAC Fails To State A Claim That The Mazars Subpoena Was Issued In Bad Faith ........ 18

CONCLUSION ........................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Adams v. N.Y. State Educ. Dep't,*
752 F. Supp. 420 (S.D.N.Y. 2010) (Marrero, J.) ...............................................................10

*Additional Jan. 1979 Grand Jury of Albany Supreme Court v. Doe,*
50 N.Y. 2d 14, 21 (1980)...............................................................................................19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................................9

*Astoria Gen. Contr. Corp. v. Office of Comptroller of N.Y.C.,*
159 F. Supp. 3d 385 (S.D.N.Y. 2016) .............................................................................9

*Black Jack Distribs., Inc. v. Beame,*
433. F. Supp. 1297 (S.D.N.Y. 1997)................................................................................5

*Blair v. United States,* 250 U.S. 273 (1919) ...................................................... 11, 14

*Branzburg v. Hayes,*
408 U.S. 665 (1972) .......................................................................................6, 11, 14, 21

*Clinton v. Jones,*
520 U.S. 681 (1997) .................................................................................................. 8, 9

*Congregation B'Nai Jonah v. Kuriansky,*
172 A.D.2d 35 (3d Dept. 1991) ...................................................................................19

*Diamond "D" Constr. Corp. v. McGowan,*
282 F.3d 191 (2d Cir. 2002)...........................................................................................4

*Dombrowski v. Pfister,*
380 U.S. 479 (1965) .....................................................................................................19

*Fowlkes v. Rodriguez,*
584 F. Supp. 2d 561 (E.D.N.Y. 2008) .........................................................................10

*Huffman v. Pursue, Ltd.,*
420 U.S. 592 (1975) ......................................................................................................8

*In re Aegon N.V. Sec. Litig.,*
2004 WL 1415973, (S.D.N.Y. 2004) ...........................................................................10

*In re Aug., 1993 Regular Grand Jury (Med. Corp. Subpoena II),*
854 F. Supp. 1392 (S.D. Ind. 1993)..............................................................................15

*In re Berry*,
521 F.2d 179 (10th Cir. 1975) ............................................................................................16

*In re Grand Jury Proceeding*,
961 F.3d 138 (2d Cir. 2020).................................................................................... 12, 18

*In re Grand Jury Proceedings*,
115 F.3d 1240 (5th Cir. 1997) ...........................................................................................15

*In re Grand Jury Subpoena dated Aug. 9, 2000*,
218 F. Supp. 2d 544 (S.D.N.Y. 2002) (Chin, J.) ..............................................................18

*In re Grand Jury Subpoena Duces Tecum (Provision Salesmen & Distribs. Union)*,
203 F. Supp. 575 (S.D.N.Y. 1961)....................................................................................18

*In re Horowitz*,
482 F.2d 72 (2d Cir. 1973).................................................................................................12

*In re Ingram*,
2012 WL 6840542 (E.D. La. Feb. 29, 2012) .....................................................................18

*In re John Doe, Inc.*,
13 F.3d 633 (2d Cir. 1994)..................................................................................................18

*In re Kronberg*,
95 A.D.2d 714 (1st Dept. 1983) .........................................................................................19

*In re Merrill Lynch Auction Rate Sec. Litig.*,
2012 WL 1994707 (S.D.N.Y. June 4, 2012)......................................................................17

*In re Morgan*,
377 F. Supp. 281 (S.D.N.Y. 1974).....................................................................................14

*In re Rabbinical Seminary Netzach Israel Ramailis*,
450 F. Supp. 1078 (E.D.N.Y. 1978)...................................................................................18

*Jordache Enters., Inc. v. United States*,
1987 WL 9705 (S.D.N.Y. April 14, 1987) .........................................................................16

*Long Miao v. Fanhua, Inc.*,
---F. Supp. 3d.---, 2020 WL 996602 (S.D.N.Y. Mar. 2, 2020)..........................................17

*Manning v. Valente*,
272 A.D. 358 (1st Dept. 1947)...........................................................................................12

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819) ...................................................................................... 2, 10

*New York v. E. Ambulance Serv., Inc.,*
    106 A.D.2d 867 (4th Dept. 1984) ................................................................................. 15

*People v. Carvajal,*
    6 N.Y.3d 305 (2005) .................................................................................................... 14

*People v. McLaughlin,*
    80 N.Y.2d 466 (1992) .................................................................................................. 14

*United States v. Burr,*
    25 F. Cas. 187 (No. 14,692D) (C.C. Va. 1807) (Marshall, C.J.) ............................... 1, 10

*Trump v. Mazars USA, LLP,*
    591 U.S. ___, ___ (2020) .............................................................................................. 9

*Trump v. Vance,*
    395 F. Supp. 3d 283 (S.D.N.Y. 2019) ................................................................. passim

*Trump v. Vance,*
    591 U.S. ___, ___ (2020) ....................................................................................... passim

*Trump v. Vance,*
    941 F.3d 631 (2d Cir. 2019) .................................................................................. passim

*United States v. Doe,*
    457 F.2d 895 (2d Cir. 1972) ........................................................................................ 15

*United States v. Morton Salt Co.,*
    338 U.S. 632 (1950) ..................................................................................................... 11

*United States v. Nixon,*
    418 U.S. 683 (1974) .................................................................................................. 7, 8

*United States v. R. Enters., Inc.,*
    498 U.S. 292 (1991) ................................................................................... 7, 11, 12, 18

*United States v. Salameh,*
    152 F.3d 88 (2d Cir. 1998) .......................................................................................... 19

*United States v. Stone,*
    429 F.2d 138 (2d Cir. 1970) ........................................................................................ 11

*Virag v. Hynes,*
    54 N.Y.2d 437 (1981) .......................................................................................... passim

*Xiao Xing Ni v. Gonzales,*
    494 F.3d 260 (2d Cir. 2007) ........................................................................................ 17

*Younger v. Harris,*
    401 U.S. 37 (1971) .................................................................................................................4

**<u>Other Authorities</u>**

David A. Fahrenthold & Jonathan O'Connell, *After Selling Off His Father's Properties, Trump Embraced Unorthodox Strategies To Expand His Empire*, WASH. POST, Oct. 8, 2018, https://wapo.st/3fsvLN7 ......................................................................................................................................................17

David A. Fahrenthold & Jonathan O'Connell, *How Donald Trump Inflated His Net Worth to Lenders and Investors*, WASH. POST, Mar. 28, 2019, https://wapo.st/2DsxZyo .....................................................17

Rebecca Ballhaus & Joe Palazzolo, *Michael Cohen Details Allegations of Trump's Role in Hush-Money Scheme*, WALL ST. J., Feb. 27, 2019, https://on.wsj.com/3fp2jap .......................................................17

## PRELIMINARY STATEMENT

Ten months ago, this Court rejected Plaintiff's novel claim that he was entitled to "temporary absolute immunity" from any investigatory process during his presidency, as well as his assertion that the subpoena at issue in this case (the "Mazars Subpoena") is "a bad faith effort to harass the President" and "not a legitimate attempt to enforce New York law."  First Amended Complaint (the "FAC") ¶ 53 (Dkt. 27).  "[E]xtensive" briefing and argument, *Trump v. Vance*, 395 F. Supp. 3d 283, 301 n.10 (S.D.N.Y. 2019), led this Court to conclude that "[b]arring a stronger showing from the President," there is no basis "to impute bad faith to the District Attorney in relation to these proceedings," *id.* at 300, or to conclude that the Mazars Subpoena is overbroad, *see* July 16, 2020 Conf. Tr. at 4:7-14.

Shortly thereafter, the Second Circuit upheld this Court's rejection of Plaintiff's immunity claim, observing that the Mazars Subpoena "seeks evidence in service of an investigation into potential criminal conduct within the District Attorney's jurisdiction."  *Trump v. Vance*, 941 F.3d 631, 635 n.3 (2d Cir. 2019).  The Court of Appeals rejected any claim that the Mazars Subpoena would burden Plaintiff's ability to perform his Article II functions because it concluded that the Subpoena, which was issued to Plaintiff's third-party tax preparer and not to Plaintiff himself, "does not require the President to do anything at all."  *Id.* at 642.

The Supreme Court affirmed the rejection of Plaintiff's immunity claim and also rejected the Solicitor General's alternative theory that a state prosecutor must make a heightened showing of need to issue a subpoena *duces tecum* to a sitting President.  *Trump v. Vance*, 591 U.S. ___, ___ (2020) (slip op. at 21) (hereinafter "Slip Op.").  The Court explained that a sitting President served with a subpoena for unofficial documents "must stand, as respects that paper, in nearly the same situation with any other individual."  *Id.* at 18 (*quoting United States v. Burr*, 25 F. Cas. 187, 191 (No. 14,692D) (C.C. Va. 1807) (Marshall, C.J.)).  Of course, a state prosecutor may not use criminal process to "attempt to

'influence'" a President's official duties, *id.* at 17 (*quoting McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819)), or require compliance in a manner that "would impede [a President's] constitutional duties," *id.* at 20. The Supreme Court reaffirmed that, with those two caveats, a President is subject to the same duty as all citizens to produce evidence when called upon in a criminal proceeding, and it remanded the case for Plaintiff to raise any further claims as appropriate. *Id.* at 21-22.

Plaintiff has now filed a sixteen-page Second Amended Complaint ("SAC") that alleges two causes of action: "Overbreadth" and "Bad Faith." Second Amended Complaint (the "SAC") ¶¶ 53-63 (Dkt. 57). His summary assertion that the Mazars Subpoena "amounts to harassment of the President in violation of his legal rights" and thus is unenforceable, SAC ¶¶ 57, 63, fails to state a valid claim for relief. In fact, the SAC merely regurgitates allegations and arguments this Court has rejected before. This "new" filing contains nothing new whatsoever, and Plaintiff has utterly failed to make a "stronger showing" of bad faith than he previously made to this Court. *Vance*, 395 F. Supp. 3d at 300.

The SAC repeats Plaintiff's argument that the Mazars Subpoena, which seeks documents dating back to 2011, is overbroad and improper because (Plaintiff assumes) the grand jury investigation is limited to so-called "hush-money" payments made in 2016. But Plaintiff cannot overcome the presumption of regularity accorded to grand jury investigative subpoenas, *Virag v. Hynes*, 54 N.Y.2d 437, 444 (1981), merely by describing the scope of documents called for by the Mazars Subpoena. Information that has been in the public record since at least 2018, moreover, confirms that the Mazars Subpoena's request for evidence related to potentially improper financial transactions by a variety of individuals and entities over a period of years is fully justified. This publicly available information alone demonstrates that Plaintiff's claim of overbreadth is insufficient to state a claim for relief.

Similarly, Plaintiff makes the unfounded assertion that the grand jury cannot legitimately inquire about properties outside New York County. But this argument elides that the Mazars Subpoena's inquiries relate principally to properties and transactions involving or related to the Trump

Organization—which has long been headquartered in Manhattan and can engage in transactions elsewhere that are inextricably intertwined with financial transactions in New York County.

Finally, Plaintiff repeats a conspiratorial assertion he has unsuccessfully pressed for nearly a year to all three levels of the federal courts: that the similarity between the Mazars Subpoena and the subpoenas issued by Congress demonstrates that the Mazars Subpoena was not issued in good faith and does not serve an appropriate investigative objective. As noted, the Mazars Subpoena seeks information about potential financial misconduct that has been publicly reported, and in part adopts language from one of the congressional subpoenas. As Congress has asserted, its subpoena was seeking information relating to those same public allegations for Congress' own legislative purposes; it makes perfect sense that the subpoenas seek the same information, as they both relate to public reports about the same potentially improper conduct.

Plaintiff's baseless SAC merely serves to delay the grand jury's investigation. Every day that goes by is another day Plaintiff effectively achieves the "temporary absolute immunity" that was rejected by this Court, the Court of Appeals, and the Supreme Court. Every such day also increases the prospect of a loss of evidence or the expiration of limitations periods—the precise concerns that the Supreme Court observed justified its rejection of Plaintiff's immunity claim in the first place. Slip Op. at 19.

This Court should not countenance such an outcome. For the reasons set forth below, the Court should now dismiss the SAC with prejudice.

## PROCEDURAL BACKGROUND

### A.    The Initial Litigation Before This Court

On September 19, 2019, Plaintiff commenced this action, seeking injunctive relief from the Mazars Subpoena, which was issued by a New York County Grand Jury to Mazars USA, LLP on August 29, 2019. From the outset—and indeed throughout this litigation—Plaintiff raised the same

3

objections to the propriety of the Mazars Subpoena he raises now, including that it was part of a campaign of harassment and therefore issued in bad faith.  *See, e.g.*, FAC ¶¶ 42, 53; Br. of Pl.-Appellant at 7 (2d Cir. Dkt. 80) (describing the Mazars Subpoena as "irrelevant and overbroad"); Sup. Ct. Reply Br. for Pet'r at 23.

On September 23, 2019, the Office of the District Attorney for New York County (the "Office") opposed Plaintiff's request for a preliminary injunction and moved to dismiss his complaint based on *Younger v. Harris*, 401 U.S. 37 (1971), abstention grounds.  *See generally* Def.'s Mem. of Law (Dkt. 16).  During briefing and argument, Plaintiff continued to assert theories of bad faith, *see, e.g.*, Sept. 25, 2019 Hr'g Tr. at 12:15-20, 37:5; Pl.'s Reply Br. at 1 (Dkt. 22), which the Office rebutted, *see, e.g.*, Sept. 25, 2019 Hr'g Tr. at 32:3-15; Def.'s Mem. of Law at 9 (Dkt. 16).

On October 7, 2019, this Court granted the Office's motion to dismiss on abstention grounds and ruled in the alternative that Plaintiff was not entitled to injunctive relief.  The Court found no basis "to impute bad faith to the District Attorney in relation to these proceedings."  *Vance*, 395 F. Supp. 3d at 300.[1]  It rejected Plaintiff's oft-repeated claim, *see, e.g.*, FAC ¶¶ 46-54, that the similarity between the Mazars Subpoena and a subpoena Congress issued to Mazars evinced the Office's bad faith, on the ground that Plaintiff failed even to allege that the Office "lacks any 'reasonable expectation of obtaining a favorable outcome[ ]' . . . in the criminal prosecution of which the Mazars Subpoena is part."  *Vance*, 395 F. Supp. 3d at 299-300 (*quoting Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002)).  Further, the Court rejected Plaintiff's attempt to rely on several statements by New York State officials other than the District Attorney as evidence of the Office's

---

[1] The Court found no basis to apply the bad faith or harassment exception to *Younger* and ultimately concluded that abstention was appropriate.  *Vance*, 395 F. Supp. 3d at 293-301.  While the Court of Appeals later determined that *Younger* abstention was inapplicable, it did not question this Court's factual determinations concerning the lack of bad faith and harassment.  *See Vance*, 941 F.3d at 635, 639 n.11 (2d Cir. 2019).

bad faith, observing that those statements were not indicative of the District Attorney's "subjective motive," and that to "impute bad faith to the District Attorney" based on them "would be incompatible with federal expression of a decent respect for the state authority's functions." *Id.* at 299 (internal quotation marks and citation omitted).  After also considering non-confidential information provided by the Office, *see id.* at 300 (citing unredacted and publicly filed information), the Court found that Plaintiff "ha[d] not shown that the District Attorney is acting with anywhere near the same level of disregard for the law" as the state officials previously found to have acted in bad faith in *Black Jack Distribs., Inc. v. Beame*, 433. F. Supp. 1297, 1306 (S.D.N.Y. 1997).  *Vance*, 395 F. Supp. 3d at 299.

In addition to finding no bad faith or harassment, after reviewing "in camera a declaration from Solomon Shinerock … which set forth the nature of the District Attorney's investigation," the Court concluded "that the District Attorney had sufficient basis to warrant issuance of the grand jury subpoena, and hence, that the Mazars [S]ubpoena [is] not overbroad."  *See* July 16, 2020 Conf. Tr. at 4:7-14.

Finally, the Court ruled that Plaintiff's claim of temporary absolute immunity from state criminal process is "repugnant" to our governmental structure and constitutional values.  *Vance*, 395 F. Supp. 3d at 290.  The Court further held that it was "not persuaded that the burdens and interferences" described by Plaintiff "would substantially impair [his] ability to perform his constitutional duties," and instead noted that the "frustration of the state criminal investigation under the facts presented here presents much greater concerns that overcome [Plaintiff's] grounds for not complying with the grand jury subpoena."  *Id.* at 316.[2]

---

[2] The Court also concluded that injunctive relief was inappropriate because, as result of the grand jury's "legal obligation" to maintain the confidentiality of records, "enforcement of and compliance with the Mazars Subpoena would not cause irreparable harm to the President."  *Vance,* 395 F. Supp. 3d at 303-04.

B.      **The Second Circuit's Affirmance**

On appeal, the Court of Appeals affirmed this Court's holding that Plaintiff was not entitled to preliminary injunctive relief because his claim for "temporary absolute presidential immunity" was baseless.  *Vance*, 941 F.3d at 640, 644-45.[3]  The Court of Appeals ruled that Plaintiff failed to identify any constitutional harm that would flow from enforcement of the Mazars Subpoena, observing that it was not directed at the President and did not "require the President to do anything at all."  *Id.* at 642.  It also ruled that Plaintiff failed to show "that mere investigation is so debilitating" or would "carr[y] a stigma too great for the Constitution to tolerate."  *Id.* at 643.  The Court of Appeals expressed its reluctance to interfere with the grand jury, stressing the "central role" grand juries have "in our system of federalism[,]" *id.*, and "the longstanding principle that the public has a right to every man's evidence" which "is *particularly* applicable to grand jury proceedings."  *Id.* (*quoting Branzburg v. Hayes*, 408 U.S. 665, 688 (1972)).

C.      **The Supreme Court's Affirmance and Remand**

After highly expedited briefing before the Supreme Court, to which Plaintiff agreed at the Office's request, the Court unanimously rejected Plaintiff's central claim that a sitting President is absolutely immune from state criminal process, and a majority also rejected the Solicitor General's alternative argument that a state prosecutor must demonstrate a "heightened need" to issue such process.  *See* Slip Op. at 17-20.  The Court reasoned that: (1) such "a heightened standard would extend protection designed for official documents to the President's private papers"; (2) such "heightened protection against state subpoenas is [not] necessary for the Executive to fulfill his Article II functions"; and (3) "the public interest in fair and effective law enforcement cuts in favor of

---

[3] The Court of Appeals also vacated this Court's *Younger* decision on the ground that "*Younger*'s policy of comity cannot be vindicated in light of the state-federal clash" already extant where a President seeks to challenge a state grand jury subpoena.  *Vance*, 941 F.3d. at 639.  The Office did not seek further review of this holding.

comprehensive access to evidence." *Id.* at 18-19.   The Court therefore declined to apply the "demonstrated, specific need" standard announced in *United States v. Nixon*, 418 U.S. 683, 713 (1974), for privileged executive materials to a state subpoena that only seeks a President's non-official records. *See id.* 17-21; *see also Trump v. Vance*, 591 U.S. __ (2019) (Kavanaugh, J., concurring in the judgment, at 2-3) ("The majority opinion *does not* apply the *Nixon* standard in this distinct Article II context, as I would have done." (emphasis added)).

The Court's central instruction was clear: the long-established rule that "the public has the right to every man's evidence" still prevails, and as a result, a state prosecutor need not meet any special standard to issue criminal process seeking a sitting President's unofficial documents.  Slip Op. at 1.  Furthermore, the Court held that "the public interest in fair and effective law enforcement cuts in favor of comprehensive access to evidence. Requiring a state grand jury to meet a heightened standard of need would hobble the grand jury's ability to acquire 'all information that might possibly bear on its investigation.'"  *Id.* at 19 (*citing United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991)). Withholding such evidence until the end of a President's term, the Court explained, would deprive the grand jury of "investigative leads that the evidence might yield, allowing memories to fade and documents to disappear.  This could frustrate the identification, investigation, and indictment of third parties (for whom applicable statutes of limitations might lapse).  More troubling, it could prejudice the innocent by depriving the grand jury of *exculpatory* evidence." *Id.*

The Court also concluded that its ruling did not leave a President without appropriate protections when seeking to quash or modify a subpoena.  Not only may a President raise "the same protections available to every other citizen," including on grounds of undue burden or breadth, bad faith, or harassment, a President may advance unique "subpoena-specific constitutional challenges" not available to private citizens.  *Id.* at 19-20.  Specifically, he can (1) "challenge the subpoena as an attempt to influence the performance of his official duties, in violation of the Supremacy Clause"; and

(2) "argue that compliance with a particular subpoena would impede his constitutional duties." *Id.* at 20.

In describing how this protection of a President against bad faith or overbroad subpoenas should be implemented, the Court noted that the "'high respect that is owed to the office of the Chief Executive … should inform the conduct of the entire proceeding, including the timing and scope of discovery.'" *Id.* (*quoting Clinton v. Jones*, 520 U.S. 681, 707 (1997) (ellipses in original)). And where a subpoena is "directed to a President," appellate review of such matters should be "particularly meticulous." *Id.* (*quoting Nixon*, 418 U.S. at 702).

Nevertheless, the Court held that flexible procedures designed to avoid significant interference with Article II functions do not modify the substantive legal standards a President must meet to prevail on a challenge to a state grand jury subpoena calling for non-official records. Slip Op. at 21 ("[T]he President is neither absolutely immune from state criminal subpoenas seeking his private papers nor entitled to a heightened standard of need."). Such challenges must still be analyzed under the existing legal standards that apply to everyone. *See, e.g., id.* at 16 (*citing Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975)); *id.* at 21 (reaffirming the applicability of "established legal and constitutional principles"). And a state criminal subpoena for a President's private papers need not be any more "tailored" than if it were issued to a private citizen:

> [The *Clinton*] Court concluded, '[w]hile such distractions [private, political, and some as a result of official duty] may be vexing to those subjected to them, they do not ordinarily implicate constitutional … concerns.' The same is true of criminal subpoenas. Just as a 'properly managed' civil suit is generally 'unlikely to occupy any substantial amount of' a President's time or attention, two centuries of experience confirm that a properly tailored criminal subpoena will not normally hamper the performance of the President's constitutional duties.

*Id.* at 13 (citations omitted) (second alteration and ellipsis in original).

**ARGUMENT**

The SAC should be dismissed because it fails to state a claim on which relief can be granted. Both counts of the SAC rely on a vague reference to Plaintiff's "legal rights, including those held under Article II." *See* SAC ¶¶ 57 (the claim for "overbreadth"), 63 (the claim for "bad faith"). But the factual allegations, even if assumed to be true, establish neither overbreadth nor bad faith, and they implicate no cognizable Article II interest. Plaintiff—as this Court already found—has failed to make allegations sufficient to overcome the presumption that legal process, including a grand jury subpoena, imposes no Article II burden. *See Trump v. Mazars USA, LLP*, 591 U.S. ___, ___ (2020) (slip op. at 20) ("[B]urdens on the President's time and attention stemming from judicial process and litigation, without more, generally do not cross constitutional lines.") (*citing* Slip Op. at 12-14; *Clinton*, 520 U.S. at 704-05); *see also Vance*, 941 F.3d at 642-43 (Plaintiff failed to explain "why any burden or distraction the third-party subpoena causes would rise to the level of interfering with his duty to 'faithfully execute[ ]' the laws, [Art. II], or otherwise subordinate federal law in favor of a state process"). Judged by the settled legal standards that govern all subpoenas—and that apply equally to the President—the SAC provides no basis for relief. And for the reasons described below, Plaintiff fails to state a claim that anything in the Mazars Subpoena implicates interests uniquely applicable to the President.[4]

While a motion to dismiss under Rule 12(b)(6) requires the Court to accept as true all factual allegations and draw all reasonable inferences in a plaintiff's favor, "this tenet 'is inapplicable to legal conclusions,' as well as to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Astoria Gen. Contr. Corp. v. Office of Comptroller of N.Y.C.*, 159 F. Supp. 3d 385, 395 (S.D.N.Y. 2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Although [a] court typically

---

[4] The Office does not waive for any future purpose applicable legal and equitable rights and defenses, including without limitation those based on principles of standing, *res judicata*, and related doctrines.

accepts plaintiff's allegations as true for purposes of a motion to dismiss, the court is permitted to consider and take judicial notice of certain documents, such as matters of public record, and reject the truthfulness of those allegations that are contradicted by the documents." *Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561, 574 (E.D.N.Y. 2008); *accord In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *5 (S.D.N.Y. 2004). Here, the allegations establish no basis for relief on the causes of action the SAC labels overbreadth and bad faith. And the conclusory and speculative allegations that the President's Article II interests are threatened by the SAC are entirely insufficient. *See Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 429 (S.D.N.Y. 2010) (Marrero, J.). The Court should therefore dismiss the SAC with prejudice.

### A.    The SAC Does Not Assert A Cognizable Article II Injury

As an initial matter, the SAC is notable for what it does *not* allege. The Supreme Court took care to note that, although a sitting President sits "in nearly the same situation with any other individual" when served with a criminal subpoena for unofficial documents, Slip Op. at 18 (*quoting Burr*, 25 F. Cas. at 191), a state prosecutor may not use criminal process to "attempt to 'influence'" a President's official duties, *id.* at 17 (*quoting McCulloch*, 17 U.S. (4 Wheat.) at 427), or require compliance with such process in a manner that "would impede [a President's] constitutional duties," *id.* at 20.

Yet the SAC contains no such allegations. It does not allege that the Mazars Subpoena is an unconstitutional attempt to manipulate the Executive Branch of the Federal Government. *See id.* at 17. Nor does the SAC "argue that compliance with [the Mazars Subpoena] would impede [Plaintiff's] constitutional duties," *id.* at 20, and for good reason, as the Subpoena issued to his tax preparer almost one year ago "does not require the President to do anything at all," *Vance*, 941 F.3d at 642. Rather, Plaintiff has elected to assert "only … challenges available to private citizens," Slip Op. at 20—those of generic overbreadth and bad faith. As discussed below, neither of these challenges states a valid claim for relief. And the conclusory allegations (SAC ¶¶ 57, 63) that these non-meritorious assertions

"[a]ccordingly" implicate Article II fare no better: the summary assertion that Article II is in play necessarily fails because it rests only on garden-variety claims that themselves are meritless.

### B.  The SAC Fails To State A Claim That The Mazars Subpoena Is Overbroad

Plaintiff seeks to have this Court invalidate the Mazars Subpoena on the grounds that it is "overbroad."  SAC ¶ 4.  In seeking such a ruling, Plaintiff bears a heavy burden that he has utterly failed to meet.

In this litigation, the Supreme Court recognized that a properly tailored subpoena need only fit within a grand jury's prerogative "to acquire 'all information that might possibly bear on its investigation.'"  Slip Op. at 19 (*quoting R. Enters.*, 498 U.S. at 297).  And although "grand juries are prohibited from engaging in 'arbitrary fishing expeditions,'" *id.* at 16 (*quoting R. Enters.*, 498 U.S. at 299), they nonetheless "paint[ ] with a broad brush," *R. Enters.*, 498 U.S. at 297.  The grand jury is a "grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation." *Blair v. United States*, 250 U.S. 273, 282 (1919).  A grand jury "does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950).  Its work "may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors." *Branzburg*, 408 U.S. at 701.  And a grand jury's task "is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." *United States v. Stone*, 429 F.2d 138, 140 (2d Cir. 1970).

"[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority" including in issuing subpoenas *duces tecum*. *R. Enters.*, 498 U.S. at 300. Under New York law, a grand jury subpoena "enjoys a presumption of validity that requires the party

11

challenging the subpoena to demonstrate, by concrete evidence, that the materials sought have no relation to the matter under investigation." *Virag*, 54 N.Y.2d at 444.  Indeed, "before a witness is entitled to an order quashing a Grand Jury subpoena *duces tecum*, he must demonstrate 'that a particular category of documents can have no conceivable relevance to any legitimate object of investigation by the . . . grand jury.'" *Id.* (*quoting In re Horowitz*, 482 F.2d 72, 80 (2d Cir. 1973)) (ellipsis in original).  In other words, the party challenging "a subpoena must show that the documents are so unrelated to the subject of inquiry as to make it obvious that their production would be futile as an aid to the Grand Jury's investigation." *Id.* (internal quotation marks and citation omitted).  "Any circumstance permitting intelligent estimate of relevancy is sufficient to support a direction that the subpoena's mandate be obeyed." *Manning v. Valente*, 272 A.D. 358, 362 (1st Dept. 1947) (internal quotation marks and citation omitted).[5]

It is against this backdrop that Plaintiff seeks to have the Mazars Subpoena invalidated as overbroad.  Plaintiff has not alleged the existence of any evidence that could show that the records sought have "no conceivable relevance to any legitimate object of investigation by the . . . grand jury," *Virag*, 54 N.Y.2d at 444 (*quoting In re Horowitz*, 482 F.2d at 80) (ellipsis in original)—as he must to overcome the presumed validity of the Mazars Subpoena.  Instead, Plaintiff relies on a series of speculative assertions and unfounded conclusions: (1) groundless claims based on the similarities between the Mazars Subpoena and two Congressional subpoenas; (2) a misapprehension of the law regarding state jurisdiction; and (3) mischaracterizations about the scope of the grand jury's investigation.  None of these points, taken alone or together, comes close to satisfying Plaintiff's

---

[5] While the Supreme Court recognized that claims of overbreadth arise under state law, Slip Op. at 19-20, the analogous federal standard is similarly exacting: the "heavy burden" of showing a grand jury subpoena's unreasonableness is met only by a showing that "there is no reasonable possibility that the category of materials the [g]overnment seeks will produce information relevant to the general subject of the grand jury's investigation." *In re Grand Jury Proceeding*, 961 F.3d 138, 152 (2d Cir. 2020) (*quoting R. Enters.*, 498 U.S. at 301).

burden.

*Similarity of Subpoenas*

In prior proceedings in this Court, Plaintiff relied heavily on the fact that portions of the Mazars Subpoena incorporate requests from Congressional subpoenas to support his claim that the Mazars Subpoena was issued in bad faith. This Court wholly rejected that argument. *See Vance*, 395 F. Supp. 3d at 300 (declining "to impute bad faith to the District Attorney"). In the SAC, Plaintiff advances a slightly revised gloss on that failed argument, alleging that the similarities now show that the Mazars Subpoena is overbroad and improperly tailored. Ignoring the fact that the same set of documents can be relevant to different requestors for different legal purposes, Plaintiff states "[i]t is "inconceivable[,]" SAC ¶ 45, that the Office might want the same documents as Congress, and that this alone demonstrates that the Office has exceeded its jurisdiction.

While Congress has asserted that it seeks these documents to understand "the adequacy of existing federal law" and to "assess compliance with or the sufficiency of the Ethics in Government Act," SAC ¶ 44, such congressional interest is irrelevant to whether the Office separately needs the documents to assess whether a pattern of financial misconduct, for example, might violate state criminal law. Pointing out the similarities between the subpoenas does nothing to demonstrate that the documents requested are "so unrelated to the subject of inquiry as to make it obvious that their production would be futile as an aid to the Grand Jury's investigation." *Virag*, 54 N.Y.2d at 444 (internal quotation marks and citation omitted).

*Jurisdiction*

Plaintiff also claims that because certain of the requested records relate to entities outside New York, the requested records must relate to conduct beyond the legitimate scope of a New York grand jury subpoena. Not so. Importantly, the Trump Organization—which is the focus of many of the public allegations that prompted the Mazars Subpoena—was headquartered in New York County

during the entire time period specified in the Mazars Subpoena.  New York County is the Nation's financial nerve center, and countless financial transactions involve entities such as banks, clearinghouses, and securities exchanges that are based in New York County, and such entities' books and records.  Moreover, the jurisdiction of New York County prosecutors is not limited only to physical acts that occur in Manhattan.  *See People v. McLaughlin*, 80 N.Y.2d 466, 471 (1992) ("The general rule in New York is that, for the State to have criminal jurisdiction, either the alleged conduct *or some consequence of it* must have occurred within the State." (emphasis added)); *see People v. Carvajal*, 6 N.Y.3d 305, 312 (2005) (explaining that N.Y. Criminal Procedure Law section 20.20 "has codified" this general principle).  Accordingly, as the Second Circuit noted, "the Mazars subpoena seeks evidence in service of an investigation into potential criminal conduct *within the District Attorney's jurisdiction*." *Vance*, 941 F.3d at 635 n.3 (emphasis added); *accord Vance*, 395 F. Supp. 3d at 291 ("The District Attorney is investigating conduct that occurred in New York State.").

In any event, the Mazars Subpoena cannot be quashed based on Plaintiff's speculative claim that the Office might not ultimately have jurisdiction over certain criminal activity it may identify.  The subpoena seeks evidence pertaining to persons and entities who have an obvious connection to New York, and who have multiple financial and reporting obligations here.  Even if it were possible at the end of an investigation to question the Office's jurisdiction, it is not remotely an obstacle to the grand jury's investigation now because "[i]t is only after the grand jury has examined the evidence that a determination of whether the proceeding will result in an indictment can be made." *Branzburg*, 408 U.S. at 701–02; *see In re Morgan*, 377 F. Supp. 281, 285 (S.D.N.Y. 1974) ("It is not necessary to define with precision the section of the statute thought to have been violated, for it is not the business of the witness to circumscribe the Grand Jury." (*citing Blair*, 250 U.S. at 282)).[6]

---

[6] Plaintiff also suggests that the Mazars Subpoena is overbroad because it calls for records outside applicable statutes of limitations.  *See, e.g.,* SAC ¶ 29.  Yet that equally speculative argument also relies on a misunderstanding of the relevant law.  "[T]he grand jury's scope of inquiry is not

*Scope of the Grand Jury Investigation*

Finally, Plaintiff complains that the Mazars Subpoena is overbroad because it calls for records of "every transaction made by every listed entity in the last ten years." SAC ¶ 33. Aside from being factually inaccurate (as explained below), this bare assertion fails to raise a plausible claim of overbreadth. "Simply citing the types of information sought by the government does not alone constitute a 'strong showing' sufficient to counter the presumption that the grand jury was acting within the proper scope of its authority." *In re Grand Jury Proceedings*, 115 F.3d 1240, 1244 (5th Cir. 1997). "Although in some contexts subpoenas have been quashed because they request an excessive amount of information, the party opposing the subpoena must quantify the volume of information requested and show that the amount is unreasonable." *In re Aug., 1993 Regular Grand Jury (Med. Corp. Subpoena II)*, 854 F. Supp. 1392, 1401 (S.D. Ind. 1993) (citation omitted). Where the challenging party offers nothing to substantiate its assertion of overbreadth "except a statement complaining that the subpoena requires virtually every record of the Corporation," without more, such complaints are insufficient to prove excessiveness, and fail "to overcome the strong presumption of validity which surrounds grand jury subpoenas." *Id.* at 1401-02. Here, Plaintiff's complaint concerning the scope and detail of records sought is unsupported by non-speculative allegations that such records are outside the scope of the grand jury's authority and must be rejected.

Demonstrating overbreadth is Plaintiff's burden, and the Mazars Subpoena is no different from many grand jury subpoenas routinely issued in white-collar crime investigations, which are

---

limited to events which may themselves result in criminal prosecution, but is properly concerned with any evidence which may afford valuable leads for investigation of suspected criminal activity during the limitations period." *United States v. Doe*, 457 F.2d 895, 901 (2d Cir. 1972) (internal quotation marks and citation omitted). Under New York law, moreover, criminal charges can apply to acts that, at least in part, took place more than five years ago. *See, e.g., New York v. E. Ambulance Serv., Inc.*, 106 A.D.2d 867, 868 (4th Dept. 1984) ("[T]he Statute of Limitations of a continuous crime is governed by the termination and not the starting date of the offense.").

typically dependent on financial and corporate records. *See Jordache Enters., Inc. v. United States*, 1987 WL 9705, at *4 (S.D.N.Y. April 14, 1987) (collecting cases); *cf.* Br. for Amici Curiae Washington State Tax Practitioners, 2020 WL 1433479, at *7-8, *Trump v. Vance*, No. 19-635 (U.S. 2020) ("In Practitioners' experience, the scope of [the Mazars Subpoena] is not surprising. For example, in a notice of a Washington State 'limited scope audit' of business excise tax returns that one of our clients received in January 2020, the categories of documents requested cover the same ground as the first four categories in the Mazars subpoena."). In fact, unlike some subpoenas that vaguely request "any and all records," the Mazars Subpoena spells out, with sufficient particularity, five categories of documents. *See, e.g.*, *In re Berry*, 521 F.2d 179, 182 n.1 (10th Cir. 1975) (denying a motion to quash a grand jury subpoena that required production of "any and all financial records of any type or description which relate, either directly or indirectly, to the financial affairs of" a law firm); *Jordache*, 1987 WL 9705, at *4 n.3 (upholding a grand jury subpoena that sought records in five separate categories, including, but not limited to, "[a]ll bookkeeping and accounting records reflecting receipts and disbursements and otherwise pertaining to the flow of income, including, but not limited to . . . certified or qualified financial statements, accountant's workpapers, accountant reports, and all records pertaining to the preparation and/or filing of corporate tax returns"). There is nothing facially defective about the scope of the Mazars Subpoena that would help Plaintiff satisfy his burden.

Plaintiff's argument that the Mazars Subpoena is overbroad fails for the additional reason that it rests on the false premise that the grand jury's investigation is limited to so-called "hush-money" payments made by Michael Cohen on behalf of Plaintiff in 2016. Plaintiff goes so far as to declare that these payments—and these payments alone—are what the "grand jury claims to be investigating," SAC ¶ 44, and thus the Mazars Subpoena is overbroad because it seeks documents dating back to 2011.

But this Court is already aware that this assertion is fatally undermined by undisputed

16

information in the public record.  *See Vance*, 395 F. Supp. 3d at 300 (the Office's investigation may result in "a favorable outcome . . . substantially related to[,]" among other things, "alleged insurance and bank fraud by the Trump Organization and its officers").  Although the Office bears no affirmative burden to justify the breadth of the Mazars Subpoena, and although Plaintiff is not entitled to know the scope and nature of the grand jury investigation, publicly available information itself establishes a satisfactory predicate for the Mazars Subpoena.  Public reporting demonstrates that the Office had a valid basis for requesting each category and timeframe of document listed in the Mazars Subpoena.[7]  As this reporting makes clear, at the time the Mazars Subpoena was issued, there were public allegations of possible criminal activity at Plaintiff's New York County-based Trump Organization dating back over a decade.  These reports describe transactions involving individual and corporate actors based in New York County, but whose conduct at times extended beyond New York's borders. This possible criminal activity occurred within the applicable statutes of limitations, particularly if the transactions involved a continuing pattern of conduct.

In light of these public reports of possibly extensive and protracted criminal conduct at the Trump Organization, there was nothing facially improper (or even particularly unusual) about the Mazars Subpoena, which issued in connection with a complex financial investigation, requesting eight

---

[7] *See*, *e.g.*, David A. Fahrenthold & Jonathan O'Connell, *How Donald Trump Inflated His Net Worth to Lenders and Investors*, WASH. POST, Mar. 28, 2019, https://wapo.st/2DsxZyo; Rebecca Ballhaus & Joe Palazzolo, *Michael Cohen Details Allegations of Trump's Role in Hush-Money Scheme*, WALL ST. J., Feb. 27, 2019, https://on.wsj.com/3fp2jap; David A. Fahrenthold & Jonathan O'Connell, *After Selling Off His Father's Properties, Trump Embraced Unorthodox Strategies To Expand His Empire*, WASH. POST, Oct. 8, 2018, https://wapo.st/3fsvLN7.

The Court may take judicial notice of matters of public record, including congressional testimony, *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 269 n. 7 (2d Cir. 2007), and news articles, which are properly considered on a motion to dismiss and do not require conversion of the motion to one for summary judgment.  *Long Miao v. Fanhua, Inc.*, ---F. Supp. 3d.---, 2020 WL 996602, at *1, n.2 (S.D.N.Y. Mar. 2, 2020) (collecting cases); *In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at *2 (S.D.N.Y. June 4, 2012) ("The Court may and does also take judicial notice of such news articles . . . for the purpose of demonstrating the existence of information . . . .").

years of records from an accounting firm.[8]  "No magic figure limits the vintage of documents subject to a grand jury subpoena.  The law requires only that the time bear some relation to the subject matter of the investigation."  *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1084 (E.D.N.Y. 1978) (*citing In re Grand Jury Subpoena Duces Tecum (Provision Salesmen & Distribs. Union)*, 203 F. Supp. 575 (S.D.N.Y. 1961)).  Courts routinely uphold grand jury subpoenas requesting documents over extended periods of time.  *See, e.g., id.* at 1084-85 (upholding a grand jury subpoena requesting nine years of financial documents in connection with an investigation as to whether a Seminary made false statements to the government in connection to their participation in federal aid programs); *see also In re Ingram*, 2012 WL 6840542, at *5 (E.D. La. Feb. 29, 2012) (collecting cases upholding grand jury subpoenas seeking financial and corporate records for five and six year time periods).[9]

## C.    The SAC Fails To State A Claim That The Mazars Subpoena Was Issued In Bad Faith

The Mazars Subpoena is presumptively valid under well-established federal and New York State law.  *See, e.g., Virag*, 54 N.Y.2d at 443 (noting that grand jury subpoenas enjoy a "presumption of validity" stemming, in part, "from the very nature of the Grand Jury itself" as an "investigatory body with broad exploratory powers"); *In re Grand Jury Proceeding*, 961 F.3d at 152 ("A grand jury

---

[8] Plaintiff repeatedly mispresents the length of the Mazars Subpoena as 10 years.  *See* SAC ¶¶ 24, 33, 34.  The time period in the Mazars Subpoena is from January 1, 2011 until the date of service, August 29, 2019.  *See* SAC ¶¶ 17-18.

[9] In addition, although the Court need not rely on it for purposes of granting the motion to dismiss, the unredacted Shinerock Declaration (Dkt. 29) further supports the scope of the Mazars Subpoena.  As this Court has previously found, that submission demonstrates "that the District Attorney had sufficient basis to warrant issuance of the grand jury subpoena, and hence, that the Mazars [S]ubpoena [is] not overbroad."  *See* July 16, 2020 Conf. Tr. at 4:7-14.  A court may review *in camera* a submission by the Government that "reveal[s] the subject of the investigation . . . so that the court may determine whether [a] motion to quash has a reasonable prospect for success."  *See R. Enters.*, 498 U.S. at 302; *see also In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 551 (S.D.N.Y. 2002) (Chin, J.) ("In considering whether to enforce a grand jury subpoena, *ex parte* submissions are acceptable if necessary to maintain grand jury secrecy." (*citing In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994)).

subpoena is presumed to have a proper purpose . . . ." (internal quotation marks and citation omitted)). This is consistent with the judicial assumption that "'state courts and prosecutors will observe constitutional limitations,'" Slip Op. at 17 (*quoting Dombrowski v. Pfister*, 380 U.S. 479, 484 (1965)), and the "presumption of regularity applicable to all official acts of individuals functioning under an oath of office." *Virag*, 54 N.Y.2d at 443.

To overcome this presumption, a grand jury subpoena "can only be challenged by an affirmative showing of impropriety[,]" including a showing of "bad faith." *Id.* at 442-43 (internal quotation marks and citation omitted). The party challenging a grand jury subpoena must "establish[] by concrete evidence that the subpoena was issued in bad faith or that it is for some other reason invalid." *Additional Jan. 1979 Grand Jury of Albany Supreme Court v. Doe*, 50 N.Y.2d 14, 20 (1980) (internal quotation marks and citation omitted). "[B]are assertion[s]," *Congregation B'Nai Jonah v. Kuriansky*, 172 A.D.2d 35, 38 (3d Dept. 1991), "hearsay, irrelevancies[,]" and "conclusory" statements regarding the usefulness or propriety of a grand jury subpoena are insufficient. *In re Kronberg*, 95 A.D.2d 714, 716 (1st Dept. 1983). Rather, only "credible, particularized allegations" will suffice. *Id.* (rejecting third-party motion to intervene in litigation to quash grand jury subpoenas where would-be intervenor failed to show that the investigation was undertaken in bad faith and failed to establish that it had standing to quash the subpoenas despite being a self-designated target of the investigation).[10]

As noted above, this Court has already found, in the *Younger* context, that this standard has not been met, and Plaintiff has made no new allegations that could change that determination. He has repeatedly claimed, at each stage of this litigation, that the Mazars Subpoena was issued in bad faith. *See* FAC ¶ 53; Reply Br. for Pl. at 1 (Dkt. 22); Opening Br. for Pl.-Appellant at 7, 19-22 (2d Cir.

---

[10] The federal standard is substantially similar. *See United States v. Salameh*, 152 F.3d 88, 109 (2d Cir. 1998) (a "defendant bears the burden of showing that the grand jury has exceeded its legal powers" by "'present[ing] particularized proof' of an improper purpose to overcome the presumption of propriety of the grand jury subpoena").

Dkt. 80); Sup. Ct. Reply Br. of Pet'r at 23.  In support, he has speculated about a "campaign of harassing the President" waged by various state and local officials, and an effort by the Office to "circumvent the President" by requesting records directly from Mazars using a "photocopied" subpoena. FAC ¶¶ 42, 45; Reply Br. for Pl. at 1 (Dkt. 22).  He has further contended that the similarities between the Mazars Subpoena and two Congressional subpoenas show that the Office is "duplicating the House's efforts" without jurisdiction.  FAC ¶ 53.  This Court has already evaluated and rejected these claims, explicitly declining "to impute bad faith to the District Attorney[,]" and finding that Plaintiff "has not alleged that the District Attorney lacks any 'reasonable expectation of obtaining a favorable outcome.'"  *Vance*, 395 F. Supp. 3d at 300 (citation omitted).[11]  No reviewing court has come to a different conclusion.

The SAC alleges nothing new, despite the nearly year-long litigation leading up to the filing of the SAC.  To the contrary, Plaintiff now limits his bad faith claim to a single theory: that the Mazars Subpoena is overbroad, and that this alleged overbreadth—without more—demonstrates bad faith. SAC ¶¶ 58-63.  For the reasons discussed above, that claim is baseless.

Plaintiff also offers the summary observation that the Mazars Subpoena was issued "at a time when … Democrats had become increasingly dismayed over their ongoing failure 'to get their hands on the long-sought after documents.'"  SAC ¶ 24.  From this assertion, Plaintiff would apparently have the Court infer that the Office is colluding with news reporters and unspecified "Democrats" to make the requested records public.  *Id.*  The SAC, however, provides no allegations to support this conclusory inference, and thus falls short, as a matter of law, to overcome the presumption of regularity with which the prosecutors and grand jury are clothed.  Further demonstrating the

---

[11] This Court has already reviewed the Shinerock Declaration and noted that the "District Attorney had sufficient basis to warrant issuance of the grand jury subpoena." July 16, 2020 Conf. Tr. at 4:12-13.

implausibility—and hence, insufficiency—of that assertion, it also ignores this Court's prior finding that documents obtained via grand jury subpoena remain secret law enforcement records under New York law.  *Vance*, 395 F. Supp. 3d at 303-04; *see* Slip Op. at 15 (noting that unauthorized disclosures of grand jury information is a felony under New York law).

In short, Plaintiff's recycled claims rest on unsupported and speculative assertions—not the sort of factual allegations that can overcome the legal presumptions of regularity.  Regardless of the actions of distant political actors who play no role in the criminal process, the grand jury has a steadfast and independent duty to "inquire into all information that might possibly bear on its investigation[,]" and "[a] grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed."  *R Enters.*, 498 U.S. at 297 (*quoting Branzburg*, 408 U.S. at 701).  In light of those fundamental legal premises, the SAC contains no allegations that could remotely justify an inference of bad faith.

## CONCLUSION

For these reasons, the Court should, without delay, dismiss the SAC with prejudice and order such other and further relief as it deems appropriate.

Dated: New York, New York                 Respectfully submitted,
        August 3, 2020

                                             s/Carey R. Dunne

                                             CAREY R. DUNNE
                                                 GENERAL COUNSEL
                                             CHRISTOPHER CONROY (PRO HAC VICE)
                                             JULIETA V. LOZANO
                                             JAMES H. GRAHAM
                                             ALLEN J. VICKEY
                                             SARAH A. WALSH (PRO HAC VICE)
                                             SOLOMON B. SHINEROCK
                                               ASSISTANT DISTRICT ATTORNEYS
                                             NEW YORK COUNTY
                                             DISTRICT ATTORNEY'S OFFICE
                                             One Hogan Place
                                             New York, New York 10013

                                             CAITLIN HALLIGAN
                                             RYAN W. ALLISON
                                             DAVID A. COON
                                             SELENDY & GAY PLLC
                                             1290 Sixth Avenue
                                             New York, New York 10104

                                             WALTER E. DELLINGER III
                                             (PRO HAC VICE MOTION FORTHCOMING)
                                             DUKE UNIVERSITY LAW SCHOOL
                                             Science Drive & Towerview Road
                                             Durham, North Carolina 27706

                                             *Counsel for Defendant Vance*