UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD J. TRUMP,

Plaintiff,

- against -

Case No. 1:19-cv-8694-VM
**VIA ECF**

CYRUS R. VANCE, JR., in his official capacity
as District Attorney of the County of New
York;

and

MAZARS USA, LLP,

Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT VANCE'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Marc L. Mukasey
MUKASEY FRENCHMAN & SKLAROFF LLP
Two Grand Central Tower
140 East 45th Street, 17th Floor
New York, New York 10177
(212) 466-6400
marc.mukasey@mukaseylaw.com

Alan S. Futerfas
Law Offices of Alan S. Futerfas
565 Fifth Ave., 7th Floor
New York, NY 10017
(212) 684-8400
asfuterfas@futerfaslaw.com

William S. Consovoy
Cameron T. Norris
Alexa R. Baltes
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................................ii

TABLE OF AUTHORITIES ............................................................................................................iii

INTRODUCTION ..............................................................................................................................1

BACKGROUND ................................................................................................................................3

ARGUMENT ......................................................................................................................................3

    I.    The 12(b)(6) Standard ..........................................................................................................4

    II.   The President plausibly alleges that the Mazars subpoena is overbroad and therefore is

       illegally harassing...................................................................................................................5

        A.  The President plausibly alleges that the grand jury is investigating payments made

           by Michael Cohen in 2016. ......................................................................................5

        B.  The President plausibly alleges that the Mazars subpoena is overbroad in relation

           to the grand jury's investigation into the 2016 payments. .......................................... 11

        C.  Even accepting the District Attorney's vague allusion to a broader investigation,

           the President plausibly alleges that the Mazars subpoena is overbroad.................. 19

    III.  The President plausibly alleges that the Mazars subpoena was issued in bad faith........ 21

CONCLUSION.................................................................................................................................. 25

## TABLE OF AUTHORITIES

### <u>Cases</u>

*Amadei v. Nielsen,*
  348 F. Supp.3d 145 (E.D.N.Y. 2018) .................................................................................7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................................................4

*Burns v. Martuscello,*
  890 F.3d 77 (2d Cir. 2018) ............................................................................................. 21

*Carlton v. Mystic Transp., Inc.,*
  202 F.3d 129 (2d Cir. 2000) ........................................................................................... 23

*Cheney v. United States Dist. Court for D.C.,*
  542 U.S. 367 (2004) ..................................................................................................... 1, 14

*Clinton v. Jones,*
  520 U.S. 681 (1997) .............................................................................................................1

*Demopoulos v. Anchor Tank Lines, LLC,*
  117 F. Supp. 3d 499 (S.D.N.Y. 2015) ..............................................................................9

*Dept. of Commerce v. New York,*
  139 S. Ct. 2551 (2019) .................................................................................................... 24

*Douglas E. Barnhart, Inc. v. Zurich American Insurance Company,*
  2007 WL 9777932 (S.D. Cal. 2007) ............................................................................. 25

*Faiveley Transport USA, Inc. v. Wabtec Corp.,*
  758 F. Supp. 2d 211 (S.D.N.Y. 2010) ..............................................................................7

*Faulkner v. Beer,*
  463 F.3d 130 (2d Cir. 2006) ......................................................................................... 7, 9

*Fowlkes v. Rodriguez,*
  584 F. Supp. 2d 561 (E.D.N.Y. 2008) ..............................................................................8

*Frankfurt-Trust Inv. Luxemburg AG v. United Techs. Corp.,*
  336 F. Supp. 3d 196 (S.D.N.Y. 2018) ..............................................................................8

*Friedl v. City of New York,*
  210 F.3d 79 (2d Cir. 2000) ............................................................................................ 4, 7

*Global Network Commc'ns, Inc. v. City of New York,*
  458 F.3d 150 (2d Cir. 2006) ..............................................................................................8

*Goel v. Bunge, Ltd.,*
  820 F.3d 554 (2d Cir. 2016) ..............................................................................................4

*Hale v. Henkel,*
  201 U.S. 43 (1906) ................................................................................................ 12

*Hynoski v. Columbia Cnty. Redev. Auth.,*
  941 F. Supp. 2d 547 (M.D. Pa. 2013) ........................................................................8

*In re Aegon N.V. Securities Litigation,*
  2004 WL 1415973 (S.D.N.Y. 2004) ...........................................................................8

*In re Aug., 1993 Regular Grand Jury (Med. Corp. Subpoena II),*
  854 F. Supp. 1392 (S.D. Ind. 1993) ................................................................... 12, 15

*In re Certain Chinese Family Benevolent & Dist. Ass'ns,*
  19 F.D.R. 97 (N.D. Cal. 1956) ...................................................................................5

*In re Eight Grand Jury Subpoenae Duces Tecum,*
  701 F. Supp. 53 (S.D.N.Y. 1988) ............................................................................ 11

*In re Grand Jury Investigation,*
  174 F. Supp. 393 (S.D.N.Y. 1959) ............................................................ 13, 14, 15, 17

*In re Grand Jury Proceeding,*
  961 F.3d 138 (2d Cir. 2020) .................................................................................... 21

*In re Grand Jury Proceedings Witness Bardier,*
  486 F. Supp. 1203 (D. Nev. 1980) ........................................................................... 19

*In re Grand Jury Proceedings,*
  33 F.3d 1060 (9th Cir. 1994) ................................................................................... 21

*In re Grand Jury Proceedings,*
  486 F.2d 85 (3d Cir. 1973) ................................................................................. 2, 21

*In re Grand Jury Proceedings,*
  616 F.3d 1186 (3d Cir. 2010) .................................................................................. 13

*In re Grand Jury Subpoena Duces Tecum*
  *Addressed to Provision Salesmen and Distributors Union, Local 627, AFL-CIO,*
  203 F. Supp. 575 (S.D.N.Y. 1961) ........................................................................... 12

*In re Grand Jury Subpoena Duces Tecum Dated Nov. 15, 1993,*
  846 F. Supp. 11 (S.D.N.Y. 1994) ........................................................................ 13, 19

*In Re Grand Jury Subpoena Duces Tecum Served Upon*
  *Local 456, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America,*
  1980 WL 2157 (S.D.N.Y. Mar. 25, 1980) ................................................................. 19

*In re Harry Alexander, Inc.,*
  8 F.R.D. 559 (S.D.N.Y. 1949) .......................................................................... 11, 12, 15

*In re Horowitz,*
    482 F.2d 72 (2d Cir. 1973) ................................................................12, 16, 18

*In re Linen Supply Cos.,*
    15 F.R.D. 115  (S.D.N.Y. 1953) ........................................................... 16

*In re Merrill Lynch Auction Rate Sec. Litig.,*
    2012 WL 1994707 (S.D.N.Y. June 4, 2012) ......................................9

*In re Rabbinical Seminary Netzach Israel Ramailis,*
    450 F. Supp. 1078  (E.D.N.Y. 1978) ..................................................12, 16

*In re Seiffert,*
    446 F. Supp. 1153 (N.D.N.Y. 1978) ................................................... 21

*In re Stolar,*
    397 F. Supp. 520 (S.D.N.Y. 1975) .....................................................11, 20

*Kelly v. Huntington Union Free School District,*
    675 F. Supp. 2d 283 (E.D.N.Y. 2009) ...............................................7

*Kopec v. Coughlin,*
    922 F.2d 152 (2d Cir. 1991) ............................................................... 10

*Kramer v. Time Warner Inc.,*
    937 F.2d 767 (2d Cir. 1991) ...............................................................8

*L & S Hospital & Institutional Supplies Co. v. Hynes,*
    375 N.Y.S.2d 934 (1975) .................................................................... 19

*Lawton v. Success Academy Charter Schools, Inc.,*
    323 F. Supp. 3d 353 (E.D.N.Y. 2018) ............................................... 25

*Lefkowitz v. Bank of New York,*
    676 F. Supp. 2d 229 (S.D.N.Y. 2009) ...............................................4

*Lewis v. Siwicki,*
    944 F.3d 427 (2d Cir. 2019) ...............................................................8

*Lumpkin v. Brehm,*
    230 F. Supp. 3d 178 (S.D.N.Y. 2017) ...............................................7

*Manning v. Valente,*
    272 A.D. 358 (N.Y. App. Div. 1947) ................................................12, 18, 20

*Matusovsky v. Merrill Lynch,*
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ...............................................4

*McCray v. Lee,*
    963 F.3d 110 (2d Cir. 2020) ...............................................................7

*McMann v. SEC,*
  87 F.2d 377 (2d Cir. 1937) ........................................................................................................... 5

*Nanda v. Board of Trustees of University of Illinois,*
  2002 WL 1553330 (N.D. Ill. 2002) .............................................................................................. 8

*New York Pet Welfare Ass'n, Inc. v. City of New York,*
  850 F.3d 79 (2d Cir. 2017) ........................................................................................................... 4

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,*
  102 F.3d 660 (2d Cir. 1996) ......................................................................................................... 7

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.,*
  2006 WL 3771013 (S.D.N.Y. 2006) ............................................................................................ 9

*Pearson Capital Partners LLC v. James River Insurance Company,*
  151 F. Supp. 3d 392 (S.D.N.Y. 2015) ......................................................................................... 4

*Rocket Learning, Inc. v. Rivera-Sanchez,*
  851 F. Supp. 2d 384 (D. Puerto Rico 2012) ............................................................................ 7, 8

*Rombach v. Chang,*
  355 F.3d 164 (2d Cir. 2004) ......................................................................................................... 4

*Schwimmer v. United States,*
  232 F.2d 855 (8th Cir. 1956) ........................................................................................... 13, 14, 15

*Staehr v. Harford Fin. Servs. Grp., Inc.,*
  547 F.3d 406 (2d Cir. 2008) ...................................................................................................... 8, 9

*Stern v. Morgenthau,*
  62 N.Y.2d 331 (1984) ............................................................................................................ 11, 12

*Terra Securities ASA Konkursbo v. Citigroup, Inc.,*
  820 F. Supp. 2d 541 (S.D.N.Y. 2011) ......................................................................................... 8

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018) .................................................................................................................. 1

*Trump v. Vance,*
  140 S. Ct. 2412 (2020) ........................................................................................................ passim

*Trump v. Vance,*
  395 F. Supp. 3d 283 (S.D.N.Y. 2019) ............................................................................ 11, 22, 24

*Trump v. Vance,*
  941 F.3d 631 (2d Cir. 2019) ....................................................................................................... 24

*United States v. Nixon,*
  418 U.S. 683 (1974) ............................................................................................................... 13, 14

*United States v. Prevezon Holdings LTD.,*
    122 F. Supp. 3d 57 (S.D.N.Y. 2015) ................................................................................. 11

*United States v. R. Enterprises, Inc.,*
    498 U.S. 292 (1991) ..................................................................................................passim

*United States v. Rumely,*
    345 U.S. 41 (1953) ......................................................................................................... 24

*Virag v. Hynes,*
    54 N.Y.2d 437 (1981) ...............................................................................................passim

*Watterson v. Page,*
    987 F.2d 1 (1st Cir.1993) .................................................................................................8

*Weinstock v. Columbia University,*
    224 F.3d 33 (2d Cir. 2000) ............................................................................................ 23

*Wexler v. Allegion (UK) Limited,*
    374 F. Supp. 3d 302 (S.D.N.Y. 2019) ..............................................................................8

## INTRODUCTION

The District Attorney argues that the President has the same rights as other citizens in pursuing his claims that the Mazars subpoena is overbroad and issued in bad faith. But he doesn't mean it. The Federal Rules of Civil Procedure require that the President's well-pled allegations be accepted as true at the pleadings stage. Yet the District Attorney asks the Court to resolve factual disputes over the scope of the investigation and the reason why he copied a congressional subpoena. Worse still, the Rules forbid reliance on extrinsic evidence in deciding a motion to dismiss for failure to state a claim. Yet the District Attorney's motion heavily relies on a declaration submitted by a member of his staff and an assortment of newspaper articles. In short, the District Attorney inappropriately asks this Court to ignore the Federal Rules at every turn.

None of this would be permitted in routine civil litigation, and it should not be tolerated here. When the Supreme Court emphasized that "in no case would a court be required to proceed against the president as against an ordinary individual," it didn't mean the President should get *less* protection. *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 381-82 (2004) (cleaned up). It meant that legal protections against abusive process "'apply with special force to a President, in light of the office's unique position as the head of the Executive Branch.'" *Trump v. Vance*, 140 S. Ct. 2412, 2428 (2020). That understanding "should inform the conduct of the entire proceeding." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). The District Attorney's attempt to convert this into a pseudo summary-judgment proceeding in which he gets to submit any material he wants—while the President is given no chance to test the strength of that evidence or develop a record—should thus be rejected. Concern for "the Presidency itself" requires at least that much. *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018).

It is understandable, however, why the District Attorney inappropriately invites the Court to resolve factual disputes at this stage. He has no argument otherwise. The President plausibly alleges that the grand-jury investigation is about certain payments made in 2016—not some murky inquiry into broader financial practices. Likewise, the President plausibly alleges that the District Attorney

copied the congressional subpoenas in a fit of pique and for reasons of expediency—not because his investigation into local issues and Congress's investigation into federal issues, by some truly bizarre coincidence, have exactly the same scope and cover exactly the same timeframe. Once the President's allegations are accepted as true, as they must be, it becomes clear that the District Attorney's motion is doomed. The subpoena is overbroad in relation to an investigation into payments made in 2016, and copying a congressional subpoena for nearly a decade's worth of financial documents and issuing it for no legitimate reason states a claim for bad faith. The District Attorney's refusal to confront these claims as pled shows just how weak his position is.

But the District Attorney's motion should be denied even if his extrinsic evidence is credited. The Shinerock declaration doesn't undermine the factual underpinnings for the President's claims—it corroborates them. The unredacted portion confirms that the grand jury is focused on the 2016 payments and that the subpoena wasn't copied because of a fortuitous overlap between the inquiries of the District Attorney and Congress. The newspaper articles also add nothing. At no point—in this motion or in any public filing—has the District Attorney ever claimed that the topics discussed in these reports were the impetus for his investigation or are otherwise related to it. Lobbing incendiary articles into the record may be sufficient to trigger a breathless news cycle, but such misdirection falls woefully short of what is needed for dismissal. If anything, it shows that the District Attorney is still fishing for a way to justify his harassment of the President.

The position of the District Attorney, as expressed during the July 16 conference, is "bring it on." If that bravado were genuine, he would've answered instead of filing a baseless motion that delays expeditious resolution of this factual dispute. But maybe the District Attorney recognizes that, once the case moves beyond the pleadings, he will need to demonstrate "that each item is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction, and is not sought primarily for another purpose." *In re Grand Jury Proceedings*, 486 F.2d 85, 93 (3d Cir. 1973). The President welcomes adjudication of those issues. The motion should be denied.

2

## BACKGROUND

On July 9, 2020, the Supreme Court affirmed the judgment below on "absolute immunity and heightened need." *Vance*, 140 S. Ct. at 2431. The Court then remanded the case so "the President may raise further arguments as appropriate." *Id.* Those arguments, the Court explained, include "bad faith and … breadth." *Id.* at 2430. The Court added that the President may bring these claims in "either a state or federal forum" and that "'[t]hese protections … apply with special force to a President, in light of the office's unique position as the head of the Executive Branch.'" *Id.* at 2428, 2430.

The President, in turn, filed a Second Amended Complaint ("SAC") alleging that the Mazars subpoena is overbroad, was issued in bad faith, and thus illegally harasses the President. SAC ¶¶53-57 (overbreadth); SAC ¶¶ 58-63 (bad faith). The District Attorney moved to dismiss for failure to state a claim under Rule 12(b)(6). In support, he relied on certain extrinsic evidence, namely the Shinerock declaration and several newspaper articles. *See* Memorandum of Law in Support of Defendant Vance's Motion to Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Memo") (Doc. 63) at 5, 17 n.7, 18 n.9, 20 n.11.

## ARGUMENT

The motion to dismiss should be denied. The President plausibly alleges that the subpoena is overbroad and was issued in bad faith. That is the only issue before the Court at this stage. The District Attorney's attempt to prematurely litigate the merits at the pleadings stage, including his reliance on extrinsic evidence, should be rejected.[1]

---

[1] Contrary to the District Attorney's summary assertion, *see* Memo 10-11, the President's claims do implicate Article II, *see Vance*, 140 S. Ct. at 2428, 2430; *see id.* at 2433 n.1 (Kavanaugh, J., concurring in the judgment). Subpoenas that amount to "'arbitrary fishing expeditions'" or are issued "'out of malice or an intent to harass,'" by definition, interfere with the President's ability fulfill his Article II responsibilities. *Id.* at 2428 (majority opinion). That is why these prohibitions "apply with special force to a President" and, "in the event of such harassment, a President would be entitled to the protection of federal courts." *Id.* (citations and quotations omitted).

## I.      The 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently 'raise a right to relief above the speculative level.'" *Pearson Capital Partners LLC v. James River Insurance Company*, 151 F. Supp. 3d 392, 399 (S.D.N.Y. 2015) (Marrero, J.). "The task of a court in ruling on a motion to dismiss," then, "is to 'assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Id.*

In adjudicating a Rule 12(b)(6) motion, moreover, a district court may only "consider the facts alleged in the complaint, documents attached to it or incorporated by reference, and matters subject to judicial notice." *New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017); *see Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004); *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 248-49 (S.D.N.Y. 2009) (Marrero, J.); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (Marrero, J.). Thus, extrinsic material that is not "integral to the complaint" must be excluded. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A contrary rule would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor-made to suit the needs of defendants." *Id.* at 560. As a result, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000); *see Pearson Capital Partners*, 151 F. Supp. 3d at 400.

II.     **The President plausibly alleges that the Mazars subpoena is overbroad and therefore is illegally harassing.**

The Mazars subpoena must be "properly tailored" for it to be valid. *Vance*, 140 S. Ct. at 2426. As the Supreme Court has explained, "grand juries are prohibited from engaging in 'arbitrary fishing expeditions.'" *Id.* at 2428; *see id.* at 2430 (explaining that the "breadth" of the subpoena is subject to challenge). The District Attorney agrees. *See* Memo at 11. The issue for present purposes is whether the President plausibly alleges that this subpoena is overbroad. He does.

A.   **The President plausibly alleges that the grand jury is investigating payments made by Michael Cohen in 2016.**

Whether the subpoena is overbroad must be measured against "the general subject of the grand jury's investigation." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991). The breadth of a subpoena is unreasonable when it is "out of proportion to the end sought." *See McMann v. SEC*, 87 F.2d 377, 379 (2d Cir. 1937) (L. Hand); *Virag v. Hynes*, 54 N.Y.2d 437, 444 (1981) (grand jury subpoena must be assessed in "relation to the matter under investigation"); *In re Certain Chinese Family Benevolent & Dist. Ass'ns*, 19 F.D.R. 97, 99 (N.D. Cal. 1956) ("The real question here is not the power of the Grand Jury to investigate, but rather the alleged excessive use of that power in this case.").

The President plausibly alleges that "the focus of the District Attorney's investigation is payments made by Michael Cohen in 2016 to certain individuals." SAC ¶12. The best evidence, is, of course, the District Attorney's initial subpoena to the Trump Organization, since the Mazars subpoena was issued in response to a dispute over the scope of that demand. SAC ¶¶13-16. And the subpoena to the Trump Organization was plainly focused on the payments made by Michael Cohen. It essentially sought two categories of documents: (1) payments or agreements concerning Michael Cohen, Karen McDougal, and Stephanie Clifford and (2) documents or communication relating to Michael Cohen's employment history. SAC ¶13. The timeframe of the subpoena was from "June 1, 2015 through September 20, 2018." SAC ¶13. That the Trump Organization subpoena was about those payments thus is not just plausible—it's a certainty.

Only after a disagreement arose over whether that subpoena required the production of tax returns was the sweeping subpoena issued to Mazars. SAC ¶16. Given that the District Attorney issued the Mazars subpoena on the heels of this dispute, then abandoned any effort to enforce the Trump Organization subpoena, and then tacked on a demand for tax returns to a subpoena that was otherwise copied wholesale from one issued by the House Oversight Committee, SAC ¶¶ 17-20, it is plausible to infer that the sweep of the subpoena does not reflect a change in the scope of the investigation. Rather, the District Attorney copied a congressional subpoena for unrelated reasons. SAC ¶¶ 22-26; *infra* 21-25. The timing of (and relationship between) the Trump Organization subpoena and Mazars subpoena support a plausible allegation that the grand jury is investigating the 2016 payments.

Contemporaneous news reports corroborated this understanding of the investigation's scope. "The New York Times reported that, with respect to the Mazars subpoena, 'Mr. Vance's office is exploring whether the reimbursement violated any New York state laws…. In particular, the state prosecutors are examining whether the company falsely accounted for the reimbursements as a legal expense. In New York, filing a false business record can be a crime.'" SAC ¶12. This reporting thus further supports a reasonable inference that the grand jury is investigating the 2016 payments.

That is the baseline against which the legality of the subpoena's tailoring must be measured. But the District Attorney has no interest in defending the breadth of the subpoena on that basis. He resists that characterization of the investigation, arguing that it "is fatally undermined by undisputed information in the public record." Memo at 16-17. In so arguing, the District Attorney points to the Shinerock declaration and news articles as rebutting the President's well-pled allegations regarding the investigation's scope. *See id.* at 5, 17 n.7, 18 n.9, 20 n.11. That the District Attorney would rather debate facts than face the complaint's allegations as pled is unsurprising. *See infra* 11-18. But his reliance on this extrinsic evidence is foreclosed by precedent and unhelpful anyway.

There is no legal basis for considering the District Attorney's factual evidence at the motion-to-dismiss stage. He wisely does not even try to justify his reliance on the Shinerock declaration. It is

not referenced in the Second Amended Complaint, is not attached to the complaint, and is certainly not integral to the President's claims. To the contrary, the declaration is plainly a document that the District Attorney sees as helping him *rebut* those claims. That makes the declaration precisely the kind of document that the Federal Rules exclude from consideration at the Rule 12(b)(6) stage. The District Attorney's "invitation" to determine whether dismissal for failure to state a claim is warranted "on the basis of matters beyond the operative complaint and documents deemed part of it" must be rejected. *McCray v. Lee*, 963 F.3d 110, 119 (2d Cir. 2020).

Indeed, it would be a textbook "error to rely on [a] 'factual contention … contained in a declaration.'" *Faulkner v. Beer*, 463 F.3d 130, 134 n.1 (2d Cir. 2006) (quoting *Friedl*, 210 F.3d at 84); *Amadei v. Nielsen*, 348 F. Supp.3d 145, 164 n.12 (E.D.N.Y. 2018) ("On a Rule 12(b)(6) motion this court cannot consider an affidavit submitted by Defendants."); *see, e.g.*, *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996) (district court that took account of an "Affirmation and its attachments" had "improperly relied upon extra-complaint information in granting the motion to dismiss"); *Lumpkin v. Brehm*, 230 F. Supp. 3d 178, 183 (S.D.N.Y. 2017) (declining to "consider the Friedman Declaration nor any of its exhibits" in ruling on a Rule 12(b)(6) motion to dismiss); *Kelly v. Huntington Union Free School District*, 675 F. Supp. 2d 283, 289 (E.D.N.Y. 2009) (same). At bottom, "the Court generally cannot consider affidavits and exhibits on a motion to dismiss." *Faiveley Transport USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 216 (S.D.N.Y. 2010); *see Friedl*, 210 F.3d at 83-84 ("a district court errs when it considers affidavits and exhibits submitted by defendants … in ruling on a 12(b)(6) motion to dismiss") (cleaned up)).

This rule applies equally to evidence adduced at a preliminary-injunction proceeding. In *Rocket Learning, Inc. v. Rivera-Sanchez*, for example, the court declined to "take[] judicial notice of the record of the preliminary injunction hearing in ruling on defendant's motion to dismiss." 851 F. Supp. 2d 384, 391 (D. Puerto Rico 2012). The court noted that "'any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden'" when ruling on the motion. *Id.*

(citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993)); *see also Hynoski v. Columbia Cnty. Redev. Auth.*, 941 F. Supp. 2d 547, 556 (M.D. Pa. 2013) (refusing to take judicial notice of preliminary injunction brief on motion to dismiss); *Nanda v. Board of Trustees of University of Illinois*, 2002 WL 1553330 at *4 (N.D. Ill. 2002) (testimony from a preliminary injunction hearing is not admissible at motion-to-dismiss stage). Hence, "if evidence presented at a preliminary injunction hearing is to be relied on in deciding a motion to dismiss, the court must convert such motions into ones for summary judgment." *Rocket Learning, Inc.*, 851 F. Supp. 2d at 391.

Finally, even if judicial notice were an available path to admission of the declaration—which it is not—that would not advance the District Attorney's attempt to have it substantively considered. "The Court may take judicial notice of court filings 'not for the truth of the matters asserted … but rather to establish the fact of such litigation and related filings.'" *Wexler v. Allegion (UK) Limited*, 374 F. Supp. 3d 302, 306 n.1 (S.D.N.Y. 2019) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *see also Staehr v. Harford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). That is no less true in the Rule 12(b)(6) context; "in reviewing a motion to dismiss, a court may not consider documents extrinsic to the complaint unless judicial notice of such documents is appropriate *and the documents are not used to establish the truth of their contents.*" *Terra Securities ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 541, 545 n.3 (S.D.N.Y. 2011) (Marrero, J.) (emphasis added); *see Frankfurt-Trust Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 205 (S.D.N.Y. 2018) (Marrero, J.).[2]

---

[2] The two decisions that the District Attorney cites are not to the contrary. *See* Memo at 10. The "truthfulness" of judicially-noticed material was used in those cases to prove an incontrovertible fact—*i.e.*, that specific events occurred on specific dates. *See Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561, 575 (E.D.N.Y. 2008) (hearing was held on a certain date in state court); *In re Aegon N.V. Securities Litigation*, 2004 WL 1415973, at *14 (S.D.N.Y. 2004) (notations were made in a public filing on a certain date). The allegations in the Shinerock declaration are obviously not the kind of "indisputable facts of which a court may take judicial notice." *Lewis v. Siwicki*, 944 F.3d 427, 433-34 (2d Cir. 2019); *see, e.g.*, *Hynoski*, 941 F. Supp. 2d at 556.

The District Attorney is *only* interested in having the Shinerock declaration considered for the truth of what it asserts. He's not interested in the Court taking judicial notice of the fact that it was submitted in the preliminary-injunction proceeding. The District Attorney wants to use this written testimony to establish the "nature" of his "investigation" so he can try to prove that he "had sufficient basis to warrant issuance of the grand jury subpoena, and hence, that the Mazars Subpoena is not overbroad." Memo at 5 (cleaned up). According to the District Attorney, "the unredacted Shinerock Declaration further supports the scope of the Mazars Subpoena." *Id.* at 18 n.9. He likewise wants the declaration admitted to prove that the subpoena was not issued in bad faith. *See id.* at 20 n.11. This is all improper. The references to the declaration should be struck.

The Court should strike the references to the three newspaper articles for similar reasons. As the District Attorney notes, a court may take "'judicial notice of … news articles … for the purpose of demonstrating *the existence of information* ….'" Memo at 17 n.7 (quoting *In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at *2 (S.D.N.Y. June 4, 2012) (emphasis added)). Judicial notice may be appropriate to establish "that certain things were said in the press"—but those reports cannot be "offered for the truth of the matter asserted." *Staehr*, 547 F.3d at 425; *see Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 507 (S.D.N.Y. 2015). "The Court can," in other words, "take judicial notice of the fact that these [articles] were published in certain publications and on certain dates, but it cannot make *factual inferences* based on the content of those [articles] that it could not otherwise make pursuant to its power under [Federal Rule of Evidence] 201 to take notice of widely known and indisputable facts." *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 2006 WL 3771013, at *2 (S.D.N.Y. 2006) (emphasis added). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134.

It is unclear precisely why the District Attorney cites these articles. Perhaps he is citing them as evidence of what the scope of the investigation *could* be. But then they're irrelevant. This is not a case about theoretical possibilities; the investigation's *actual* scope of is what matters. Or perhaps the

District Attorney is citing them as proof that his "Office had a valid basis for requesting each category and timeframe of document listed in the Mazars Subpoena." Memo at 17. In that case, they're being offered to rebut a factual allegation made in the complaint, *viz.*, that the investigation is about alleged "payments made by Michael Cohen on behalf of Plaintiff in 2016." Memo at 16. Either way, the District Attorney is not seeking judicial notice just to establish that these articles exist, and they cannot be relied on to draw a factual inference that the Mazars subpoena is valid.[3]

Even if the Court could consider this extrinsic evidence, none of it negates the inference the complaint draws about the investigation's scope. The articles include allegations and innuendo related to the President and the Trump Organization. *See* Memo at 17 & n.7. But none of them even mentions the District Attorney or the grand jury's investigation—let alone purports to identify the nature of this proceeding. And the District Attorney is careful to never actually suggest otherwise. If the District Attorney convened the grand jury in order to investigate allegations discussed in these articles, he could've said so. But the bare fact that "there were public allegations of possible criminal activity," *id.*, which is all these citations show, provides no insight into whether the grand jury is in fact investigating them and whether they were a basis for issuing this subpoena.

The public-record portion of the Shinerock declaration likewise is not helpful to the District Attorney. The declaration expressly connects the Trump Organization subpoena (and investigation of the 2016 payments) to the Mazars subpoena. Doc. 17 ¶9. And it references proceedings before *other investigative bodies* only as part of an argument that the President is not immune from investigations or subpoenas. *Id.* ¶17. Although the Shinerock declaration "reflects that a variety of investigations related to similar conduct are either ongoing or resolved," "[n]one of these investigations necessarily involve

---

[3] If the Court elects to consider this extrinsic evidence, and in turn converts this to a summary-judgment proceeding, then the next step would be to allow the President to take discovery. *See generally* Pre-Motion Letter for Rule 56(d) Discovery. It is "reversible error" for a district court to convert and then grant summary judgment without giving the plaintiff "notice and an opportunity to respond to [the extrinsic] evidence." *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991).

the President himself." *Trump v. Vance*, 395 F. Supp. 3d 283, 300 (S.D.N.Y. 2019). The unredacted portion never identifies any allegation that is being investigated other than the 2016 payments.

In all, the District Attorney has repeatedly acknowledged that the grand jury is investigating the payments made in 2016, and, despite multiple opportunities to do so, he has *never* publicly identified any other allegation that his Office *is* investigating. He can try to litigate this case on broader terms—but not at the pleadings stage. Because the President plausibly alleges that the grand jury's investigation is limited to the 2016 payments, the District Attorney's contrary assertion raise a question of fact. "On a motion to dismiss, the court does not find facts. Instead, the court draws all reasonable inferences in plaintiff's favor, assumes all well-pleaded factual allegations to be true, and determines whether they plausibly give rise to an entitlement to relief." *United States v. Prevezon Holdings LTD.*, 122 F. Supp. 3d 57, 78 (S.D.N.Y. 2015). The District Attorney's premature attempt to have the Court resolve the issue at this juncture should be rejected.

### B. The President plausibly alleges that the Mazars subpoena is overbroad in relation to the grand jury's investigation into the 2016 payments.

The grand jury's investigatory subpoena powers may be broad—but they're "not unlimited." *R. Enterprises, Inc.*, 498 U.S. at 299; *see In re Eight Grand Jury Subpoenae Duces Tecum*, 701 F. Supp. 53, 55 (S.D.N.Y. 1988) (grand jury's power is "broad but circumscribed" and "subject to some limitations"); *Stern v. Morgenthau*, 62 N.Y.2d 331, 336-37 (1984) (grand jury's subpoena powers, "although extensive, are not unlimited"). For example, "there are matters into which a grand jury may not inquire simply because they fall outside the area of its proper functions." *In re Stolar*, 397 F. Supp. 520, 522 (S.D.N.Y. 1975); *see id.* (grand jury subpoena cannot be used to "inquire into a strictly civil matter"); *Stern*, 62 N.Y.2d at 336-37 (geographical and durational limits on the grand jury's power). In addition, grand jury subpoenas, like all "forced production of documents by subpoena" must be reasonable, not oppressive, and not "out of proportion to the end sought." *In re Harry Alexander, Inc.*, 8 F.R.D. 559, 560 (S.D.N.Y. 1949); *see R. Enterprises, Inc.*, 498 U.S. at 299.

The baseline "reasonableness" standard stems from the Constitution and from federal and state rules and procedures. *See, e.g.*, *In re Harry Alexander, Inc.*, 8 F.R.D. at 560 (citing the Constitution's prohibition of unreasonable searches); *R. Enterprises, Inc.*, 498 U.S. at 299 (citing Federal Rule of Criminal Procedure 17); *Stern*, 62 N.Y.2d at 336-37 (citing grand jury "'procedural and evidentiary rules laid down in the Criminal Procedure Law and other statutes'"). In the context of a grand jury subpoena, "reasonableness" generally has three components: "[1] The subpoena duces tecum may command only the production of things relevant to the investigation being pursued. [2] The subpoena must specify the things to be produced with reasonable particularity. [3] The subpoena may order the production of records covering only a reasonable period of time." *In re Grand Jury Subpoena Duces Tecum Addressed to Provision Salesmen and Distributors Union, Local 627, AFL-CIO*, 203 F. Supp. 575, 578 (S.D.N.Y. 1961) (citations omitted); *see Stern*, 62 N.Y.2d at 336-37.

The first and third elements test breadth and relevance. There must be a "logical connection between" the subpoenaed documents and both the subject matter and time period of the grand jury investigation. *See In re Aug., 1993 Regular Grand Jury (Med. Corp. Subpoena II)*, 854 F. Supp. 1392, 1400 (S.D. Ind. 1993); *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1084-85 (E.D.N.Y. 1978); *see also Virag*, 54 N.Y.2d at 444 (requiring some "relation to the matter under investigation"). A subpoena "too sweeping in its terms" on either front cannot "be regarded as reasonable." *See Hale v. Henkel*, 201 U.S. 43, 76 (1906).

Though entitled to a presumption of regularity, *see R. Enterprises, Inc.*, 498 U.S. at 300; *Virag*, 54 N.Y.2d at 443, a grand jury subpoena challenged on overbreadth and relevancy grounds is invalid if there is "no reasonable possibility" that a "category of materials" requested will yield "information relevant to the general subject of the grand jury's investigation." *R. Enterprises, Inc.*, 498 U.S. at 301; *see In re Horowitz*, 482 F.2d 72, 79-80 (2d Cir. 1973); *Virag*, 54 N.Y.2d at 444 (relevance must be "conceivable"); *Manning v. Valente*, 272 A.D. 358, 362 (N.Y. App. Div. 1947) (requiring "an *'intelligent estimate'* of relevancy" to support a demand for documents (emphasis added)). Importantly, subject

matter, time period, and other such considerations drive the identification of categories subject to this analysis—not the subpoena in toto, and not the categories drawn in the subpoena itself. *See In re Grand Jury Subpoena Duces Tecum Dated Nov. 15, 1993*, 846 F. Supp. 11, 12 (S.D.N.Y. 1994).

In other words, a District Attorney cannot insulate a subpoena from overbreadth challenges by drafting categories of requests so broadly or so comprehensively that they will surely produce "some relevant information." *Id.* Indeed, subpoenas that are too broad on their face—those that compel production "of all of one's books and papers en masse" over "an extensive period"—raise suspicion since they're far more likely to cover entire categories of irrelevant documents. *See Schwimmer v. United States*, 232 F.2d 855, 861-62 (8th Cir. 1956); *see also In re Grand Jury Investigation*, 174 F. Supp. 393, 395 (S.D.N.Y. 1959). This is not to say that a subpoena has to be perfectly drawn to the grand jury's investigation or that some irrelevant documents cannot be swept up in an otherwise legitimate demand. But if it is likely that certain "types of documents" contain no relevant information for the grand jury's investigation, then the subpoena "unnecessarily demands" irrelevant documents, and its scope is "unreasonably broad." *In re Grand Jury Subpoena Duces Tecum Dated Nov. 15, 1993*, 846 F. Supp. at 12-14; *see R. Enterprises, Inc.*, 498 U.S. at 301.[4]

Succinctly put, the subpoena must be "properly tailored." *Vance*, 140 S. Ct. at 2426. These rules guard against "arbitrary fishing expeditions" as well as investigations borne of "malice or an intent to harass." *R. Enterprises, Inc.*, 498 U.S. at 299. And they apply with "'special force'" to the to the President. *Vance*, 140 S. Ct. at 2428. Courts are "'particularly meticulous'" in assessing a subpoena for the President's personal papers. *Id.* at 2430 (quoting *United States v. Nixon*, 418 U.S. 683, 702 (1974)); *see id.* at 2433 (Kavanaugh, J., concurring in the judgment).

---

[4] In addition to "the categorical approach," "there may be a limited need to examine some documents to determine other issues such as privilege." *In re Grand Jury Proceedings*, 616 F.3d 1186, 1205 & n.20 (3d Cir. 2010).

The District Attorney purports to acknowledge that the "'high respect that is owed to the office of Chief Executive … should inform the conduct of the entire proceeding.'" Memo at 8 (quoting *Vance*, 140 S. Ct. 2430 (majority opinion)). But in his view, this additional protection applies only to "procedures" and not to "substantive legal standards." *Id.* That is wrong. The "particularly meticulous" standard reinforced by the Supreme Court in this case comes from *United States v. Nixon*. *See* 418 U.S. at 702. *Nixon* explains that courts must be "particularly meticulous" in applying "the standards of Rule 17(c)"—that is, the rule governing reasonableness of a grand jury subpoena. *Id.* Thus, while the Court rejected the "demonstrated, specific need" standard, it reiterated the settled rule that the President should not be treated like an ordinary litigant. *Vance*, 140 S. Ct. at 2432 (Kavanaugh, J., concurring in the judgment) ("[I]n light of Article II of the Constitution, this Court has repeatedly declared—and the Court indicates again today—that a court *may not* proceed against a President as it would against an ordinary litigant." (emphasis added)); *see Cheney*, 542 U.S. at 381-82.

In seeking dismissal, the District Attorney improperly ignores the stage of litigation, all limits on grand jury subpoena power, and the special protection afforded to the President. Each one of these errors independently undermines his Motion to Dismiss.

The President plausibly alleges that the Mazars subpoena fails both ordinary and particularly meticulous applications of the standards for reasonableness and relevancy. On its face, the subpoena asks for every document and communication related to the President and his businesses over about the last decade. SAC ¶18, 31-35. This is precisely the type of "en masse" demand of "such a varied accumulation" "over such an extensive period" that is strongly suggestive of a "fishing expedition." *See Schwimmer*, 232 F.2d at 861-62; *In re Grand Jury Investigation*, 174 F. Supp. at 395 (holding that a "subpoena which requires production of practically every paper outside of routine correspondence relating to every phase of the corporation's affairs" constituted "an unlimited exploratory investigation" and was thus "unreasonable"). The subpoena is designed to include everything "in the imaginative concept of every shred of paper" in Mazars' possession related to the President and the

Trump Organization. *See In re Harry Alexander, Inc.*, 8 F.R.D. at 560. The District Attorney claims that the expansive demand is saved by the fact that it does not simply ask for "'any and all records,'" but instead lists five categories. Memo at 16. He fails to acknowledge, however, that the categories of requests—all tax returns, financial documents, contracts, source documents and work papers, and communications—don't tailor the subpoena's scope. Taken together, they instead "avoid the possible exclusion of anything" that Mazars might have regarding the President or his businesses. *See In re Harry Alexander, Inc.*, 8 F.R.D. at 560.

To be clear, this is not an argument about volume qua volume—that is, the physical size of production—as the District Attorney suggests in claiming that the President needed to "'quantify'" the volume of information demanded in order to state a claim for overbreadth. Memo at 15. That is wrong twice over. First, it ignores the fact that we are at the pleading stage of this litigation. Second, the case he cites involves physical "oppressiveness," as distinct from scope or relevancy. *See In re Aug., 1993 Regular Grand Jury (Med. Corp. Subpoena II)*, 854 F. Supp. at 1401-02 (citing case involving a request for "9,000 linear feet" of documents and discussing the burdens of producing original records). While the Mazars subpoena is certainly voluminous and burdensome, the President's complaint pointed to volume as evidence of unreasonable scope, not unreasonable oppression. *See, e.g.*, SAC ¶23 (discussing "voluminous records *that are irrelevant* to the grand jury's work" (emphasis added)). Where, as here, the demand is pervasive in volume, subject matter, and time period, it is enough to support a plausible allegation of overbreadth that the subpoena reaches far beyond the scope of the investigation. *See Schwimmer*, 232 F.2d at 861-62; *In re Grand Jury Investigation*, 174 F. Supp. at 395; *In re Harry Alexander, Inc.*, 8 F.R.D. at 560.

But the Court is not left to infer inevitable disconnect between the scope of the subpoena and the reach of the grand jury's investigation. The President plausibly alleges that the investigation is focused on business records and bookkeeping related to 2016 payments by Michael Cohen. *See supra* 5-11. Measured in "relation to the matter under investigation," *see Virag*, 54 N.Y.2d at 444, then, the

President has clearly alleged that the subpoena is overbroad. It demands *all* financial records, documents, and communications (not just those related to business transactions or New York reporting) from *all* entities associated with the Trump Organization across the nation and world (not just those with a connection to Michael Cohen or influence over New York reporting), over nearly a decade (including five years before the conduct forming the basis for the investigation). SAC ¶¶18, 31-35. By its terms, the subpoena reaches entire categories of documents that have nothing to do with the payments under investigation. For example, an accounting of the assets held in 2011 by entities in California, or Illinois, or Dubai, or anywhere else, bear no conceivable relationship to an investigation about particular 2016 transactions in New York. SAC ¶¶22-45.

Indeed, even setting aside the wholly unrelated subject matter, the time period of the request alone is fatal. The subpoena demands nearly a decade's worth of documents dating back to 2011 despite the fact that the conduct forming the basis of the investigation did not occur until 2016. The District Attorney notes that "[c]ourts routinely uphold grand jury subpoenas requesting documents over extended periods of timed." Memo at 18. But without context, that statement is meaningless. *See In re Linen Supply Cos.*, 15 F.R.D. 115, 118-19 (S.D.N.Y. 1953) (the "facts in each individual case," not the "formal results" of earlier cases "are the determining factors"). The time period must be reasonable and "bear some relation to the subject matter of the investigation." *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. at 1084-85; *see id.* (a demand for "financial records … for the six-month period immediately prior to [the relevant conduct] and the twenty-one months subsequent thereto" is reasonable); *see also In re Horowitz*, 482 F.2d at 79-80 (finding it "difficult to see what relevance there could be in papers so long antedating the inception of the [investigated] project"). The President plausibly alleges that documents from as far back as 2011 bear no reasonable relation to transactions or reporting that took place in or after 2016. *See* SAC ¶¶43-45.

That the subpoena reaches far beyond the subject of the investigation is wholly unsurprising. The subpoena was drafted by the House Oversight Committee to investigate a broad range of national

and international issues. SAC ¶¶20, 22-27, 36-45. The Committee claims to be investigating, for example, international relations, potential improper influences over the Executive Branch, the need for reform to federal laws involving the President, the proper authority given to the Office of Government Ethics, and federal-lease management, among other things. SAC ¶¶37-43. And the Committee tied the time period covered (dating back to 2011) to the initiation of a contractual relationship between the federal government and a Trump entity in Washington D.C. SAC ¶43. All of these purposes are issues "of national importance" and claim to be grounded in constitutional and federal law. SAC ¶¶ 36-45. None involve state criminal law, and none fall within the jurisdiction of the County of New York, making it plausible (to say the least) that much of the requested information does not relate to the grand jury's investigation.[5]

The District Attorney's only response is that information can serve multiple purposes. Memo at 13. Maybe so. The point, however, is that it is plausible to conclude that the information covered by such a sweeping subpoena is not simultaneously tailored to the purposes of different bodies with different interests and different powers. And it is also plausible to conclude that a sweeping subpoena drafted by one of those bodies to pursue several goals and functions unique to it is not properly tailored to *any* purpose of the other. In any event, and more importantly, the notion that information *could* serve multiple purposes does nothing to undermine the plausible allegation that the documents requested do not actually serve *the grand jury's* purpose—entire categories of the requested documents bear "no relation to" the 2016 payments. *Virag*, 54 N.Y.2d at 444.

---

[5] The President's complaint also noted that the District Attorney's authority is limited by criminal statutes of limitation. SAC ¶¶29-30. The District Attorney chastises the President for this allegation, noting the statute of limitation for continuous crimes is governed by the termination, not initiation, of the offense and that subpoena power is not strictly limited by statutes of limitation. Memo at 14-15 n.6. That's true. But since the alleged offense took place in 2016, the first point is irrelevant. And this Court has held that demanding records far beyond the statute of limitations for the conduct associated with the investigation is good evidence that the subpoena is overbroad. *See In re Grand Jury Investigation*, 174 F. Supp. at 395.

The District Attorney does not even proffer a theory to the contrary—not a single sentence. Instead, in a misguided hope that the Court will ignore the settled Rule 12(b)(6) standard, he refuses to defend the subpoena's scope as it relates to the 2016 payments or otherwise engage the complaint on its own terms. *See* Memo at 15-18. That should be decisive. The complaint plausibly alleges that the Mazars subpoena fails ordinary reasonableness and relevancy requirements because it sweeps in entire categories of documents that have no conceivable relevance to an investigation into the 2016 payments. *R. Enterprises, Inc.*, 498 U.S. at 301; *In re Horowitz*, 482 F.2d at 80; *Virag*, 54 N.Y.2d at 444; *Manning*, 272 A.D. at 362. And were there any doubt, the facts as alleged in the complaint certainly support an inference of unreasonable overbreadth under a "particularly meticulous" application of those standards. *See Vance*, 140 S. Ct. at 2428.

Finally, much of the District Attorney's argument broadly rests on a misuse of cases discussing the "presumption of regularity" afforded to grand jury investigative subpoenas. *See Virag*, 54 N.Y.2d at 443. As discussed, the District Attorney fails to faithfully entertain the idea that the presumption is just that—a presumption, weaker when employed against the President, rebuttable for all of the reasons mentioned above, and not a blanket protection for unreasonable demands. *See supra* 11-18. But in addition to these shortcomings, the District Attorney places unqualified reliance on cases involving motions to quash, not motions to dismiss. In other words, he holds out analysis from the proof and liability stages of litigation as conclusive of the showing required at the pleading stage. The memo is replete with references to "heavy burden[s]," required "'strong showing[s]'" and "demonstrat[ions]," the need for "concrete evidence," assertions that the President's allegations are "insufficient to prove" overbreadth, and the like. *See, e.g.*, Memo at 11-12, 15. Contrary to the District Attorney's suggestion, the President does not have to carry that burden or prove his case in his complaint—he simply has to allege facts sufficient to support an inference that he could prove his case after appropriate discovery and litigation. He has clearly done so.

### C.  Even accepting the District Attorney's vague allusion to a broader investigation, the President plausibly alleges that the Mazars subpoena is overbroad.

The Mazars subpoena is so overbroad that even on the District Attorney's own terms, his motion must be denied. The District Attorney purports to justify the scope solely on the grounds that it was "issued in connection with a complex financial investigation" related, in some way or another, to the Trump Organization, which is headquartered in New York. Memo at 13-18. This, he says, gives his Office jurisdiction and limitless subpoena power over *anything* the Trump Organization does in *any* part of the world without *any* threshold level of suspicion. *Id.* That is wrong. Jurisdiction always has bounds. And even subpoenas related to financial and white-collar investigations have reasonableness and relevancy limits. *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum Dated Nov. 15, 1993*, 846 F. Supp. at 12-14 (securities trading); *In Re Grand Jury Subpoena Duces Tecum Served Upon Local 456, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 1980 WL 2157, *1-2 (S.D.N.Y. Mar. 25, 1980) (embezzling funds); *In re Grand Jury Proceedings Witness Bardier*, 486 F. Supp. 1203, 1214 (D. Nev. 1980) (income tax evasion); *accord L & S Hospital & Institutional Supplies Co. v. Hynes*, 375 N.Y.S.2d 934, 941 (1975) ("In the absence of some showing of relevance to the nursing home investigation, the door is not open for a full-scale investigation of the personal affairs of anyone who has ever dealt with a nursing home in this state.").

The District Attorney counters by (1) citing courts, including this Court, that have seemingly acknowledged his geographic jurisdiction over the subject of the grand jury investigation and (2) noting the obvious point that jurisdiction imposes no formal limit until the indictment stage. Memo at 14. These arguments simultaneously miss and prove the point. If the true subject of the grand jury investigation falls within the criminal jurisdiction of the County of New York, which no one has contested, then the *subpoena* is not properly tailored to that investigation, whatever the investigation's contours. In other words, the subpoena reaches so far and so comprehensively beyond New York's borders (and any conceivable conduct related to New York)—again, unsurprising given that it was

drafted to pursue purely national and international ends—that there is a near certainty it sweeps in categories of irrelevant information. *See supra* 14-15.

The principle holds true even applied to the moving target of the *possibly* sprawling, *possibly* complex financial investigation that the grand jury *could* be investigating based on an array of publicly reported civil and criminal allegations aimed at the Trump Organization.[6] Indeed, aside from nodding to a financial probe into an entity in the nation's "financial nerve center," which, again, is not enough to justify a demand for every paper related to that entity, *supra* 19, the District Attorney points only to unidentified "individual and corporate actors based in New York County … whose conduct at times extended beyond New York's borders," as a basis for his global demand. Memo at 14, 17. But the President has plausibly alleged facts sufficient to support the inference that any such actors would not alone or together have a relevant relationship to *all* of the entities covered by the subpoena for the *entire* time period. SAC ¶¶22-45.

It strains credulity to think, for example, that the contractual agreement between a Washington D.C. hotel and the federal government in 2011, *and* the value of the equipment held by an entity in India in 2012, *and* a (let alone every) transaction by an entity in Ireland in 2013 has a material or "obvious connection" to a hypothetical investigation under the criminal jurisdiction of New York, or that any New York actor has a meaningful connection to all three. *See* Memo at 14. Yet that—in addition to tens (if not hundreds) of thousands of other pages of information from entities all over the world—is precisely what the District Attorney demands. The presumption of regularity afforded to grand jury subpoenas does not require or permit credulity. *See, e.g.*, *Manning*, 272 A.D. at 362

---

[6] Many of the allegations in the District Attorney's extraneous sources that form the basis of his invitation to imagine an investigation broad enough to justify this subpoena, relate to civil, not criminal, conduct. *See* Memo at 17 n.7. A grand jury subpoena cannot be used to "inquire into a strictly civil matter." *In re Stolar*, 397 F. Supp. at 522. To the extent the District Attorney is using the Mazars subpoena to gather evidence on these civil issues, it is overbroad for this additional reason.

(requiring "an *intelligent estimate*' of relevancy" (emphasis added)). That is especially true with respect to subpoenas directed at the President. *See supra* 13-14.[7]

## III.    The President plausibly alleges that the Mazars subpoena was issued in bad faith.

The Mazars subpoena also is invalid if it "is motivated by a desire to harass" or has been issued "in bad faith." *Vance*, 140 S. Ct. at 2428. As the Second Circuit has explained, evidence of "improper purpose [can] overcome the presumption of propriety of the grand jury subpoena." *In re Grand Jury Proceeding*, 961 F.3d 138, 152 (2d Cir. 2020); *see Virag*, 430 N.E.2d at 442-43 (same). Naturally, issuing a grand jury subpoena to engage in "harassment or other prosecutorial abuse" is an improper purpose. *In re Grand Jury Proceedings*, 33 F.3d 1060, 1063 (9th Cir. 1994). But a subpoena also can been deemed "abusive" if it is limitless in scope. *Burns v. Martuscello*, 890 F.3d 77, 92 (2d Cir. 2018). The "law" does not permit the District Attorney to subject the President to such "abuse." *Vance*, 140 S. Ct. at 2428; *see id.* at 2433 & n.1 (Kavanaugh, J., concurring in the judgment).

The President has plausibly alleged that the Mazars subpoena was issued in bad faith. As noted, it was issued in response to—and in retaliation for—a dispute over the scope of the subpoena to the Trump Organization. SAC ¶16. The subpoena was improperly copied from a congressional subpoena. SAC ¶¶17-21. And, as a consequence, the subpoena asked for a litany of documents that go far beyond the grand jury's investigation into the 2016 payments. SAC ¶¶ 22-45; *See supra* 11-18. Abruptly issuing a grossly overbroad subpoena, that was copied from an unrelated congressional demand, in order to punish the President for asserting his rights is the definition of bad faith.

---

[7] Requiring any more of a showing at this stage would not only subvert the 12(b)(6) standard, *see supra* 4, but also override the directives of the many courts that require the government to "indicate in general terms the [actual] nature of the investigation, and demonstrate that the records sought bear some relation to that investigation" before requiring the challenger to carry his burden. *See In re Seiffert*, 446 F. Supp. 1153, 1155 n.5 (N.D.N.Y. 1978); *see, e.g.*, *R. Enterprises, Inc.*, 498 U.S. at 301-02; *In re Grand Jury Proceedings*, 486 F.2d at 93.

But not only does the President plausibly allege that the District Attorney lacked a legitimate purpose, the District Attorney confessed to it. "Specifically, the District Attorney has explained that 'the decision to mirror the earlier subpoena was about efficiency, meaning it was intended to facilitate the easy production by Mazars of a set of documents already collected, and to minimize any claim that the Office's request imposed new and different burdens.' According to the District Attorney, the point was to facilitate 'expeditious production of responsive documents.'" SAC ¶22. In short, his subpoena is "substantially identical to the congressional subpoenas" because "it would encompass documents relevant to the state's investigation and enable Mazars to produce those documents promptly, as Mazars had already begun collecting the same documents in order to respond to the congressional subpoenas." *Vance*, 395 F. Supp. 3d at 299.

Even accepting that justification, *but see* SAC ¶24, it is an admission that the District Attorney ignored his duty to properly tailor the subpoena to the investigation and that the subpoena amounts to bad-faith harassment of the President. Efficiency could never provide the good-faith basis that the law requires. There is nothing efficient—let alone proper—about intentionally demanding voluminous records that are irrelevant to the grand jury's work. A subpoena's legitimacy, moreover, is not defined by what is most efficient for the records custodian. Take, for example, a grand-jury subpoena to an Internet Service Provider for a subscriber's search history. Under the District Attorney's view, it wouldn't be bad faith to demand all of the subscriber's search history for nearly a decade—instead of the specific records that are relevant to the investigation—because that would be more "efficient" for the ISP. This understanding of what it means to have a "good faith" basis for issuing a subpoena is self-refuting. The prohibition on abusive subpoenas cannot be overcome based on what is easiest for the custodian or most convenient for the prosecutors.

Notably, the District Attorney does not argue otherwise. Despite his previous representations, the District Attorney abandons rather than defends this efficiency rationale as meeting his good-faith obligation. Nothing about efficiency or ease of compliance even appears in his brief. Now, he claims,

"it makes perfect sense that the subpoenas seek the same information, as they both relate to public reports about the same potentially improper conduct." Memo at 3; *id.* at 13 (suggesting that his "Office might want the same documents as Congress"). This argument misses the mark.

What matters at this stage is whether the President has plausibly alleged that the subpoena was issued for "efficiency" reasons—not whether the District Attorney believes he can factually rebut the allegation. *See supra* 4. The President's allegation is clearly plausible; it derives from the District Attorney's own explanations to multiple courts about why he copied congressional subpoenas. The issue, then, is *not* whether the subpoena was copied for efficiency reasons; the issue is whether that plausible allegation states a bad-faith claim. The District Attorney's failure to offer *any* defense on those terms is both telling and decisive.

The District Attorney's shifting justification for taking this dubious step actually makes matters worse for him. Inconsistent explanations for why an action was taken is a telltale sign of pretext. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000); *Weinstock v. Columbia University*, 224 F.3d 33, 58 (2d Cir. 2000); *accord Digilov v. JPMorgan Chase Bank, N.A.*, 2015 WL 685178, at *15 (S.D.N.Y. 2015) ("Defendant's inconsistent justifications for his denial of promotion are sufficient to permit a jury to find that Defendant's shifting explanations are pretexts designed to conceal an illicit motive."). The District Attorney's abrupt switch from efficiency to investigative similarity is troubling. He should not have told the Supreme Court that the subpoena was copied because it "minimizes the burden on third parties and enables expeditious production of responsive documents" if that wasn't accurate. Brief in Opposition to Certiorari at 5 n.2.

The justification is also too implausible to be credited. Indeed, "it would be quite a coincidence if the records relevant to an investigation of possible violations of New York criminal law just so happened to be almost identical to the records thought by congressional Committees to be useful in considering federal legislation." *Vance*, 140 S. Ct. at 2449 (Alito, J., dissenting). Until now, therefore, "the District Attorney has never taken the position that the grand jury's investigation has the same

scope as the one being conducted by the House Oversight Committee—the legislative body from which the District Attorney lifted nearly all of the language in the Mazars subpoena—or any other congressional committee." SAC ¶25. Nor has he "taken the position that the timeframe of the grand jury's investigation is fortuitously the same as those being conducted by the congressional committees. To the contrary, the District Attorney concedes that the grand jury's investigation is not 'coextensive with the investigation of the House Committee' and that 'the Mazars Subpoena does not define the scope of the grand jury investigation.'" SAC ¶26. The District Attorney has not taken this position because it is untenable. SAC ¶¶ 36-45.

But desperate times call for desperate measures. The District Attorney can reverse his position and press this newly-minted argument once this case proceeds beyond the pleadings stage if he wishes. This Court is not, however, "'required to exhibit a naiveté from which ordinary citizens are free.'" *Dept. of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019). It has long been settled that courts should not refuse to "see what 'all others can see and understand'" when evaluating the "congressional power of investigation." *United States v. Rumely*, 345 U.S. 41, 44 (1953). That should be no less true here.

Finally, the District Attorney incorrectly argues that the bad-faith claim is foreclosed by the prior round of litigation. This Court rejected a claim of bad faith in holding that *Younger* abstention applied. *See* Memo at 19. But that ruling has been vacated. *See Trump v. Vance*, 941 F.3d 631, 639 & n.11 (2d Cir. 2019). In drawing that conclusion, furthermore, the Court relied on extrinsic evidence that—while cognizable at the jurisdictional and preliminary-injunction stages—may not be considered in ruling on a Rule 12(b)(6) motion. *See Vance*, 395 F. Supp. 3d at 299-300; *supra* 4, 6-10.

Regardless, the bad-faith inquiry for purposes of *Younger* substantively differs from this inquiry. For *Younger*, "'the subjective motivation of the state authority *in bringing the proceeding* is critical to, if not determinative of, this inquiry.'" *Vance*, 395 F. Supp. 3d at 299 (emphasis added). "Barring a stronger showing from the President," the Court thus held that it would not "impute bad faith to the District Attorney *in relation to these proceedings*." *Id.* at 300 (emphasis added). But this is not a challenge to the

proceeding. It is a "subpoena-specific" bad-faith challenge. *Vance*, 140 S. Ct. at 2430. Whether or not he had a good-faith basis for convening the grand jury, the District Attorney lacked a good-faith basis for issuing *this* subpoena.

The District Attorney is correct that the subpoena is presumptively valid and that the President will need proof that the subpoena was issued in bad faith to secure final judgment on this claim. *See* Memo at 19. But not at the motion-to-dismiss stage. Plausibility—not proof—is the salient issue under Rule 12(b)(6). And a legal fight over "motive" is a classic "factual dispute inappropriate for resolution on a Rule 12(b)(6) motion." *Lawton v. Success Academy Charter Schools, Inc.*, 323 F. Supp. 3d 353, 365 (E.D.N.Y. 2018); *e.g.*, *Douglas E. Barnhart, Inc. v. Zurich American Insurance Company*, 2007 WL 9777932, at *4 (S.D. Cal. 2007) ("Moreover, defendant's argument that plaintiff's 'bad faith' claim fails because it acted reasonably is without merit. In essence, defendant challenges the truth of plaintiff's allegations and the substantive merits of plaintiff's second cause of action, which is inappropriate at this stage of the litigation .... The ultimate question of whether defendant did not actually act in bad faith is not yet relevant.") (internal citations omitted)). This case is no exception.

*     *     *

The District Attorney naturally wants this case decided in one fell swoop. What defendant wouldn't? But he doesn't get to rewrite the Federal Rules for his special benefit. The District Attorney, accordingly, isn't allowed to introduce extrinsic evidence and have factual disputes adjudicated at the pleadings stage. That's the rule in mine-run cases, and it applies with special force to a dispute over a subpoena for the President's papers. If the District Attorney wanted expeditious resolution of this case, he would've answered and proceeded directly to the merits. But he chose to seek dismissal based on the assumed truth of factual allegations that state a claim for overbreadth and bad faith. The District Attorney is bound by that choice.

## CONCLUSION

For these reasons, this Court should deny the District Attorney's motion to dismiss.

August 10, 2020

Respectfully submitted,

 _s/ William S. Consovoy_

Marc L. Mukasey
Mukasey Frenchman & Sklaroff LLP
Two Grand Central Tower
140 East 45th Street, 17th Floor
New York, New York 10177
(212) 466-6400
marc.mukasey@mukaseylaw.com

Alan S. Futerfas
Law Offices of Alan S. Futerfas
565 Fifth Ave., 7th Floor
New York, NY 10017
(212) 684-8400
asfuterfas@futerfaslaw.com

William S. Consovoy
Cameron T. Norris
Alexa R. Baltes
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
Consovoy McCarthy PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*