UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD J. TRUMP,
                Plaintiff,

- against -

CYRUS R. VANCE, JR., in his official capacity as District Attorney of the County of New York;

and

MAZARS USA, LLP,
                Defendants.

Case No. 1:19-cv-08694 (VM)

**VIA ECF**

# REPLY IN SUPPORT OF DEFENDANT VANCE'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

CAREY R. DUNNE
    GENERAL COUNSEL
CHRISTOPHER CONROY (PRO HAC VICE)
JULIETA V. LOZANO
JAMES H. GRAHAM
ALLEN J. VICKEY
SARAH A. WALSH (PRO HAC VICE)
SOLOMON B. SHINEROCK
    ASSISTANT DISTRICT ATTORNEYS
NEW YORK COUNTY
DISTRICT ATTORNEY'S OFFICE
One Hogan Place
New York, New York 10013
(212) 335-9000

CAITLIN HALLIGAN
RYAN W. ALLISON
DAVID A. COON
SELENDY & GAY PLLC
1290 Sixth Avenue
New York, New York 10104

WALTER E. DELLINGER III
    (PRO HAC VICE)
DUKE UNIVERSITY LAW SCHOOL
Science Drive & Towerview Road
Durham, North Carolina 27706

*Counsel for Defendant Vance*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................................iii

ARGUMENT...........................................................................................................................................1

    I.    Plaintiff's attempt to invoke a heightened standard is contrary to the Supreme Court's ruling. ...................................................................................................................................1

    II.    The SAC is deficient on its face. ...................................................................................3

        A.    The SAC neither presents plausible allegations nor supports reasonable inferences that the investigation was limited to 2016 conduct. .........................................................3

        B.    Plaintiff's assertion of retaliation is baseless speculation.........................................5

    III.    In addition to the SAC's facial deficiency, materials of which the Court may take judicial notice confirm that dismissal is the appropriate outcome. ..........................................7

CONCLUSION.....................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965) .................................................................................................................. 1, 3

*In re Merrill Lynch Auction Rate Sec. Litig.*,
  2012 WL 1994707 (S.D.N.Y. June 4, 2012) .............................................................................. 7, 8

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020) ............................................................................................ 7

*Pearson Capital Partners LLC v. James River Ins. Co.*,
  151 F. Supp. 3d 392 (S.D.N.Y. 2015) (Marrero, J.) ...................................................................... 6

*Sawabeh Info. Servs. Co. v. Brody*,
  832 F. Supp. 2d 280 (S.D.N.Y. 2011) ............................................................................................ 9

*Sidney v. Wilson*,
  228 F.R.D. 517 (S.D.N.Y. 2005) (Marrero, J.) .............................................................................. 9

*Trump v. Vance*,
  591 U.S. ___, ___ (2020) ..................................................................................................... 1, 2, 3

*United States v. Nixon*,
  418 U.S. 683 (1974) ....................................................................................................................... 2

*United States v. R. Enters., Inc.*,
  498 U.S. 292 (1991) ............................................................................................................. 1, 2, 3

*Virag v. Hynes*,
  54 N.Y.2d 437 (1981) .................................................................................................................... 5

**Other Sources**

William K. Rashbaum and Ben Protess, *8 Years of Trump Tax Returns Are Subpoenaed by Manhattan D.A.,* N.Y. TIMES, Sept. 16, 2019, https://nyti.ms/3aji2qQ ................................................................. 8

Plaintiff's opposition (Dkt. 66) ("Opp. Br.") fails to overcome the fatal deficiencies in the SAC.[1] Contrary to Plaintiff's contentions, the SAC on its face fails to state a claim. First, Plaintiff's attempt to invoke a heightened standard is foreclosed by the Supreme Court's recent ruling. Second, looking solely at the four corners of the SAC, its conclusory and speculative allegations, coupled with illogical inferential leaps, do not meet Rule 12(b)(6)'s minimal pleading standards—a defect that alone requires dismissal. Third, multiple public-record statements, whether or not true, render Plaintiff's speculative inferences about the asserted limited scope of the grand jury's inquiry wholly implausible, and the Court may take judicial notice of these statements without converting this into a summary judgment proceeding. Accordingly, Plaintiff's unfounded assertions regarding the subpoena's overbreadth and this Office's bad faith are too incredible and unreasonable to state a claim. Despite the SAC's effort to conjure wrongdoing out of guesswork, its allegations do not come close to overcoming the presumption of regularity and good faith that surrounds the grand jury process. The SAC should be dismissed.

## ARGUMENT

**I.  Plaintiff's attempt to invoke a heightened standard is contrary to the Supreme Court's ruling.**

The Supreme Court reaffirmed the strong presumption that "'state courts and prosecutors will observe constitutional limitations.'" *Trump v. Vance*, 591 U.S. ___, ___ (2020) (slip op. at 17) (hereinafter "Slip Op.") (*quoting Dombrowski v. Pfister*, 380 U.S. 479, 484 (1965)). And, as the parties agree, a grand jury subpoena is entitled to a "presum[ption], absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Entersi, Inc.*, 498 U.S. 292, 300 (1991); *see* Opp. Br. at 12. Unable to allege any facts—as opposed to unreasonable

---

[1] Capitalized terms not defined herein carry their definitions from Defendant Vance's moving brief (Dkt. 63) ("Mov. Br.").

inferences and speculation—that rebut this presumption and establish a claim to relief, *see* Mov. Br. at 2, 18-21, Plaintiff resorts to arguing that the presumption of regularity is somehow "weaker when employed against the President." Opp. Br. at 18.  This contention ignores the Supreme Court's clear holding in this case rejecting any form of heightened standard.  *See* Slip Op. at 21.  As the Supreme Court affirmed, "the public interest in fair and effective law enforcement cuts in favor of comprehensive access to evidence.  Requiring a state grand jury to meet a heightened standard of need would hobble the grand jury's ability to acquire 'all information that might possibly bear on its investigation.'"  *Id.* at 19 (*quoting R. Enters.*, 498 U.S. at 297).

Rather than acknowledging the Supreme Court's ruling that the President is not "entitled to a heightened standard of need," *id.* at 21, Plaintiff repeatedly references the Court's use of the phrase "particularly meticulous," which appears in a parenthetical to a citation to *United States v. Nixon*, 418 U.S. 683, 702 (1974).  *See* Opp. Br. at 13-14; Slip Op. at 20 ("[W]here a subpoena is directed to a President, … appellate review … should be particularly meticulous.").  This instruction, to the extent it applies to the district court's consideration of Plaintiff's allegations, does not impose a more stringent substantive standard on issuance of a state grand jury subpoena seeking private papers, or provide Plaintiff with any greater procedural rights to learn what the grand jury is investigating.  *See* Slip Op. at 17-20.  And careful and thoughtful judicial review, conducted in a meticulous manner, will result in dismissal of the SAC.

While the SAC puts an Article II gloss on its overbreadth and bad-faith claims, *see* SAC ¶¶ 53-63, such conclusory citations are entirely insufficient to support either of the "subpoena-specific constitutional challenges" available to a president.  *See* Mov. Br. at 7-8.  Plaintiff now contends, in a footnote, that his claims "do implicate Article II" because "[s]ubpoenas that amount to 'arbitrary fishing expeditions' or are issued 'out of malice or an intent to harass,' by definition, interfere with the President's ability to fulfill his Article II responsibilities." Opp. Br. at 3 n.1.  Not so.  The Supreme

2

Court made clear that Article II is only implicated if the President "sets forth and explains a conflict between judicial proceedings and public duties, or shows that an order or subpoena would significantly interfere with his efforts to carry out those duties." Slip Op. at 20-21 (internal quotation marks and citation omitted). The President has not even attempted to allege facts that meet either of these standards, which is not surprising because the Mazars Subpoena implicates no Article II burdens at all. *See* Mov. Br. at 9. Applying the traditional standards applicable to Plaintiff's garden-variety overbreadth and bad faith subpoena challenges, including the presumption of regularity afforded grand jury investigations, the SAC simply fails to adduce facts sufficient to state a claim.

## II.     The SAC is deficient on its face.

Plaintiff's opposition brief makes clear that his entire case—both the overbreadth claim and the follow-on bad faith claim—depends on convincing the Court to accept as true that at the time the Mazars Subpoena issued, the grand jury investigation was limited to payments Michael Cohen made in 2016. But Plaintiff's conclusory assertion that the investigation was so limited is too thin a reed to stave off dismissal. The SAC contains no plausibly pleaded facts to support such allegation, and the inference and speculation that Plaintiff presses in his opposition brief cannot save the SAC from its own failings, particularly when set against the presumption that prosecutors act within their limits. Slip Op. at 17 (*quoting Dombrowski* 380 U.S. at 484); *R. Enters.*, 498 U.S. at 300. Plaintiff's remaining arguments concerning bad faith and asserted retaliatory motive are likewise devoid of support in the SAC's allegations, and the SAC's speculative conclusions fail to raise any right to relief.

### A. The SAC neither presents plausible allegations nor supports reasonable inferences that the investigation was limited to 2016 conduct.

The centerpiece of Plaintiff's opposition brief is a claim that a grand jury investigation limited to Cohen's 2016 payments cannot support a subpoena of the Mazars Subpoena's scope. *See, e.g.*, Opp. Br. at 1 ("The President plausibly alleges that the grand-jury investigation is about certain payments made in 2016—not some murky inquiry into broader financial practices."), 2 (the "subpoena is

3

overbroad in relation to an investigation into payments made in 2016").

As an initial matter, the SAC does not adequately allege even this predicate. The SAC first asserts that "[i]n 2018, a New York County grand jury began investigating whether certain business transactions from 2016 violated New York law." SAC ¶ 1. Even if that were true, Plaintiff offers no reason to infer that the investigation remained so limited when the Mazars Subpoena was issued in August 2019. Indeed, many investigations develop and expand over time. The SAC also asserts that "[a]ccording to published reports, the focus of the District Attorney's investigation is payments made by Michael Cohen in 2016 to certain individuals." SAC ¶ 12. Whatever the newspapers reported—and regardless of whether those reports were accurate—they say nothing about the full scope of the investigation, just its purported focus. And in any event, there are no facts in the SAC supporting any inference that the reports' authors had actual, reliable information about the investigation, and the rules of grand jury secrecy cut against such an inference. In short, the only non-speculative fact that Plaintiff has pleaded with respect to the scope of the grand jury's investigation is the Office's own explanation, appropriately generic, that it is looking at "business transactions involving multiple individuals whose conduct may have violated state law." SAC ¶ 11 (internal quotation marks and citations omitted). Plaintiff did not include that fact in his opposition brief, and for obvious reasons: it undermines the theory of a limited investigation upon which his entire complaint is built.

Nor does the SAC allege facts that could support an inference that the grand jury is investigating Cohen's 2016 payments alone. Plaintiff points to the Office's initial subpoena to the Trump Organization (the "TO Subpoena"), proclaiming it the "best evidence" of the scope of the grand jury investigation. Opp. Br. at 5. And, according to Plaintiff, because he has "plausibl[y]" pleaded that the TO Subpoena relates to 2016 conduct, that means he has also plausibly pleaded that the entirety of the grand jury investigation relates *only to* that 2016 conduct. Opp. Br. at 5. But that nonsensical inference is precisely the type of assertion that this Court need not credit in determining

4

whether Plaintiff has supported his claim of overbreadth with plausible facts.

Focal points of an investigation may sometimes be inferable by reviewing subpoenas issued at various points in that investigation. But singling out one particular subpoena, and declaring that it must necessarily define and delimit the scope of a grand jury's inquiry, makes no sense at all, particularly in a months-long financial investigation. Grand juries routinely issue subpoenas in an iterative process, seeking different records from different parties and from different date ranges, with later subpoenas building on new information and leads generated from returns on earlier subpoenas. In other words, the inference that any one subpoena in this case defines the investigation is simply not reasonable.

Plaintiff's "best evidence" argument also asks this Court to rely on the TO Subpoena—but ignore the Mazars Subpoena—as an accurate reflection of the grand jury's scope. But that argument is likewise illogical, as well as lacking factual support in the SAC. Indeed, Plaintiff fails to explain why the Court should not view both subpoenas (which are incorporated in the SAC) together as the "best evidence" of the broad contours of the investigation. In sum, nothing in the SAC's allegations supports the claim that the grand jury's investigation is limited to Cohen's 2016 payments, as Plaintiff (without support) asserts. Rather, Plaintiff "merely speculate[s] as to what, in [his] view, was the Grand Jury's purpose in seeking the business records." *Virag v. Hynes*, 54 N.Y.2d 437, 445-46 (1981). This is "insufficient to overcome the presumption that the materials were relevant to the Grand Jury's investigation." *Id.* at 446. Accordingly, the SAC states no claim on which relief could be granted on a theory that the Mazars subpoena is overbroad.

### B. Plaintiff's assertion of retaliation is baseless speculation.

In support of his claim that the Office acted in bad faith, Plaintiff asserts that the Office issued the Mazars Subpoena in retaliation against Plaintiff. But Plaintiff has failed to put forth any "factual content that allows the court to draw the reasonable inference" that the Office acted in bad faith.

5

*Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 399 (S.D.N.Y. 2015) (Marrero, J.).

Plaintiff's theory appears to be based on nothing more than the fact that the Mazars Subpoena was issued after the TO Subpoena and after the parties had a "dispute" over whether the TO Subpoena called for tax returns.[2] *See* Opp. Br. at 21. But the SAC states merely that the Office issued the TO Subpoena on August 1, 2019, SAC ¶ 13, and later that month "[w]hen the President's attorneys pointed out that the subpoena could not plausibly be read to demand [tax] returns, the District Attorney declined to defend his implausible reading. He instead retaliated by issuing a new subpoena to Mazars, a neutral third-party custodian, in an effort to circumvent the President." SAC ¶ 16. That conclusory statement is the full extent of the SAC's "factual" support for its claim of retaliation.

Plaintiff cannot salvage his conclusory retaliation claim through unreasonable inferences. First, the claim of retaliation presupposes that there could be no valid reason for the grand jury to issue a subpoena to Mazars. *See* Opp. Br. at 21-22. Not only is that unsupported by anything in the SAC, it is undermined by the SAC's admissions that Mazars "is a New York accounting firm," SAC ¶ 8, and that the investigation includes "business transactions involving multiple individuals whose conduct may have violated state law." SAC ¶ 11. To credit the inference that no valid purpose supported the Mazars Subpoena would turn the presumption of regularity afforded the grand jury process on its head.

Second, a claim of retaliation necessarily implies that the Office felt wronged by certain conduct, and sought to inflict some coordinate harm on the perceived wrongdoer. *See* Opp. Br. at 2

---

[2] The opposition brief also asserts, as support of the retaliation claim, that the Office "abandoned any effort" to enforce the TO Subpoena "on the heels of this dispute." Opp. Br. at 6. But the SAC is barren of facts supporting either a dispute or the abandonment of enforcement. And as Plaintiff well knows from filings in this case, the Office continued to enforce the TO Subpoena for months after the Mazars Subpoena. *See* Br. in Opp. to Cert. at 4-5.

6

(claiming the Office issued the Mazars Subpoena in a "fit of pique"). But the SAC is devoid of any facts indicating that was the case. Indeed, the SAC does not even assert that there was a disagreement or "dispute"; it simply points out that the President's lawyers represented that no tax records were responsive to the TO Subpoena, and then inexplicably concludes that the Office "retaliated by issuing a new subpoena to Mazars. . . ." SAC ¶ 16. A naked conclusion such as that is not a properly pleaded fact and cannot sustain Plaintiff's assertion of bad faith.[3]

As the above demonstrates, this Court should dismiss the SAC, and it may do so based solely on the SAC's facial deficiencies without relying in any way on public record information.

### III. In addition to the SAC's facial deficiency, materials of which the Court may take judicial notice confirm that dismissal is the appropriate outcome.

Plaintiff fails to grapple with the authority permitting the Court to consider matters incorporated into the complaint and to take judicial notice of the existence of extrinsic public record materials (without regard to the truth of their contents) on a Rule 12(b)(6) motion. *See, e.g., Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 781 n.2 (S.D.N.Y. 2020) (collecting cases); *In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at *2 (S.D.N.Y. June 4, 2012). Contrary to Plaintiff's claim that granting the motion would be reversible error without first converting it to a summary judgment proceeding and allowing discovery, the Court may consider the existence of the proffered public record materials, which confirm that Plaintiff lacks any factual basis to support his speculation regarding the claimed overbreadth and bad faith of the Mazars Subpoena.[4]

---

[3] Plaintiff also pins his bad faith claim on what he calls the Office's "shifting" explanation for adopting congressional subpoena language for the Mazars Subpoena. Opp. Br. 23. But the SAC contains no facts supporting an inference of "shifting" explanations or any nefarious purpose on this subject. Both commonality of need for the records and efficiency support the choice to adopt language from Congress, and the Office has been transparent and consistent about that reasoning from the start. *See, e.g.*, Sept. 25, 2019 Tr. 30:15-25 (explaining that the congressional subpoena mirrored the scope of what the Office needed from Mazars, and would have already prompted Mazars to begin the process of identifying and gathering responsive records).

[4] Plaintiff's assertion that the pending motion relies upon the Shinerock Declaration and must

First, the Court should consider the full text of the New York Times article that the SAC selectively quotes in paragraph 12, as described above.[5] The full article refutes the conclusion that Plaintiff asks the Court to reach. It observes that "it was unclear if the broad scope of the [Mazars Subpoena] indicated that the office had expanded its investigation beyond actions taken during the 2016 campaign."[6] That language precludes a reasonable inference from the article that the grand jury investigation was as limited as Plaintiff asserts.

Second, the Office offers additional news articles, not for the truth of their contents, but simply to show that the allegations they report, whether true or false, were in the public record and available to the grand jury. *See* Mov. Br. at 17 n.7. *See*, *e.g.*, *In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at *2. Given that this much information about potentially widespread and protracted criminal conduct was in the public record (and without going into any additional, non-public sources), it is not plausible to speculate, let alone infer, that the grand jury investigation was limited to Cohen's 2016 payments. As the Office said in oral argument in the Supreme Court, "[the subpoena] was [prompted] by public reports that certain business transactions in our jurisdiction were possibly illegal. Given those allegations, our office would have been remiss not to follow up." May 12, 2020 Sup. Ct. Tr. 55:5-9. In assessing the plausibility of the SAC's factually unsupported assertions, the Court may rely on its experience in assessing the value of these public articles, and as Plaintiff observes, need not abandon common sense or "exhibit a naiveté from which ordinary citizens are free.'" Opp. Br. at 24.

---

therefore be converted to a summary judgment motion fails to account for the point in the moving brief that explicitly disclaims the need for such reliance. *See* Mov. Br. at 18 n.9.

[5] Although Plaintiff neglects to actually cite the article, his inclusion of direct quotes makes it readily identifiable.

[6] William K. Rashbaum and Ben Protess, *8 Years of Trump Tax Returns Are Subpoenaed by Manhattan D.A.*, N.Y. TIMES, Sept. 16, 2019, https://nyti.ms/3aji2qQ.

Further undermining the plausibility of Plaintiff's central thesis is the fact that Plaintiff has been put on notice repeatedly throughout this litigation that the investigation was not limited to Cohen's 2016 payments.[7]  For example, during the 2019 oral argument before this Court, the Office said that the language adopted from the Congressional subpoena to Mazars "mirrored … the scope of what [the District Attorney] needed from Mazars."  Sept. 25, 2019 Tr. 30:24-25.  The Court then acknowledged that "the investigation … is very complex, probably has a lot of difficult meanings, involves a lot of parties, extends over many, many years."  Sept. 25, 2019 Tr. at 34:13-16; *see also*, *e.g.*, Br. of Def.-Appellee at 8 n.3 (2d Cir. Dkt. 99) ("Contrary to Appellant's characterizations, the Office's investigation goes beyond the scope of the Trump Organization Subpoena.").  In light of this public record, there can be no plausible inference that the Office has "repeatedly acknowledged," Opp. Br. at 11, the limited scope of the grand jury's investigation.[8]

---

[7] "[T]he Court may take judicial notice of facts contained in the record in adjudicating a motion to dismiss," *Sidney v. Wilson*, 228 F.R.D. 517, 522 (S.D.N.Y. 2005) (Marrero, J.) (citing cases), as well as "the status of other lawsuits in other courts and the substance of papers filed in those actions." *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 293 (S.D.N.Y. 2011) (citation and internal quotation marks omitted).

[8] Similarly, Plaintiff's assertion that the Shinerock Declaration supports his theory that the grand jury investigation was limited to Cohen's 2016 payments defies logic.  Nearly two pages of the Shinerock Declaration are redacted, following the heading "The Grand Jury Investigation targets New York conduct and has yet to conclude as to specific charges or defendants."  Shinerock Decl. ¶¶ 5-8 (Dkt. 17).

## CONCLUSION

For these reasons, the Court should dismiss the SAC with prejudice and order such other and further relief as it deems appropriate.

Dated:  New York, New York                                    Respectfully submitted,
        August 14, 2020


CAITLIN HALLIGAN                                              s/Carey R. Dunne
RYAN W. ALLISON                                               CAREY R. DUNNE
DAVID A. COON                                                     GENERAL COUNSEL
SELENDY & GAY PLLC                                            CHRISTOPHER CONROY (PRO HAC VICE)
1290 Sixth Avenue                                             JULIETA V. LOZANO
New York, New York 10104                                      JAMES H. GRAHAM
                                                  ALLEN J. VICKEY
WALTER E. DELLINGER III                                       SARAH A. WALSH (PRO HAC VICE)
    (PRO HAC VICE)                                            SOLOMON B. SHINEROCK
DUKE UNIVERSITY LAW SCHOOL                                        ASSISTANT DISTRICT ATTORNEYS
Science Drive & Towerview Road                                NEW YORK COUNTY DISTRICT
Durham, North Carolina 27706                                  ATTORNEY'S OFFICE
                                                  One Hogan Place
                                                  New York, New York 10013